Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Scott M. Grzenczyk (State Bar No. 279309)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
scottg@girardsharp.com

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Christopher E. Stiner (SBN 276033)
Rachel Johnson (SBN 331351)
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
*twolfson@ahdootwolfson.com*
*tmaya@ahdootwolfson.com*
*cstiner@ahdootwolfson.com*

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

John E. Schmidtlein (State Bar No. 163520)
Benjamin M. Greenblum (*pro hac vice* pending)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com

*Attorney for Defendants Google LLC and Alphabet Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 5:20-cv-03556-BLF<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: September 24, 2020<br>Time: 11:00 a.m.<br>Courtroom: 3 – 5th Floor<br>Judge: Hon. Beth L. Freeman |

Plaintiffs Grand Atlas Tours, Surefreight Global LLC dba Prana Pets, Hanson Law Firm, PC, Michael Devaney, Nicholas Arrieta, and Sara Yberra ("Plaintiffs") and Defendants Google LLC and Alphabet Inc. ("Defendants" or "Google") hereby provide this Joint Case Management Conference Statement in advance of the Initial Case Management Conference scheduled for September 24, 2020.

The parties met and conferred on September 14. The parties have different views on how the case should proceed at this stage.

Plaintiffs are prepared to advance this case, but understand that Google opposes conducting any discovery during the pendency of its Rule 12 motions. Consistent with Federal Rule of Civil Procedure 1 and this Court's order setting an initial conference (ECF 18), Plaintiffs have attempted to make progress where possible and are prepared to proceed with the initial conference before this Court. Plaintiffs have also requested that Google identify and produce in this action limited categories of discovery already gathered and produced in response to the government investigations into Google's anticompetitive conduct in the digital advertising markets. This commonsense approach will allow this matter to progress without unduly burdening Google.

Defendants' position is that it is appropriate for discovery to await resolution of their Rule 12 motion to dismiss, particularly where, as here, there is no operative complaint filed, in view of the Plaintiffs' request for additional time to file a consolidated amended complaint ("CAC").  Plaintiffs have no basis to compel discovery where they are not yet prepared to identify the boundaries of their allegations; certainly they have not identified "limited categories of discovery."  It is for the same reasons that Defendants proposed continuing the Case Management Conference, to which Plaintiffs would not consent.  Defendants respectfully submit that rescheduling the CMC until after Rule 12 motions practice on the forthcoming complaint would be more efficient, as the other issues addressed in a CMC are premature under the circumstances.

1. **Jurisdiction and Service**

Plaintiffs will file a consolidated amended complaint ("CAC") by September 25, 2020. Plaintiffs submit that they will allege federal antitrust claims under the Clayton Act, 15 U.S.C. § 15, and that the Court also will have diversity jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendants, there are more than 100 class members nationally, and the aggregate amount in controversy exceeds $5,000,000. Plaintiffs further submit that venue is proper in this judicial district under 28 U.S.C. § 1391 because Google's principal place of business is in this district and a substantial part of the conduct giving rise to these claims occurred within this district. Google has been served with the complaints originally filed by Plaintiffs. Defendants do not anticipate contesting subject matter jurisdiction or venue, but will reserve all objections pending review of the CAC.

2. **Facts**

**Plaintiffs' Statement**

Plaintiffs placed online advertisements through Google, and allege that Google has illegally acquired and maintained a monopoly in digital advertising markets in violation of state and federal antitrust and unfair competition law. Among other unlawful means of monopolization, Google acquired rivals in the online advertising space, conditioned access to its search-results data and YouTube video advertising platform on the purchase of its separate display advertising services, and ensured that its relevant systems were not compatible with those of its competitors in online advertising. Google used its dominance in online search and search advertising to destroy competition in the separate market for brokering display advertising on other companies' websites, achieving dominance over the "ad tech stack" of services in the latter market.

By consolidating key portions of these display advertising services, Google now brokers the vast majority of transactions on both sides of the display advertising market and steers advertisers to its own display supply platforms. If, for example, an advertiser wants to buy any of the valuable advertising space on YouTube—one of the online platforms Google

acquired—it must use Google's advertising services and cannot use those of any of its rivals. And, because advertisers would bear significant costs and inefficiencies from using a different service provider to broker distribution of ads to other online channels, Google effectively forces advertisers to use its services for all aspects of their online ad campaigns. Likewise, Google only permits a publisher of digital ads to access its dominant AdWords search platform and database of search advertisers if the publisher uses Google's ad server, and in 2018 Google merged its ad server (DoubleClick for Publishers) with its online ad exchange (AdX) into a single market-dominating product, Google Ad Manager.

