# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

INFORM INC.,

      Plaintiff,

v.

GOOGLE LLC; GOOGLE INC.;
ALPHABET INC.; YOUTUBE, LLC;
YOUTUBE, INC.; and JOHN DOES
1-100,

      Defendants.

Civil Action No. 1:19-cv-05362-JPB

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

I.    LEGAL STANDARD FOR MOTION TO DISMISS ...................................2

II.    PLAINTIFF DOES NOT HAVE STANDING TO BRING SUIT ................4

   A.  Plaintiff Must Establish Article III and Antitrust Standing............................4

   B.  Plaintiff Has Not Pled Facts to Establish Article III or Antitrust Standing in the Non-Online Advertising Markets .........................................................6

   C.  Plaintiff Does Not Have Antitrust Standing to Pursue Claims Regarding the Alleged Online Advertising Market .........................................................8

       1.   Plaintiff Has Not Suffered an Antitrust Injury ......................................8

       2.   Inform Is Not a Proper Plaintiff ............................................................11

III.   PLAINTIFF HAS NOT PLED A SECTION I VIOLATION (COUNT I).....13

   A.  Plaintiff Has Not Pled an Actionable Agreement ..........................................13

   B.  Plaintiff Has Not Adequately Alleged Any Unreasonable Restraint of Trade in a Properly Defined Antitrust Relevant Market ...............................14

IV.   PLAINTIFF HAS NOT PLED A SECTION 2 CLAIM FOR MONOPOLY MAINTENANCE (COUNT II) ............................................15

   A.  Plaintiff Has Not Pled Facts Showing Monopoly Power in a Properly Defined Relevant Market and Anticompetitive Conduct ..............................16

   B.  Plaintiff Has Not Stated a Claim for Monopoly Maintenance of the Alleged Online Advertising Market ...............................................................17

       1.   Plaintiff Has Not Pled that Any Defendant Has Monopoly Power in the Alleged Online Advertising Market .............................................17

2.  Plaintiff Has Not Adequately Pled Facts Establishing Online Advertising as a Relevant Market ..........................................................18

3.  Plaintiff Has Not Adequately Pled Facts Establishing Anticompetitive Conduct in the Alleged Online Advertising Market...19

C.  Plaintiff Has Not Adequately Pled Monopoly Maintenance........................22

V.  PLAINTIFF HAS NOT PLED A SECTION 2 CLAIM FOR ATTEMPTED MONOPOLIZATION (COUNT IV)....................................25

VI.  PLAINTIFF CANNOT ALLEGE A MONOPOLY LEVERAGING CLAIM (COUNT III) ....................................................................................27

VII.  PLAINTIFF HAS NOT PLED A CLAIM OF UNLAWFUL EXCLUSIVE DEALING UNDER SHERMAN ACT SECTION 2 OR CLAYTON ACT SECTION 3 (COUNT V) .........................................29

A.  Plaintiff Has Not Adequately Alleged any "Exclusive" Agreement.............30

B.  Plaintiff Has Not Adequately Alleged That Any "Exclusive Agreement" Substantially Foreclosed Competition in a Relevant Market......................31

VIII.  PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE (COUNT VI) ..................................................................32

CONCLUSION .........................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330 (11th Cir. 2019) ...........................................................................4, 5, 7

*Allied Orthopedic Appliances v. Tyco Health Care Grp.*, 592 F.3d 991 (9th Cir. 2010)...............................................................20

*Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ...................................................................11, 12, 13

*Athens Int'l, Inc. v. Venture Capital Props, Inc.*, 495 S.E.2d 900 (Ga. Ct. App. 1998)...................................................................33

*Austin v. Blue Cross & Blue Shield*, 903 F.2d 1385 (11th Cir. 1990) ................6, 12

*Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98 (3d Cir. 1992)................................26

*Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333 (11th Cir. 2004) ..........................33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................2

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964 (11th Cir. 2005)..............................7

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ..........................................21

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)...................6, 9

*Cal. Comput. Prods., Inc. v. IBM Corp.*, 613 F.2d 727 (9th Cir. 1979)................20

*Camp v. Eichelkraut*, 539 S.E.2d 588 (Ga. Ct. App. 2000)....................................34

*Clifford v. Federman*, No. 1:18-cv-1953-JPB, ECF 281 (N.D. Ga. Jan. 7, 2020) .......................................................................3

*Covad Commc'ns Co. v. Bellsouth Corp.*, 374 F.3d 1044 (11th Cir. 2004) .......................................................................28

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)..............................................5

*Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475 (D. Md. 2008) ................................................................................28

*Disaster Servs. v. ERC P'ship*, 492 S.E.2d 526 (Ga. Ct. App. 1997)......................35

*Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015) ...............................................................................25, 26

*E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs.*, 357 F.3d 1 (1st Cir. 2004) ....................................................................30

*E.T. Barwick Indus. v. Walter E. Heller & Co.,* 692 F. Supp. 1331 (N.D. Ga. 1987), *aff'd*, 891 F.2d 906 (11th Cir. 1989) ......................................32

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394 (3d Cir. 2016) .............. 29, 32

*Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333 (11th Cir. 2017) ...................................5

*Four Corners Nephrology Assocs. v. Mercy Med. Ctr.*, 582 F.3d 1216 (10th Cir. 2009)........................................................................28

*Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987) ...............................................5, 7

*Gulf States Reorganization Grp. v. Nucor Corp.*, 822 F. Supp. 2d 1201 (N.D. Ala. 2011), *aff'd*, 721 F.3d 1281 (11th Cir. 2013) .........................26

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ..............passim

*Keller v. Greater Augusta Ass'n of Realtors*, 760 F. Supp. 2d 1373 (S.D. Ga. 2011) .................................................................15

*Kirkland v. Tamplin*, 645 S.E.2d 653 (Ga. Ct. App. 2007) ......................................35

*Levine v. Cent. Fla. Med. Affiliates*, 72 F.3d 1538 (11th Cir. 1996)................17, 23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................5

*McWane, Inc. v. FTC*, 783 F.3d 814 (11th Cir. 2015)...............................................29

*Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984) ...........................................................................23

iv

*Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288 (11th Cir. 2004) ...................................................................................16, 17, 28

*Nirvana, Inc. v. Nestle Waters N. Am. Inc.*, 123 F. Supp. 3d 357 (N.D.N.Y. 2015) .................................................................................32

*Palmyra Park Hosp. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291 (11th Cir. 2010).................................................................................6

*Philadelphia Taxi Ass'n v. Uber Techs*, 886 F.3d 332 (3d Cir. 2018) ...................27

*PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521 (N.D. Cal. Apr. 25, 2014).................................................................................28, 29

*Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072 (11th Cir. 2016) ............................13

*Re-Alco Indus. v. Nat'l Center for Health Educ.*, 812 F. Supp. 387 (S.D.N.Y. 1993).................................................................................15

*Retina Assocs., P.A. v. S. Baptist Hosp.*, 105 F.3d 1376 (11th Cir. 1997) (per curiam) ...................................................................................8

*Riley v. Hannibal,* 2017 WL 5235673 (N.D. Ga. June 29, 2017) ...........................34

*Robles v. Humana Hosp.*, 785 F. Supp. 989 (N.D. Ga. 1992).................................11

*Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874 (N.D. Cal. 2011) ....................28