Google also engages in other forms of anticompetitive conduct, such as rigging advertising auctions that it controls to its unfair advantage and concealing information about the performance of advertisements on its online platforms to cement that advantage. And to further consolidate its monopoly, Google also denies interoperability by preventing its advertising service systems from being able to interface with the systems of rival advertising service providers.

Google's coordinated set of monopolistic practices has given it near-complete dominance over digital advertising. As a result, publishers and advertisers have little choice but to use Google's display advertising services, prices of these services are and have been at supra-competitive levels, and Plaintiffs overpaid for them or otherwise sustained economic loss.

**Defendants' Statement**

Because Plaintiffs have not yet filed a CAC, Defendants' statement is premised upon the separate complaints filed to date and/or the purported characterizations set forth by Plaintiffs above. Defendants deny that Plaintiffs have adequately pled any legal claims, including but not limited to that (a) Google has illegally monopolized any cognizable antitrust relevant market, (b) Google has engaged in any conduct constituting unlawful exclusionary or anticompetitive conduct that harmed competition in any cognizable antitrust relevant market, (c) Plaintiffs have standing to assert any such claim, and (d) Plaintiffs have adequately pled any injury.

### 3. Legal Issues

Based on the claims that Plaintiffs intend on submitting in the CAC, the parties identify the following disputed points of law. Defendants reserve the right to raise any and all defenses in response to the CAC filed on or before September 25.

- Whether Google violated Section 2 of the Sherman Act, 15 U.S.C. § 2, and/or the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*;
- Whether class certification is appropriate under Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3);
- If Google violated state or federal law, the amount of resulting damages, if any, owed the class and the form and content of any appropriate injunctive relief.

### 4. Motions

No motions have been filed to date, other than Google's Administrative Motion to Consider Whether Cases Should Be Related (ECF No. 23), which the Court granted (ECF No. 24), thereby relating *Devaney et al. v. Google LLC et al.*, No. 5:20-cv-04130-JSC (N.D. Cal. filed June 22, 2020), to *Grand Atlas Tours et al. v. Google LLC et al.*, No. 5:20-cv-03556-BLF (N.D. Cal. filed May 27, 2020).

Google anticipates filing a Rule 12 motion in response to the CAC. Plaintiffs intend to move for class certification under Rule 23 of the Federal Rules of Civil Procedure, and Defendants will oppose that motion. If the CAC survives a Rule 12 motion to dismiss, Defendants anticipate they will move for summary judgment on all claims, and will likely file evidentiary motions as well. Plaintiffs may file similar motions.

### 5. Amendment of Pleadings

In accordance with the Court's Order entering the parties' stipulation (ECF No. 18), Plaintiffs will file a consolidated complaint by September 25, 2020. In the event the Court grants any portion of a motion to dismiss filed by Google, Plaintiffs will seek to amend their complaint as appropriate based upon the Court's ruling. *See* Fed. R. Civ. P. 15(a)(2). Defendants reserve the right to oppose any such amendment.

**6.    Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**7.    Disclosures**

The parties have not yet exchanged initial disclosures pursuant to Rule 26(a).

**Plaintiffs' Position:** Given Google's opposition to conducting discovery during the pendency of their Rule 12 motions, Plaintiffs have suggested deferring full discovery or setting a full schedule for the case until the pleadings are settled, and instead have requested that Google identify and produce in this case limited categories of pre-packaged discovery already gathered and produced in response to one of the many government investigations into Google's anticompetitive conduct in the digital advertising markets (the same conduct at issue in Plaintiffs' complaints and forthcoming consolidated complaint).  *E.g.*, https://www.judiciary.senate.gov/meetings/stacking-the-tech-has-google-harmed-competition-in-online-advertising (Senate Judiciary Committee, Subcommittee on Antitrust, Competition Policy, and Consumer Rights); https://www.washingtonpost.com/technology/2020/09/03/doj-google-antitrust/ (United States Department of Justice, Antitrust Division); https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-leads-50-attorneys-general-google-multistate-bipartisan-antitrust (Attorneys General of Texas and 49 other states); https://ec.europa.eu/commission/presscorner/detail/en/IP_19_1770 (European Commission).