*Schor v. Abbott Labs.*, 457 F.3d 608 (7th Cir. 2006)..............................................28

*Servicetrends, Inc. v. Siemens Med. Sys.*, 870 F. Supp. 1042 (N.D. Ga. 1994) ...................................................................................17, 30

*SHM Int'l Corp. v. Guangdong Chant Grp., Inc.*, 2016 WL 4204553 (N.D. Ga. June 29, 2016).................................................................................34

*Sommers Co. v. Moore*, 621 S.E.2d 789 (Ga. Ct. App. 2005)................................35

*Spanish Broad. Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065 (11th Cir. 2004).................................................................................15

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993).....................................27

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) ..........................31, 32

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991)....................5, 6

*Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254 (11th Cir. 2019) ...................................................................................................11

*Tri-State Broad. Co. v. United Press Int'l, Inc.*, 369 F.2d 268 (5th Cir. 1966) .........................................................................................................29

*Tribeca Homes, LLC v. Marathon Inv. Corp.*, 745 S.E.2d 806 (Ga. Ct. App. 2013) ..................................................................................................34

*U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986 (11th Cir. 1993) ...................16, 18, 27

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)...........................................16

*Verizon Comm'cn Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004)..................................................................................27

*Vesta Corp. v. Amdocs Mgmt.*, 129 F. Supp. 3d 1012 (D. Or. 2015) .....................29

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018)...............................3

*Vitacost.com, Inc. v. Gaia Herbs, Inc.*, 2007 WL 951768 (S.D. Fla. Mar. 28, 2007)...............................................................................................7

*YMD Records, LLC v. Ultra Enters., Inc.*, 361 F. Supp. 3d 1258 (S.D. Fla. 2019) ...............................................................................................13, 15

**INTRODUCTION**

This lawsuit is a poor attempt to manufacture a sprawling antitrust case by a Plaintiff unconnected to the vast majority of the Complaint's allegations.  When stripped of its window-dressing, the Complaint alleges that Plaintiff was harmed only by the industry-wide transition from Flash ("a proprietary technology owned by Adobe" to display videos on websites) to HTML5 (an open-standards competitor).  Compl. ¶¶ 115-32, ECF No. 1.  That event—never the subject of any alleged government investigation—provides no basis for an antitrust claim.

Plaintiff therefore attempts to distract the Court with allegations plainly gathered from media articles purportedly describing others' factually unsupported grievances—none proven to violate antitrust law in any United States court—which do not even impact Plaintiff and about which there is limited (if any) detail. The Complaint also offers no factual allegations connecting *Plaintiff's* business to any of the purported markets where Plaintiff alleges Google has a "durable" monopoly: (1) Internet Search; (2) Licensable Mobile Device Operating Systems; (3) Search Advertising; and (4) Ad Servers.  *Id*. ¶ 86.  So, too, in the "Web Browser" market, where Google's purported monopoly allegedly is emerging.  *Id.* ¶ 87.  Plaintiff's antitrust claims regarding those markets should be dismissed on constitutional and antitrust standing grounds.  *Infra* Section II.B.

Plaintiff alleges that it competes with Google *only* in a supposed Online Advertising market.  Compl. ¶ 111.  For antitrust claims related to that market, however, Plaintiff has not pled facts to establish antitrust standing.  *Infra* Section II.C.  And, even if Plaintiff could establish such standing, each of Plaintiff's antitrust claims should be dismissed because Plaintiff's shotgun pleading suffers from myriad pleading and legal deficiencies.  *Infra* Sections III-VII.

Plaintiff's tortious interference claim alleges that a member of "the Google team" contacted one of Plaintiff's unnamed advertising customers and attempted to persuade the customer to switch to Google.  Compl. ¶ 134.  The allegations regarding that single incident are insufficient to establish standing, *infra* pg. 4 n.3, or to state a claim under Georgia law, *infra* Section VIII.[1]

## ARGUMENT

## I.  LEGAL STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss, a plaintiff must allege a basis for liability that is plausible and supported by non-conclusory allegations.  *Bell Atlantic Corp.*

---

[1] Google Inc. and YouTube, Inc. no longer exist as corporate entities.  Compl. ¶¶ 12, 14.  In addition, the Complaint does not allege that Alphabet Inc. or YouTube, LLC have monopoly power in any relevant market or have engaged in any anticompetitive conduct.  All claims against Alphabet Inc. and YouTube, LLC therefore may be dismissed on those grounds alone.

*v. Twombly*, 550 U.S. 544, 555-56 (2007). It thus "must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555)). Moreover, a court need not accept as true conclusory statements or "'threadbare recitals of the elements of a cause of action.'" *Id*. at 1333 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings" like the Complaint here. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). It is chock-full of "conclusory, vague and immaterial facts that do not clearly connect to a particular cause of action," it contains "multiple counts that each adopt the allegations of the preceding counts," and it is "virtually impossible to know which allegations of fact are intended to support which claims of relief since each cause of action incorporates [around] 200 paragraphs." *Clifford v. Federman*, No. 1:18-cv-1953-JPB, ECF 281, at 3-4 (N.D. Ga. Jan. 7, 2020) (internal quotation marks omitted). Here, the Court need not "engag[e] in the painstaking task of wading through and deciphering Plaintiff['s] tangled mass of allegations," *id*. at 2, because Plaintiff lacks standing to pursue any of its claims. If the Court were to do so, it will find numerous deficiencies for each Count. This brief describes those flaws, with a particular emphasis on the Online Advertising

3

market (the only alleged market where Plaintiff claims it competes with Google).

## II.    PLAINTIFF DOES NOT HAVE STANDING TO BRING SUIT

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Plaintiff conjures six alleged antitrust markets—the "Leveraged Markets"—purportedly implicated in one or more of its federal antitrust claims. Compl. ¶¶ 5, 86-87.[2]  But the Complaint fails to allege how Plaintiff suffered an injury in, or is otherwise connected to, five of those six markets.  Plaintiff therefore lacks Article III standing and antitrust standing to pursue claims regarding those markets.  With respect to the alleged Online Advertising market—the only market in which Plaintiff claims it competes with Google and in which it conceivably could have been injured—Plaintiff cannot show that it satisfies the more rigorous requirements for antitrust standing.[3]

### A.    Plaintiff Must Establish Article III and Antitrust Standing

Article III of the U.S. Constitution mandates that federal courts cannot

---

[2] The Counts refer to "Leveraged *Markets*," but that phrase is not defined in the Complaint.  We assume it refers to "Leveraged *Monopolies*."  Compl. ¶ 5.

[3] Plaintiff does not have Article III standing to pursue a tortious interference claim because it also was not injured by any alleged interference.  *See infra* Section VIII.

adjudicate a claim unless a plaintiff demonstrates: (1) an injury in fact that is

concrete, particularized, and actual or imminent; (2) a causal connection between

the injury and the conduct complained of; and (3) a likelihood that the injury will

be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992). To satisfy this burden, "a plaintiff must clearly allege facts demonstrating

each element." *Aaron Private Clinic*, 912 F.3d at 1336 (internal quotation marks

omitted). This requirement applies "for *each claim* [plaintiff] seeks to press."