Rule 26 does not contemplate any presumptive stay of discovery during the pendency of a Rule 12 motion.  *See, e.g.*, *Singh v. Google, Inc.*, No. 16-CV-03734-BLF, 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016).  While antitrust discovery can be time-consuming and expensive, these considerations do not apply when the defendant is the subject of a parallel government investigation and has already taken the time to gather, screen for privilege, package, and produce responsive documents.  Accordingly, courts in this District and others routinely order production in civil cases of documents produced to government authorities

before the civil pleadings have been resolved. *See, e.g.*, *In re Resistors Antitrust Litig.*, No. 15-cv-03820-JD (N.D. Cal. Feb. 2, 2016), ECF 112 (ordering that "[a]ll DOJ documents are to be voluntarily produced to Plaintiffs" prior to resolution of motion to dismiss); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS (N.D. Cal. 2011), ECF 370, 379 (same); *In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, No. 1:19-cv-21551-CMA (S.D. Fla. Apr. 6, 2020), ECF 207 (ordering that "[r]ecords already produced by Defendants to the Department of Justice and other foreign and domestic government entities will be produced to Plaintiffs" before motion to dismiss resolved); *In re Diiscocyanates Antitrust Litig.*, No. 2:18-mc-01001-DWA (W.D. Pa. Jan. 15, 2019), ECF 149 (compelling production of documents previously produced to DOJ based on lack of burden and because "efficiency and economy is best served").

Google relies on *In re Lithium Ion Batteries Antitrust Litigation*, No. 4:13-md-02420-YGR (N.D. Cal. May 21, 2013), ECF 200, but in that case, Judge Gonzalez Rogers ordered five defendants to produce materials they had already produced to the DOJ, and excluded two groups of defendants from this ruling only because they made a particularized showing of undue burden. Google also seeks to draw a distinction between companies under criminal investigation and companies under civil investigation, but the relevance of that distinction to the questions of need, proportionality, and burden that animate these discovery rulings is unclear.

Plaintiffs respectfully suggest that an incremental approach to discovery endorsed by other Judges in this district will focus and streamline later discovery in the case. Plaintiffs have also suggested to Defendants that the parties negotiate standard early case management documents, such as a protective order, an ESI order, and a privilege order. Defendants have declined to identify documents already gathered and produced to government entities and have not provided a position on the exchange and finalization of case management documentation. In line with their proposal for a staged approach to discovery, Plaintiffs are prepared to confer with Defendants concerning an appropriate time to exchange initial disclosures.

On the afternoon of this filing, Defendants added the statement below that they have produced more than ten million pages of documents to antitrust regulators.  Defendants did not provide this information during the parties' September 14 conference, when Plaintiffs asked Defendants to engage with the discovery process so the parties can work together to limit burdens from early discovery and ensure that it is appropriately targeted to the facts underlying Plaintiffs' claims.  Plaintiffs submit that the Court should direct the parties to confer regarding production of discrete sets of documents that are relevant to the subject matter of the consolidated complaint, which Plaintiffs will file the day after the initial case management conference.

**Defendants' Position:**  Plaintiffs filed these actions in the wake of public news reporting of government investigations into various aspects of Defendants' businesses, including businesses wholly unrelated to the online display advertising referenced in Plaintiffs' initial complaints.  Plaintiffs agreed, as memorialized in a stipulation submitted to the Court on August 11, 2020, that they needed additional time to file a single consolidated amended complaint (CAC), and are due to file the CAC on September 25.  Defendants therefore have not seen the operative complaint in this litigation.

The parties spoke by phone on September 14, 2020.  Plaintiffs explained that given the current posture, they did not intend to conduct a full Rule 26(f) conference on each of the standard topics; that they anticipated that the parties would instead make a truncated submission ahead of the CMC; and that the discovery Plaintiffs were interested in discussing was as to some type of "phased" discovery in which Defendants would produce an unspecified set of materials disclosed to government agencies.  Defendants responded that they believed that the CMC should be continued until after Plaintiffs filed their CAC and the Court ruled on Defendants' anticipated Rule 12 motion to dismiss.  Defendants further disagreed that such phased discovery would be feasible or appropriate in this circumstance.

Defendants likewise submit that initial disclosures should not occur unless and until the Court determines that Plaintiffs have a viable CAC.