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added).[4]

"In addition to the basic . . . 'injury in fact' required by Article III . . . , a

private plaintiff who seeks damages under the antitrust laws . . . must establish

'antitrust standing.'" *Feldman v. Am. Dawn, Inc*., 849 F.3d 1333, 1340 (11th Cir.

2017). This Circuit follows a two-pronged approach to determine whether a

plaintiff has antitrust standing: "First, a court should determine whether the

plaintiff suffered 'antitrust injury,'" *Todorov v. DCH Healthcare Auth*., 921 F.2d

1438, 1449 (11th Cir. 1991), "which is to say injury of the type the antitrust laws

were intended to prevent and that flows from that which makes defendants' acts

---

[4] *See also Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("Nor does a
plaintiff who has been subject to injurious conduct of one kind possess by virtue of
that injury the necessary stake in litigating conduct of another kind, although
similar, to which he has not been subject." (internal quotation marks omitted))

unlawful," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489

(1977).  Under the second prong, "the court should determine whether the plaintiff

is an efficient enforcer of the antitrust laws."  *Todorov*, 921 F.2d at 1449.  Factors

that bear on this inquiry include:  "1) the existence of a causal connection between

the antitrust violation and the alleged injury; 2) the nature of plaintiff's alleged

injury; 3) the directness or indirectness of the asserted injury and the related

inquiry of whether the damages are speculative; 4) the potential for duplicative

recovery or complex apportionment of damages; and, finally, 5) the existence of a

more direct victim of the alleged anti-competitive conduct."  *Austin v. Blue Cross*

*& Blue Shield*, 903 F.2d 1385, 1388 (11th Cir. 1990); *accord Palmyra Park Hosp.*

*v. Phoebe Putney Mem'l Hosp*., 604 F.3d 1291, 1304-06 (11th Cir. 2010).

### B.  Plaintiff Has Not Pled Facts to Establish Article III or Antitrust Standing in the Non-Online Advertising Markets

Plaintiff's Complaint is replete with conclusory and superfluous allegations

of purported conduct that allegedly impacted six supposed markets.  Compl. ¶¶ 86-

87.[5]  Yet, the *only* alleged injury suffered by Plaintiff is that its *online video*

*advertising business* lost profits due to "Google's restrictions on Flash, and the

---

[5] Many of the allegations have no bearing on Plaintiff's claims.  *See, e.g.* Compl.
¶¶ 9, 186-194 (describing regulatory investigations); ¶¶ 76-83 (listing Google's
acquisitions); ¶¶ 161-185 (alleging Google's purported influence on government).

way in which Google implemented them."  Compl. ¶ 126.  Plaintiff therefore lacks

Article III standing to pursue claims regarding conduct in any alleged market other

than Online Advertising because it has not alleged an injury traceable to conduct in

those markets.  *See, e.g.*, *Aaron Private Clinic*, 912 F.3d at 1338 ("threadbare

allegations" of injury insufficient for Article III standing).[6]

Plaintiff also cannot establish antitrust standing, a higher threshold required

for antitrust plaintiffs to recover treble damages.  For example, because Plaintiff

does not allege that it is a consumer or competitor in any non-Online Advertising

market, it is not an "efficient enforcer" of claims arising from alleged wrongs in

those markets.  *See Vitacost.com, Inc. v. Gaia Herbs, Inc.*, 2007 WL 951768, at *4

(S.D. Fla. Mar. 28, 2007) ("[T]he Eleventh Circuit has held that to satisfy [the

efficient enforcer] prong, a plaintiff needs to be either a consumer or competitor of

the Defendant or the Defendant's products." (citing *Fla. Seed Co. v. Monsanto Co.*,

105 F.3d 1372, 1374 (11th Cir. 1997)).  And, other than the purported injury from

the industry-wide Flash to HTML5 transition, Plaintiff has not claimed *any* injury,

---

[6] *See also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 984 (11th Cir. 2005) (affirming dismissal of case on standing grounds when the injury claimed was injury to a third-party not to the plaintiff); *Griffin*, 823 F.2d at 1483 (reversing district court's ruling and dismissing case on standing grounds when plaintiff alleged injury as to one aspect of government's actions but not as to another).

let alone an "antitrust injury."

Plaintiff's claims regarding anticompetitive conduct in the alleged Internet Search, Licensable Mobile Device Operating Systems, Search Advertising, Ad Server, and Web Browser markets therefore should be dismissed. *See, e.g.*, *Retina Assocs., P.A. v. S. Baptist Hosp.*, 105 F.3d 1376, 1384 (11th Cir. 1997) (per curiam) ("summarily dismiss[ing]" claim that "ha[d] absolutely no relationship to the [conduct] alleged by Plaintiff and ha[d] caused the Plaintiff no damages").

### C.   Plaintiff Does Not Have Antitrust Standing to Pursue Claims Regarding the Alleged Online Advertising Market

The only market in which Plaintiff conceivably could have Article III standing is the alleged Online Advertising market.  Specifically, Plaintiff claims that its online video advertising business (a small part of the broader alleged Online Advertising market) "plummet[ed]" when "many of [its] downstream digital publishers" were impacted by "Google's restrictions on Flash, and the way in which Google implemented them."  Compl. ¶ 126.  As detailed below, these allegations are insufficient to establish antitrust standing.

### 1.   Plaintiff Has Not Suffered an Antitrust Injury

Plaintiff's claimed lost profits from selling online video advertising do not qualify as an antitrust injury because Plaintiff has not alleged facts demonstrating that this loss was caused "by reason of anything forbidden in the antitrust laws."

8

*Brunswick Corp.*, 429 U.S. at 488.  As evident from the Complaint, Flash

technology was eclipsed by HTML5 due to competition on the merits where the

market chose HTML5.  Compl. ¶¶ 117-32.  Plaintiff nowhere alleges how the

multi-year, industry-wide adoption of HTML5 (a free open-standards technology,

*id*. ¶ 129), away from a proprietary product, Flash (that other web browsers also

experienced problems with, *id*. ¶ 117), resulted in any injury to Plaintiff arising

from anticompetitive harm to the Online Advertising market, as opposed to lawful

competition between Flash and HTML5.

Plaintiff concedes that Google "and the developers of other web browsers"

had concerns with Flash.  *Id*. ¶ 117.[7]  And by 2014, Plaintiff (and its advertising

customers) knew that Google Chrome was moving away from Flash and towards

HTML5's competing technology.  *Id*. ¶¶ 118-19.  It was not until *three years later*,

in 2017, that Google changed Chrome's default settings to disable Flash.  *Id*.

¶¶ 122-24.[8]  Accordingly, even the facts pled in the Complaint do not support the

---

[7] This is an understatement.  In a famous letter that confirms Plaintiff's concession here, Steve Jobs explained in 2010 why Apple refused to adopt Flash technology, citing reliability, security, and incompatibility with mobile devices.  *See* https://www.apple.com/hotnews/thoughts-on-flash/.

[8] Other competitors took similar steps, further confirming that Flash elicited industry-wide concerns.  In 2017, Adobe announced that Flash would be phased

absurd conclusion that Google gained customers "virtually overnight," *id.* ¶ 126, due to Google's adoption of HTML5 technology.