Defendants oppose Plaintiffs' request for Defendants to produce all materials disclosed to government agencies. Plaintiffs have not articulated what discrete set of documents produced to government agencies pertain to the subject matter of this litigation, including because Plaintiffs have not yet filed a CAC, nor have Plaintiffs established that any such discrete set of documents exist that map onto the boundaries of their allegations. Pre-complaint discovery of documents is unwarranted where, as here, Rule 26's limitation on the proper scope of discovery cannot be assessed, because there is no operative complaint. *See In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2008 WL 62278 (N.D. Cal. Jan. 4, 2008) (denying plaintiffs' request for discovery of documents produced to DOJ because "[a]llowing discovery . . . before an operative complaint is filed . . . obviates the[] protections" by the Federal Rules).

Plaintiff's citation to *In re Optical Disk Drive Antitrust Litigation* does not suggest a different result; there, the court ordered production of documents *after* the operative complaint was filed and the motion to dismiss briefing was completed. *See* No. 10-md-02143-RS, ECF No. 239 (Oct. 1, 2010) (operative complaint); ECF No. 358 (Feb. 2, 2011) (all motion to dismiss briefings completed); ECF No. 379 (Apr. 7, 2011) (court-ordered production of documents). Here, by contrast, given that there is not yet an operative complaint, much less Rule 12 briefing thereon, it is not even possible for the Court to take a "preliminary peek" at the Rule 12 briefing to decide whether early discovery is warranted on that basis. *See, e.g., Reveal Chat HoldCo, LLC v. Facebook, Inc.*, No. 5:20-cv-363, 2020 WL 2843369 (Apr. 10, 2020) (staying discovery pending resolution of motion to dismiss).[1]

---

[1] In contrast to this case, Plaintiffs' citations all involved ongoing criminal proceedings. *See In re Resistors Antitrust Litig.*, No. 15-cv-03820-JD, ECF. No. 109 (N.D. Cal. Jan. 22, 2016) (plaintiff acknowledging ongoing grand jury proceedings); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS, ECF No. 370 (N.D. Cal. Mar. 11, 2011) (intervenor DOJ stating that there is an ongoing grand jury investigation); *In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, No. 1:19-cv-21551-CMA, ECF No. 205 at 2 (S.D. Fla. Apr. 3, 2020) (movant

Particularly given the broad scope of the allegations in the original complaints, a motion to dismiss, even if only granted in part, would significantly limit the scope of necessary discovery.  Contrary to Plaintiffs' suggestion, the requested production of documents provided to government agencies would in fact impose significant burden.  By no means have Plaintiffs identified a "limited" set of documents for production.  To date, Defendants have produced over ten million pages to various governmental or regulatory bodies, the vast majority of which relate to matters irrelevant to the allegations Plaintiffs have made to date.  (Plaintiffs made no inquiry on the parties' teleconference as to the volume of documents that would have to be sifted through, and instead, on the eve of this submission, inserted a series of website descriptions of various investigations into their statement, *supra*.)  It would be extremely time-consuming, burdensome, disproportionate, and costly for Defendants to re-review these documents and determine which are relevant to the CAC.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, ECF No. 200 (N.D. Cal. May 21, 2013) (staying pre-complaint discovery of documents produced to a grand jury because re-producing such documents would require review of 200,000 pages).[2]  *Compare Singh v. Google, Inc.*, 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ("no particular or specific facts" as to discovery burden), *supra*.

Defendants are prepared to brief their 12(b)(6) motion in compliance with the agreed-upon and ordered schedule, and submit that the parties can prepare to conduct discovery in the

---

stating that DOJ had initiated criminal "price-fixing conspiracy" investigation); *In re Diiscocyanates Antitrust Litig.*, No. 2:18-mc-01001-DWA, ECF No. 140 (W.D. Pa. Dec. 21, 2018) (movant stating that DOJ had begun issuing grand jury subpoenas).

[2] The defendants who were ordered to produce discovery in *Lithium*, highlighted in Plaintiffs' statement, were differently situated because they had made no burden argument.  *See* ECF 200 at 5 ("The Defendants who do not argue that the document production will be unduly burdensome will have to produce relevant responsive documents.").

event the motion is denied.  *See, e.g., Song Fi, Inc. v. Google, Inc.*, No. C 14-5080, 2016 WL 9185325, at *1 (N.D. Cal. Apr. 27, 2016) (staying discovery pending Court's determination whether amended complaint would survive a motion to dismiss).  At this stage, however, where Plaintiffs have not yet settled on an operative complaint, Defendants respectfully submit that an orderly discovery process can and should follow specification of the factual boundaries of the litigation in the amended complaint and the Court's ruling on the viability thereof.