The Complaint also fails to allege that Google prevented Plaintiff or other competitors in the purported Online Advertising market (e.g., Facebook, Microsoft, Amazon) from making their services compatible with Google's Chrome browser—the key assumption in Plaintiff's causal chain.  For example, the Complaint admits HTML5 is an open-standards technology.  *Id*. ¶ 129.  And it does *not* allege that Google limited anyone's ability to create HTML5 videos or that Google required the use of a Google-owned product to create HTML5 videos. It also does not allege that any third-party's HTML5 videos were treated differently from any other HTML5 videos when viewed on Google Chrome. Indeed, it does not (and cannot) allege that Google Chrome was the only web browser to transition away from Flash or to impose similar limitations on video content.  Finally, it nowhere explains why Google's market share is only allegedly 40% today—and how Facebook has successfully achieved a significant 20% share—if Google's conduct "overnight" resulted in massive shifts to Google's advertising platform.  *Id*. ¶¶ 87(b), 126.

---

out, characterizing that move as *in collaboration* with Apple, Facebook, Google, Microsoft, and Mozilla.  *See* https://theblog.adobe.com/adobe-flash-update/.

Therefore, to the extent Plaintiff suffered any injury, it has not alleged facts supporting the notion that such injury resulted from Google's conduct at all and surely not the result of anything the antitrust laws prohibit.  As the Complaint itself indicates, the alleged injury instead is the result of Plaintiff's apparent decision not to adapt to the changing market between 2014 and 2017 by asking its advertisers to create HTML5 video content, instead continuing to use a proprietary, and outdated, Flash technology.  *See Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254, 1264 (11th Cir. 2019) (affirming dismissal when plaintiff failed to "allege[] facts showing it could have been injured in the ways alleged").  Google did not force Plaintiff to make such a decision.

### 2.    Inform Is Not a Proper Plaintiff

Plaintiff also is not an efficient antitrust enforcer of this alleged claim. Plaintiff acknowledges that its "injuries were only an indirect result of whatever harm may have been suffered," *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 541 (1983), by "downstream digital publishers," Compl. ¶ 126.  There are thus unquestionably better plaintiffs to bring suit if such actions were anticompetitive: the "dozens" of publishers allegedly directly impacted or Adobe itself.  *See id*. at 542; *Robles v. Humana Hosp.*, 785 F. Supp. 989, 999 (N.D. Ga. 1992) (antitrust standing lacking when there were "two more easily

11

imagined efficient enforcers").

Plaintiff's alleged injury also is indirect.  Based on the allegations, any such injury would have occurred only if: (1) a publisher provided video advertising space on its website to Plaintiff; (2) Plaintiff selected advertisements for that space that were not compatible with HTML5; (3) a consumer viewed the publisher's website using Google Chrome; and (4) the consumer otherwise would have clicked on or viewed the ad but did not do so because of Chrome's Flash-based limitations.  Compl. ¶¶ 99-100, 124.  Only then, because *the publisher* was injured, would Plaintiff allegedly suffer a derivative injury.  *Id.* ¶ 126.  Courts routinely dismiss claims on antitrust standing grounds where, as here, "the chain of causation between [its] injury and the alleged restraint . . . contains several somewhat vaguely defined links."  *Assoc. Gen. Contractors*, 459 U.S. at 540; *see also Austin*, 903 F.2d at 1392.  These facts also make Plaintiff's claim highly speculative, which "militates still further in favor of the conclusion that [it] lack[s] antitrust standing."  *Id.* at 1393.

Finally, there is a high likelihood of duplicate recoveries or a complex apportionment of damages (if Plaintiff even proves an antitrust violation).  Every other impacted player in Plaintiff's view of the world—including, *inter alia*, Adobe, publishers, and advertisers—would also then potentially claim entitlement

12

to recovery.  *See Associated Gen. Contractors*, 459 U.S. at 543-44.

## III.    PLAINTIFF HAS NOT PLED A SECTION I VIOLATION (COUNT I)

Count I asserts that Defendants violated Section 1 of the Sherman Act

through unidentified agreements that allegedly restrained trade.  Plaintiff does not

identify any *per se* violation, so its claims are evaluated under the Rule of Reason.

*Procaps S.A. v. Patheon, Inc*., 845 F.3d 1072, 1082 (11th Cir. 2016).  "The

elements of [such] a . . . claim are: (1) an agreement between two or more parties

(2) that unreasonably restrains trade."  *YMD Records, LLC v. Ultra Enters., Inc*.,

361 F. Supp. 3d 1258, 1264 (S.D. Fla. 2019).  To plead unreasonableness, a

plaintiff must (1) allege "either actual or potential harm to competition," and (2)

"identify the relevant market in which the harm occurs."  *Jacobs*, 626 F.3d at 1336.

### A.    Plaintiff Has Not Pled an Actionable Agreement

Plaintiff's Section 1 claim appears to allege that Defendants entered into

agreements *among themselves*.  *See* Compl. ¶¶ 198-99.  Plaintiff nowhere explains

what agreements Defendants entered into among themselves, or why those are

anticompetitive.  But even if it had, "it is . . . basic hornbook law that a company

and its wholly owned subsidiar[ies]," such as Defendants, "are legally incapable of

conspiring for purposes of a Section 1 claim."  *Procaps*, 845 F.3d at 1082 (citing

*Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 777 (1984)).  Plaintiff's

Section 1 claim therefore fails at the threshold because Alphabet, Google, and YouTube are legally incapable of conspiring with one another.[9]

**B.      Plaintiff Has Not Adequately Alleged Any Unreasonable Restraint of Trade in a Properly Defined Antitrust Relevant Market**

Plaintiff also has failed to demonstrate that any agreements unreasonably restrain trade in a properly alleged relevant antitrust market.  To plead "unreasonableness" under the antitrust Rule of Reason, a plaintiff must identify and properly define a relevant market and then adequately allege that harm to competition occurred or will occur in that market.  Plaintiff does neither.

As to the relevant market, Count I asserts that the purported harm occurs "in Defendants' Leveraged Markets."  Compl. ¶ 199.  But the Complaint elsewhere concedes that the purported harm occurs only "in the market for web applications," *id*. ¶ 154—an undefined market that is *not* part of "Defendants' Leveraged Markets," *id*. ¶ 5.  Either way, Plaintiff has failed to carry its burden:  if the former is true, it lacks any factual support in the Complaint; if the latter is true, Plaintiff also has failed to properly define the relevant market.  *See, e.g., Jacobs*, 626 F.3d

---

[9] Plaintiff makes vague references to agreements between Google and unidentified third parties.  Compl. ¶¶ 148, 151-53.  These conclusory allegations are legally insufficient, and they fail to plead harm to competition in a properly defined relevant market, as discussed below.  *See infra* Section III.B.

14

at 1336-38; *Re-Alco Indus. v. Nat'l Center for Health Educ.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993).