### 8.   Discovery

No discovery has occurred to date.

**Plaintiffs' Position:** In preparation for the Rule 26(f) conference, Plaintiffs identified the following broad subjects on which discovery may be needed, without limitation, and will provide a more complete list of topics when Google engages with the discovery process:

- Information regarding Google's business strategies, including potential or actual acquisitions, in relation to competing firms in digital advertising services markets;
- Relevant communications within Google, and between Google and its vendors or competitors, regarding digital advertising services and associated markets and business strategies;
- Information regarding Google's decisions and actions in relation to its digital advertising customers;
- Information regarding Google's AdTech products;
- Information regarding digital advertising auctions in which Google participated;
- Information regarding lack of interoperability between Google's digital advertising services and those of its competitors;
- Information regarding Google's use of online search, Google Cloud or Chrome-derived user data in its digital advertising services business; and
- Google's financial results and transactional data associated with its digital advertising services business.

As noted above, the Antitrust Division of the United States Department of Justice and certain states' Attorneys General are conducting investigations into whether Google engaged in

anticompetitive conduct in digital advertising markets, and the results of those investigations may bear on the sequencing or content of discovery in this action. Plaintiffs have requested that Google produce discrete sets of documents that it has produced to governmental or regulatory bodies in connection with the subject matter of this litigation, given the lack of burden associated with re-producing such materials in this case.

**Defendants' Position:** Defendants submit that discovery should not commence unless and until the Court determines that Plaintiffs have a viable CAC.

Defendants further submit that Plaintiffs have not articulated what discrete set of documents produced to government agencies pertain to the subject matter of this litigation because Plaintiffs have not yet filed a CAC, nor have Plaintiffs established that any such discrete set of documents exist that map onto the boundaries of their allegations. Pre-complaint discovery of documents is inappropriate, as Rule 26's limitation on the proper scope of discovery cannot be assessed in the absence of an operative complaint. Any such requested production would also impose significant burden, given the volume of documents produced to governmental or regulatory bodies on various matters that are irrelevant to the allegations Plaintiffs have made to date.

### 9. Class Actions

All attorneys have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement**

Plaintiffs provide the following statement pursuant to Civil Local Rule 16-9(b):

(1) This action is maintainable as a class action under Rules 23(a), (b)(2), and/or (b)(3).

(2) This action is brought on behalf of the named Plaintiffs and a nationwide class. The proposed class includes all persons and entities in the United States that, from January 1, 2016 to the present, used Google's digital advertising services to (a) place an ad on a website operated by another entity (advertisers) or (b) place an ad from a third party on their own website (publishers). Excluded from the class are Google; its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned

1  subsidiaries or affiliated companies; class counsel and their employees; and the judicial
2  officers and their immediate family members and associated court staff assigned to this case.
3        (3)    The following facts alleged in the *Grand Atlas Tours* and *Devaney* complaints
4  demonstrate that Plaintiffs may maintain this action as a class action:
5        *Numerosity* – The members of the class are so numerous that joinder is impracticable.
6  While the precise number of class members is unknown to Plaintiffs at this time, Plaintiffs are
7  informed and believe that the class is made up of hundreds of thousands of members that are
8  widely dispersed throughout the country.
9        *Commonality and Predominance* – The principal factual issues in dispute (*supra* part 2)
10 and disputed points of law (*supra* part 3) are common to all class members, and predominate
11 over any individual questions because these questions of fact and law will drive the resolution
12 of the claims.
13       *Typicality* – Plaintiffs' claims are typical of those of the class in that Plaintiffs' claims
14 arise out of a common course of conduct that gives rise to the claims of all other class
15 members.  Plaintiffs and class members used Google's digital advertising services and were
16 (and will continue to be) damaged by the same conduct, namely Google's unfair business
17 practices to monopolize digital advertising services markets.
18       *Adequacy* – Plaintiffs have no interests adverse or antagonistic to those of the class and
19 have retained competent and experienced counsel to prosecute this action.
20       *Superiority* – Given the size of individual class members' claims, the expense and
21 burden of litigation make it economically and procedurally impracticable for class members to
22 pursue individual claims against a well-resourced defendant.
23       *Google's Common Conduct* – Google has acted or refused to act on grounds generally
24 applicable to the class, making final injunctive relief and declaratory relief appropriate with
25 respect to the class as a whole.
26       Plaintiffs anticipate moving for class certification by May 2022.
27
28

**Defendants' Statement**

Based on the original complaints Plaintiffs filed, Defendants anticipate opposing Plaintiffs' motion for class certification, and reserve the right to raise any and all grounds for opposition to class certification upon review of the CAC and any subsequent discovery.