Even if Plaintiff had adequately defined a relevant antitrust market, it has not adequately alleged harm to competition caused by any agreement. Count I contains nothing but legal conclusions, devoid of any factual content, which does not satisfy Plaintiff's "burden of demonstrating damage to competition with *specific factual allegations*." *Jacobs*, 626 F.3d at 1339 (emphasis added).[10]

## IV.  PLAINTIFF HAS NOT PLED A SECTION 2 CLAIM FOR MONOPOLY MAINTENANCE (COUNT II)

In Count II, Plaintiff purports to bring a Sherman Act Section 2 claim for

---

[10] *Compare* Compl. ¶ 199 ("Defendants' . . . behavior[s] . . . prevent, restrict or interfere with competition"); *id.* ¶ 200 ("Defendants' illegal conduct have resulted in . . . higher prices paid by consumers . . . , higher prices for advertising, and the forcing of Plaintiff and others to use Google products and services . . . ."); *id.* ¶¶ 148, 153-54 (similar), *with Spanish Broad. Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065, 1078-79 (11th Cir. 2004) (allegations that conduct "limit[ed] alternatives available" or "affect[ed] prices for advertisements, the quality of programming, and the prices for advertisers' products" were "general, conclusory statements" insufficient to allege harm to competition); *YMD Records, LLC v. Ultra Enters.*, 361 F. Supp. 3d 1258, 1266 (S.D. Fla. 2019) (granting motion to dismiss because "allegations that Ultra could control prices, restrict access to vendors and performers, and reduce consumer choice, are purely speculative"); *Keller v. Greater Augusta Ass'n of Realtors*, 760 F. Supp. 2d 1373, 1378 (S.D. Ga. 2011) (dismissing complaint despite allegations that the conduct restrained plaintiff's "ability to make his services available to the public and other Brokers" and "[a]s a result, the public choice in the relevant market is artificially and improperly limited and there is a diminution in the quality of service").

"Monopoly Maintenance."  Plaintiff's monopoly maintenance claim fails as to the

alleged Online Advertising market because the Complaint: (1) does not allege that

any Defendant has a monopoly in that market; (2) fails to adequately define that

market; and (3) does not adequately plead any anticompetitive conduct that would

facilitate maintenance of such a monopoly.  Plaintiff's claim fails as to every other

alleged market because the Complaint does not adequately define the markets or

adequately allege facts regarding anticompetitive conduct in those markets.

### A.    Plaintiff Has Not Pled Facts Showing Monopoly Power in a Properly Defined Relevant Market and Anticompetitive Conduct

To state a claim for monopoly maintenance, a plaintiff must allege "(1) the

possession of monopoly power in the relevant market and (2) the willful . . .

maintenance of that power as distinguished from growth or development as a

consequence of a superior product, business acumen, or historic accident."  *United

States v. Grinnell Corp*., 384 U.S. 563, 570-71 (1966).  "[M]onopoly power" is

"the power to control prices in or to exclude competition from the relevant

market."  *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294 (11th

Cir. 2004).  While under certain conditions, monopoly power may be inferred from

a predominate share of the market, courts do not find "the existence of actual

monopoly established by a bare majority share."  *U.S. Anchor Mfg. v. Rule Indus.,*

7 F.3d 986, 1000 (11th Cir. 1993).  Instead, "the classic guidelines of market share

sufficient to constitute monopoly power" are that "90% market share constitutes a monopoly, 64% is doubtful, and 33% is not enough."  *Servicetrends, Inc. v. Siemens Med. Sys.*, 870 F. Supp. 1042, 1052 n.4 (N.D. Ga. 1994).

To adequately allege a relevant market, a plaintiff "must define both (1) a geographic market and (2) a product market," and, for each, "must present enough information in their complaint to plausibly suggest the contours of" those markets, including the "alternative sources" for a defendant's products.  *Jacobs*, 626 F.3d at 1336-37; *accord Levine v. Cent. Fla. Med. Affiliates*, 72 F.3d 1538, 1552 (11th Cir. 1996).  The willful maintenance element "requires predatory or exclusionary acts or practices that have the effect of preventing or excluding competition within the relevant market."  *Morris*, 364 F.3d at 1294.  In other words, "anticompetitive conduct" is "conduct without a legitimate business purpose that makes sense only because it eliminates competition."  *Id*. at 1295.

### B.    Plaintiff Has Not Stated a Claim for Monopoly Maintenance of the Alleged Online Advertising Market

Plaintiff's claim of monopoly maintenance as to an alleged Online Advertising market fails for three independent reasons.

### 1.    Plaintiff Has Not Pled that Any Defendant Has Monopoly Power in the Alleged Online Advertising Market

Plaintiff has not pled the most basic fact necessary for a monopoly

17

maintenance claim: that any Defendant currently has monopoly power in the alleged Online Advertising market.  At most, Plaintiff claims that Google is "achieving" monopoly power, but does not possess it.  Compl. ¶ 87.  Nor could Plaintiff cure this defect:  Plaintiff alleges that Google has a 40% market share, which does not constitute monopoly power as a matter of law.  *U.S. Anchor Mfg.*, 7 F.3d at 1000.  Plaintiff also alleges the presence of a large competitor in the market—Facebook—further dispelling the notion that Google has monopoly power.  Compl. ¶ 87(b).  And Plaintiff alleges no facts to support the notion that Google can raise prices or exclude competitors in that market.

> ### 2.  Plaintiff Has Not Adequately Pled Facts Establishing Online Advertising as a Relevant Market

Plaintiff also has failed to plead facts necessary to establish the existence of an Online Advertising market.  The Complaint purports to describe how online advertising works, Compl. ¶¶ 18-30, but does not allege facts detailing why online advertising is distinct from other forms of advertising, such as television, radio, print, or billboard advertising.  *See Jacobs*, 626 F.3d at 1336-38.  Without any factual allegations explaining why consumers or advertisers view online advertising as a market distinct from other forms of advertising, or other economic indicia suggesting that online advertising does not compete with other advertising, Plaintiff has simply identified a product—not an antitrust relevant market.

Furthermore, Plaintiff nowhere alleges a geographic component of this market, which is a necessary prerequisite for this claim.  *Id.* at 1336.

> **3.     Plaintiff Has Not Adequately Pled Facts Establishing Anticompetitive Conduct in the Alleged Online Advertising Market**

Plaintiff also failed to plead any anticompetitive conduct in the alleged Online Advertising market.  As noted, the only conduct allegedly affecting Plaintiff as a competitor in that market was the transition from Flash to HTML5, which was the result of competition between the products.  *See supra* Section II.C. This transition did not exclude or harm competition for any number of reasons.

*First*, Plaintiff does not allege that it (or any other competitor) was excluded as a result of the industry-wide adoption of HTML5.  Nor could it:  at most, advertisers—whether they were Google Ads customers or Plaintiff's customers— needed to convert existing advertisements to HTML5 or produce future HTML5-compatible content.  Compl. ¶ 120.  Plaintiff does *not* allege that Google blocked Plaintiff's customers from converting to HTML5 or from continuing to use Plaintiff's online video advertising technology.  As an open-standards based technology, HTML5 is by definition available to the entire industry.  Nor does Plaintiff allege that Chrome blocks Plaintiff's (or other competitors') HTML5 advertisements, while allowing Google's, or that Google's new customers now

using HTML5 could not switch to other advertising companies using HTML5.
Instead, Plaintiff concedes that Chrome uses technology to determine whether a
user is likely to want to see videos run automatically, based on the user's
propensity for watching videos, regardless of the source of the ads. *Id.* ¶ 130.
Plaintiff even alleges that Google has exempted certain non-Google sites that
display high volumes of videos from these limitations—including sites operated by
some of Google's biggest competitors (Amazon and Microsoft), *id.* ¶ 131[11]—
hardly the mark of a supposed monopolization scheme.