### 10. Related Cases

The parties are aware of no related cases or proceedings pending before another Judge of this Court, or before another court or administrative body.

### 11. Relief

Plaintiffs will seek an order: (a) certifying the class under Rule 23 and appointing Plaintiffs and their counsel to represent the class; (b) awarding appropriate damages (including treble damages) or restitution, and interest thereon; (c) entering injunctive relief to restore competition in the relevant markets; (d) awarding Plaintiffs and the class their reasonable costs and expenses incurred in the action, including counsel and expert fees; and (e) granting such other and further relief as the Court deems just and proper.

Defendants oppose any such relief.

### 12. Settlement and ADR

The parties agree that ADR would be premature at this stage.

### 13. Consent to Magistrate Judge for All Purposes

All parties will not consent to have a magistrate judge conduct all further proceedings (including trial and entry of judgment).

### 14. Other References

The parties do not believe that this case is presently suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation. Defendants have advised that they may move to compel arbitration as to certain Plaintiffs.

### 15. Narrowing of Issues

The parties do not believe that the issues in this case can be narrowed at this time.

### 16. Expedited Trial Procedure

The parties do not believe that this case can be handled on an expedited basis with streamlined procedures.

### 17. Scheduling

By entering the parties' stipulation (ECF No. 24), the Court established the following deadlines for initial case activities related to the pleadings:

| Name of Filing or Event | To Occur on or Before |
|---|---|
| Filing of Consolidated Complaint | September 25, 2020 |
| Defendants to Answer or Otherwise Respond | November 9, 2020 |
| Plaintiffs' Opposition (if Defendants' response is by motion) | December 24, 2020 |
| Defendants' Replies | January 25, 2021 |

Defendants submit that any further scheduling should not occur unless and until the Court determines that Plaintiffs have a viable CAC.

### 18. Trial

Plaintiffs request a jury trial.  The expected length of trial is unclear at this time.

### 19. Disclosure of Non-Party Interested Entities or Parties

Plaintiff Grand Atlas Tours identified two persons—Eric Lewis and Flannery Wasson—with (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.  ECF No. 6.  Plaintiff Surefreight Global LLC also identified two such persons—Solomon Noonan and Bradley Noonan.  ECF No. 10.  No other Plaintiff has identified such a person.

Defendants identified three persons—Google LLC; XXVI Holdings Inc., Holding Company of Google LLC, and Alphabet Inc., Holding Company of XXVI Holdings Inc.—with (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.  ECF No. 21.

**20.     Professional Conduct**

All counsel of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other Matters**

The parties are not presently aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action. Plaintiffs are prepared to coordinate with any governmental or regulatory body in connection with this matter as appropriate.

Dated: September 17, 2020                    Respectfully submitted,

By:     /s/ *Dena C. Sharp*

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Scott M. Grzenczyk (State Bar No. 279309)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
scottg@girardsharp.com

Tina Wolfson (State Bar No. 174806)
Theodore W. Maya (State Bar No. 223242)
Christopher E. Stiner (State Bar No. 276033)
Rachel Johnson (State Bar No. 331351)
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90024-3102
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
cstiner@ahdootwolfson.com
rjohnson@ahdootwolfson.com

Scott L. Silver (*pro hac vice* forthcoming)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Tel: (954) 755-4799
ssilver@silverlaw.com

*Attorneys for Plaintiffs*

By:    /s/ *John E. Schmidtlein*
John E. Schmidtlein (State Bar No. 163520)
Benjamin M. Greenblum (*pro hac vice* pending)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com

*Attorney for Defendants Google LLC and Alphabet Inc.*

## ATTESTATION

I, Dena C. Sharp, am the ECF user whose identification and password are being used to file this Joint Case Management Conference Statement.  I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel listed above.

DATED: September 17, 2020            /s/ *Dena C. Sharp*
                                                              Dena C. Sharp