    *Second*, Plaintiff does not (and could not) plausibly allege that this design
decision lacks a valid business purpose, which courts for decades have required to
impose liability in such situations. *See, e.g.*, *Cal. Comput. Prods.*, *Inc. v. IBM
Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) ("IBM, assuming it was a monopolist,
had the right to redesign its products to make them more attractive to buyers . . . It
was under no duty to help [competitors] survive or expand."); *Allied Orthopedic
Appliances v. Tyco Health Care Grp.*, 592 F.3d 991, 999-1000 (9th Cir. 2010)
(describing "uncontroversial proposition that product improvement by itself does
not violate Section 2, even if it is performed by a monopolist and harms

---

[11] While Plaintiff casts YouTube's exemption as nefarious, Compl. ¶ 131, the fact
that Google exempted similar competitors undermines Plaintiff's characterization.

competitors as a result"). To the contrary, Plaintiff admits that competing web browsers also had concerns with Flash. Compl. ¶ 117. And Plaintiff acknowledges that Chrome's Flash restrictions protected consumers from being bombarded with video and audio that were not "central to the webpage" on sites where an individual did not expect such content. *Id*. ¶¶ 121, 130. The Complaint thus acknowledges numerous legitimate business justifications for these changes, including industry-wide concerns and improving the user experience.

*Third*, Plaintiff has not pled facts demonstrating durable, industry-wide harm to competition in an alleged Online Advertising market. It is black-letter antitrust law that conduct that harms only a competitor, but not competition, does not violate the antitrust laws. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Plaintiff only alleges increased costs associated with moving *existing* content to HTML5, Compl. ¶ 120—not forward-looking costs during this years-long transition—and makes conclusory allegations regarding its lost profits, *id*. ¶ 126. Plaintiff does not plead specific facts demonstrating that this change in technology caused market-wide harm, and its attempt to cast a wider net falls flat.[12]

---

[12] The only arguably factual allegations are that "*dozens* of digital advertisers and publishers were severely impacted . . . including *many* of Inform's . . . publishers." Compl. ¶ 126 (emphases added). But the Complaint alleges that Plaintiff alone had

Such minimal allegations regarding an unidentified group of competitors offering only online video advertisements (which is but a segment of the alleged Online Advertising market that includes text and other online ads), does not suffice to demonstrate harm to competition.

### C.   Plaintiff Has Not Adequately Pled Monopoly Maintenance

Even if Plaintiff had standing to pursue claims relating to markets other than the alleged Online Advertising market (it does not), its monopoly maintenance claim regarding those alleged markets should be dismissed because Plaintiff has not pled facts demonstrating (1) that these other markets are relevant antitrust markets, and (2) that Defendants engaged in anticompetitive conduct that has allowed Defendants to maintain an alleged monopoly in those markets.

As to the alleged markets, the Complaint provides no factual basis for Plaintiff's conclusory allegation that there are relevant antitrust markets consisting of Internet Search, Licensable Mobile Device Operating Systems, Search Advertising, Ad Servers, and Web Browsers.  Compl. ¶¶ 86-87.  Plaintiff pleads no facts describing their contours, including their geographical reach, the extent to which other technologies are substitutable or competitive with these products, or

---

a network of "approximately 5,000 publishers" and an untold number of advertisers, *id.* ¶ 107, meaning only a small subset were allegedly impacted.

otherwise explaining why these products are distinct economic markets that qualify as relevant antitrust markets.  Plaintiff does nothing more than allege Google's purported market share, with no other facts to suggest that it gives Google the ability to exclude competition or raise prices.  That is insufficient as a matter of law.  *See Jacobs*, 626 F.3d at 1336; *Levine*, 72 F.3d at 1552.

As to the alleged conduct, Plaintiff alleges a number of purportedly "anticompetitive, illegal and deceptive practices" in laundry-list fashion, Compl. ¶¶ 140, 149, but does not explain how these practices harmed competition in any alleged market, or how Google maintained any alleged monopoly as a result of such conduct.  For example, Plaintiff cannot simply declare that "bundling or illegally tying the use of Google's DoubleClick Ad Server with the real-time bids from Google's AdX marketplace," *id.* ¶ 140(a), is illegal—there is not a single fact explaining what this means, much less its effect on competition in any market. Bundling two products together for sale is not *per se* unlawful under the antitrust laws. *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 711-12 (11th Cir. 1984).  Accordingly, Plaintiff must plead more than the fact of alleged bundling to prove a monopolization claim based on this conduct.  Plaintiff's allegation that Google is "[u]sing the Google Ad Server to control every facet of how ads end up on websites and smartphone apps" and "manipulating this control

23

to preferentially treat Google's own stable of products and services," Compl. ¶

140(b), is similarly devoid of any facts explaining what preferential treatment has

been afforded to which Google products and services (or how this harmed

competition or Plaintiff).  Plaintiff's other conclusory allegations fare no better:

- No facts explaining how Google's alleged tie of the purchase of ads on YouTube to the purchase of Google's own ad buying tools has impacted any competitor, or how Google allegedly has made "rival tools for placing ads in video streams less attractive to advertisers because they can only access smaller audiences."  *Id.* ¶ 140(c).

- No explanation as to how alleged pre-installation of Google Search and Google Chrome on the Android operating system harms competition in any relevant market.  *Id.* ¶¶ 140(g); 146-50; *see also supra* Section III.B.

- No description of how Google "obstruct[s] the development and distribution of competing online video ads and advertising platforms."  *Id.* ¶ 140(h).

- No explanation as to how alleged "last look" for advertisers to outbid other advertisers has facilitated monopolization of any market.  *Id.* ¶ 140(i).

- No description of how Google contractually tied the purchase of undefined products that have been rebranded as "Google Ad Manager," or how this has harmed competition in any relevant market.  *Id.* ¶ 140(j).

- No description of how Google is "[u]suriously increasing the cost of rival online video platforms' use of Google's goods and services," what contracts have been unilaterally terminated, or how Google has refused to deal or do business with competitors.  *Id.* ¶ 140(k).

- No facts establishing that any particular website was prevented by an exclusive contract from displaying Internet *search ads* (not video display ads) from Google's competitors or that Google imposed unreasonable terms on websites or advertising sellers that prevented competition in search ads. *Id.* ¶¶ 141-43.

24

- No identification of a "competing site[]" that Google misappropriated content from to place in its own search results, or a "small business" that has been restricted from advertising on competing search platforms. *Id.* ¶ 144.

- No explanation of how Google prioritized its own search services or products in its search algorithms over competing vertical sites, "scrap[ed]" content from unidentified rivals' websites, or placed undue restrictions on advertisers or their video content—or how any such alleged conduct harmed competition. *Id.* ¶ 145.[13]

Plaintiff's failure to substantiate this alleged anticompetitive conduct with specific factual allegations—much less describe the extent to which such conduct has unlawfully excluded competitors or otherwise harmed competition—is not surprising. None of this alleged conduct was directed at Plaintiff, and Plaintiff does not claim to have suffered any injury arising from such conduct.

## V.  PLAINTIFF HAS NOT PLED A SECTION 2 CLAIM FOR ATTEMPTED MONOPOLIZATION (COUNT IV)

Count IV claims that Defendants have attempted to monopolize the alleged Web Browser and Online Advertising markets. A plaintiff bringing such a claim "must plausibly assert three things: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in a relevant market. *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1263 (11th Cir. 2015)

---

[13] The conduct referenced in ¶ 140(d)-(f) is addressed *supra* Sections II.C.1 and IV.B.3. The conduct referenced in ¶ 140(l) is addressed *infra* Section VIII.

(internal quotation marks omitted).  This claim fails for all of the same reasons as the monopoly maintenance claim:  Plaintiff does not adequately define these purported markets and does not allege—in a non-conclusory fashion—how any of Defendants' conduct was predatory or anticompetitive.  *See supra* Section IV.C.

With respect to the alleged Online Advertising market in particular, Plaintiff also has not sufficiently pled that there is a dangerous probability Defendants will attain monopoly power.  Plaintiff alleges Google has a 40% share, Compl. ¶ 87(b)—far short of what courts require to state such a claim.  *See, e.g.*, *Duty Free Ams.*, 797 F.3d at 1264; *Gulf States Reorganization Grp. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1237 (N.D. Ala. 2011) (when "the alleged monopolist's market share is less than 50% of the market . . . , there" is "no dangerous probability of success as a matter of law"), *aff'd*, 721 F.3d 1281 (11th Cir. 2013).

Moreover, even when a defendant possesses the requisite "sizable market share," other relevant factors may demonstrate that it is unlikely to succeed in monopolizing the relevant market.  *See, e.g.*, *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992) (strength of competition from rival firms among "other factors" relevant to assessing dangerous probability).  Here, those factors further counsel in favor of dismissal.  For example, Facebook's significant presence in the market, Compl. ¶ 87(b), coupled with a lack of allegations suggesting that

26

Google's conduct has adversely impacted Facebook (or any other online advertiser) undercuts any notion that there is a dangerous probability that Google can monopolize an alleged Online Advertising market. *Id.; see also U.S. Anchor Mfg.*, 7 F.3d at 994 (explaining that "strength and capacity of current competitors" is relevant to determining whether a party is likely to successfully monopolize a market); *accord Philadelphia Taxi Ass'n v. Uber Techs*, 886 F.3d 332, 342 (3d Cir. 2018). And Plaintiff alleges that Google has been trying to monopolize this market "for many years," Compl. ¶ 4, yet only managed to obtain an alleged 40% share. Plaintiff offers no reason to think Google is on the precipice of such power now.

## VI.   PLAINTIFF CANNOT ALLEGE A MONOPOLY LEVERAGING CLAIM (COUNT III)

To mask the flaws in its Sherman Act claims, Plaintiff asks the Court to condone a free-standing "monopoly leveraging" claim. *See* Compl. ¶¶ 206-10. Courts nationwide have rejected such attempts. This Court should too.

At the outset, Plaintiff is simply wrong on the law. The Complaint cites the Supreme Court's 1992 decision in *Eastman Kodak* as support for the idea that, *on its own*, monopoly leveraging violates Section 2. *See* Compl. ¶ 137 n.19. Plaintiff omits the Supreme Court's subsequent considerations of that issue: *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) and *Verizon Comm'cn Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004). Since those

27

rulings, the consensus is that monopoly leveraging is not a stand-alone claim: "[it] can exist *only* where the requirements for the attempt to monopolize offense in the second market have been satisfied." Areeda & Hovenkamp, *Antitrust Law* ¶ 772, at 237 (2015).[14] Monopoly leveraging may, at most, be a theory that applies to Plaintiff's other theories, *if anticompetitive conduct is adequately alleged* there. *See, e.g.*, *Covad Commc'ns Co. v. Bellsouth Corp.*, 374 F.3d 1044, 1047 n.4 (11th Cir. 2004); *Morris Commc'ns*, 364 F.3d at 1293 n.11.

In other words, the act of "monopoly leveraging" itself does not "constitute anticompetitive conduct" and thus does not cure an otherwise deficient claim. *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *9 (N.D. Cal. Apr. 25, 2014); *see also Schor v. Abbott Labs.*, 457 F.3d 608, 611 (7th Cir. 2006) (questioning legitimacy of "free-standing theory of 'monopoly leveraging'"). Where, as here, a plaintiff fails to adequately allege anticompetitive conduct separate and apart from the purported leveraging, *see supra* Sections III-V, labeling a claim "'monopoly leveraging' won't do anything to save it." *Four Corners Nephrology Assocs. v.*

---

[14] *See also Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874, 895 (N.D. Cal. 2011) ("[M]onopoly leveraging, on its own, is not proscribed under Section 2."); *Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475, 487 (D. Md. 2008) (noting that the "Supreme Court has held that monopoly leveraging does not provide a basis for recovery distinct from a monopolization claim").

*Mercy Med. Ctr.*, 582 F.3d 1216, 1222 (10th Cir. 2009).[15]

Finally, assuming *arguendo* that Plaintiff could state a stand-alone claim for monopoly leveraging, Plaintiff has not explained *how* Google's supposed monopolization of other markets will allow Google to monopolize the alleged Online Advertising or Web Browser markets.  Indeed, like the plaintiff in *PNY Technologies*, Plaintiff has made only conclusory allegations that Google leveraged its monopoly power in its monopolization attempts.  *See, e.g.*, Compl. ¶¶ 112, 138, 207.  That is not enough.  *See PNY Techs.*, 2014 WL 1677521, at *9.

## VII.  PLAINTIFF HAS NOT PLED A CLAIM OF UNLAWFUL EXCLUSIVE DEALING UNDER SHERMAN ACT SECTION 2 OR CLAYTON ACT SECTION 3 (COUNT V)

Count V alleges that Google entered into exclusive dealing agreements in violation of the Sherman and Clayton Acts.[16]  To assert an exclusive dealing claim, a plaintiff must plead: (1) an exclusive agreement (2) that substantially forecloses competition (3) in a relevant market.  *McWane, Inc. v. FTC*, 783 F.3d 814, 827, 835-36 (11th Cir. 2015); *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403

---

[15] *See also Vesta Corp. v. Amdocs Mgmt.*, 129 F. Supp. 3d 1012, 1035 (D. Or. 2015); *PNY Techs., Inc.*, 2014 WL 1677521, at *9.

[16] Plaintiff's Clayton Act Section 3 claim cannot survive because Section 3 applies only to tangible commodities.  *See, e.g., Tri-State Broad. Co. v. United Press Int'l, Inc.*, 369 F.2d 268, 270 (5th Cir. 1966).

(3d Cir. 2016).  Plaintiff has not done so.

### A.    Plaintiff Has Not Adequately Alleged any "Exclusive" Agreement

Plaintiff's exclusive dealing claim appears to be based on alleged agreements between Google and various original equipment manufacturers ("OEMs") to pre-install Google Search on certain Android devices.[17]  *See* Compl. ¶ 149(b).  But the Complaint fails to provide any details thereof—which are required to state such a claim—including the number of OEMs with such agreements, the extent of any alleged foreclosure of a market, or the duration of the agreements.  *See, e.g.*, *Servicetrends, Inc.*, 870 F. Supp. at 1066; *E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs.*, 357 F.3d 1, 6-9 (1st Cir. 2004).

More fundamentally, the Complaint fails to describe how such agreements could be viewed as "exclusive," given that Plaintiff did not, for example, allege any facts about Google somehow blocking rival applications from reaching users. At best, Plaintiff's allegation is that some consumers had Google applications *pre-loaded* on their mobile devices.  Plaintiff ignores that, at any time thereafter, consumers are free to download and use any other application they desire, and to

---

[17] Count V asserts it also covers agreements "with publishers" and "advertisers," Compl. ¶ 222, but Plaintiff provides no factual detail about any such agreements.

modify their settings if they wish to make such downloaded apps the default

technology.  Plaintiff does not (and cannot) allege that Google designed the

Android operating system to only run one web browser or Internet search engine.

**B.    Plaintiff Has Not Adequately Alleged That Any "Exclusive Agreement" Substantially Foreclosed Competition in a Relevant Market**

The Complaint also fails to allege that any such agreements substantially

foreclosed competition in a properly defined antitrust market.  The first step in this

analysis is to identify the relevant market allegedly foreclosed.  *Tampa Elec. Co. v.*

*Nashville Coal Co*., 365 U.S. 320, 329 (1961).  As noted, Plaintiff has failed to

adequately define any of its markets.  *See supra* Sections IV.B.2, IV.C.  And the

problem is even worse here: Plaintiff appears to acknowledge that the claimed

agreements only affect the alleged Internet Search and Web Browser markets,

Compl. ¶ 150, but nonetheless claims in Count V that all six of the alleged

"Leveraged Markets" were affected, *id*. ¶ 226.  Plaintiff provides no explanation

for this discrepancy.  Plaintiff's failure to adequately identify the markets at issue

is fatal to its claim.  *Tampa Elec.*, 365 U.S. at 329 (holding that lower courts'

failure to adequately evaluate the relevant market in an exclusive dealing claim

was an "omission [that], by itself, requires reversal").[18]

The second step is to determine whether competition in the relevant market was substantially foreclosed. *Id.* The Complaint fails to provide any detail about if, or by how much, competition was foreclosed in *any* market, let alone facts from which a Court could determine the foreclosure was "substantial." Nor could it. "In analyzing the amount of foreclosure, [the] concern is not about which products a consumer chooses to purchase, but about which products are reasonably available to that consumer." *Eisai*, 821 F.3d at 403-04. Where, as here, "customers are free to switch to a different product in the marketplace . . . competition has not been thwarted," even if the customers "choose not to do so." *Id.* Plaintiff did not (and could not) allege that customers lacked the ability to download other apps and therefore switch products.

## VIII. PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE (COUNT VI)

To state a claim for tortious interference of business relations, a plaintiff

---

[18] *See also E.T. Barwick Indus. v. Walter E. Heller & Co.,* 692 F. Supp. 1331 (N.D. Ga. 1987) ("[I]n order to determine whether a substantial share of the competition has been foreclosed, the relevant product and geographic markets must first be determined."), *aff'd*, 891 F.2d 906 (11th Cir. 1989); *Nirvana, Inc. v. Nestle Waters N. Am. Inc*., 123 F. Supp. 3d 357, 378 (N.D.N.Y. 2015) (dismissing exclusive dealing claims for failing to adequately allege relevant market).

must plead facts to establish that the defendant: "(1) acting improperly and without privilege (2) and acting purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff (4) for which the plaintiff suffered some financial injury." *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1340 (11th Cir. 2004).[19]

For its tortious interference claim, Plaintiff alleges that Google "contacted one of Inform's customers, sending them a screenshot to give them a 'heads up' when Inform's floating video player with that client's advertisement appeared next to content that Google misleadingly characterized as objectionable." Compl. ¶ 134. Plaintiff further alleges that Google "took this information to Inform's customer and used it *in an attempt* to convince Inform's customer that Google offered superior services." *Id.* (emphasis added). From this single alleged incident, Plaintiff claims that "Google's malicious conduct caused purposeful interference with Inform, its customers and business relationships." *Id.*

Plaintiff's tortious interference claim fails for multiple reasons. *First*, Plaintiff does not allege that Google induced the customer at issue to discontinue

---

[19] To the extent Plaintiff tries to plead tortious interference with contract, it must allege an existing contractual relationship. *Athens Int'l, Inc. v. Venture Capital Props*, *Inc*., 495 S.E.2d 900, 903 (Ga. Ct. App. 1998). None has been pled.

its business relationship with Plaintiff. The Complaint characterizes Google's efforts as "an attempt," *id*.; it does not assert that this attempt was successful. This flaw is fatal. *See, e.g.*, *SHM Int'l Corp. v. Guangdong Chant Grp., Inc.*, 2016 WL 4204553, at *6 (N.D. Ga. June 29, 2016); *Riley v. Hannibal,* 2017 WL 5235673, at *6 (N.D. Ga. June 29, 2017).

*Second*, for the same reasons, Plaintiff has not adequately pled that it suffered any financial injury since Plaintiff did not allege it lost this customer. If "a plaintiff cannot show that damage to his rights or obligations under a contract proximately resulted from the third party's alleged interference, his claim for tortious interference fails as a matter of law." *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 745 S.E.2d 806, 808 (Ga. Ct. App. 2013).

*Third*, Plaintiff has not alleged that Google acted improperly and without privilege. "An essential element of tortious interference with business relations is that the alleged tortfeasor used wrongful means to induce a third party or parties not to enter into or continue a business relationship with the plaintiff." *Camp v. Eichelkraut*, 539 S.E.2d 588, 593 (Ga. Ct. App. 2000) (footnote omitted). Improper conduct is "wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal

34

prosecutions." *Disaster Servs. v. ERC P'ship*, 492 S.E.2d 526, 529 (Ga. Ct. App. 1997); *see also Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007) ("Absent evidence of fraud, [Plaintiff] could not show that [Defendant's] actions were improper, an essential element of an action for tortious interference.").

Here, Plaintiff fails to allege facts establishing that Google engaged in any wrongful conduct.  Google allegedly contacted one of Plaintiff's customers to explain that Plaintiff was running the customer's advertisements in connection with website content Google "misleadingly characterized as objectionable" and "that Google offered superior services."  Compl. ¶ 134.  However, Plaintiff fails to identify how Google's characterization was misleading or to explain how the customer was misled (since the customer could evaluate on its own whether the website was objectionable).  Plaintiff thus has described nothing more than lawful competition, and "fair competition is always legal."  *Sommers Co. v. Moore*, 621 S.E.2d 789, 791 (Ga. Ct. App. 2005).

## CONCLUSION

Plaintiff's Complaint should be dismissed in its entirety on standing grounds.  In the alternative, Counts I-V should be dismissed for failing to state a claim under the federal antitrust laws and Count VI should be dismissed for failing to state a claim for tortious interference.

Respectfully submitted this 22nd day of January, 2020.

*/s/ Eric P. Schroeder*

BRYAN CAVE LEIGHTON PAISNER
LLP
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar
804091)
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: 404-572-6600
Facsimile: 404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

WILLIAMS & CONNOLLY LLP
John E. Schmidtlein*
Carol J. Pruski*
Kimberly Broecker*
*Pro hac vice applications pending
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
cpruski@wc.com
kbroecker@wc.com

*Counsel for Defendants Google LLC,
Alphabet, Inc., and YouTube, LLC*

**<u>Local Rule 7.1(D) Certification of Compliance</u>**

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 22nd day of January, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 22nd day of January, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880
