GEORGE A. ZELCS*
 gzelcs@koreintillery.com
ROBERT E. LITAN*
 rlitan@koreintillery.com
RANDALL P. EWING*
 rewing@koreintillery.com
JONATHON D. BYRER*
 jbyrer@koreintillery.com
RYAN Z. CORTAZAR*
 rcortazar@koreintillery.com
KOREIN TILLERY LLC
205 North Michigan Ave., Suite 1950
Chicago, Illinois 60601
Tel.: (312) 641-9760 / Fax: (312) 641-9751

STEPHEN M. TILLERY*
 stillery@koreintillery.com
MICHAEL E. KLENOV (277028)
 mklenov@koreintillery.com
CAROL L. O'KEEFE*
 cokeefe@koreintillery.com
JAMIE BOYER*
 jboyer@koreintillery.com
KOREIN TILLERY LLC
505 North Seventh St., Suite 3600
St. Louis, Missouri 63101
Tel.: (314) 241-4844 / Fax: (314) 241-3525


* *Pro Hac Vice application pending*

*Attorneys for Interested Parties Genius Media Group, Inc., The Nation Company, L.P., and The Progressive, Inc.*

DAVID BOIES (admitted *pro hac vice*)
 dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street, Armonk, NY 10504
Tel.: (914) 749-8200 / Fax: (914) 749-8300

PHILIP C. KOROLOGOS (admitted *pro hac vice*)
 pkorologos@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2300 / Fax: (212) 446-2350

ABBY L. DENNIS (admitted *pro hac vice*)
 adennis@bsfllp.com
JESSE PANUCCIO (admitted *pro hac vice*)
 jpanuccio@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
Tel.: (202) 895-7580 / Fax: (202) 237-6131

MARK C. MAO (236165)
 mmao@bsfllp.com
SEAN P. RODRIGUEZ (262437)
 srodriguez@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6820 / Fax: (415) 293-6899

SABRIA A. MCELROY (admitted *pro hac vice*)
 smcelroy@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 377 4216 / Fax: (954) 356-0022

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 5:20-cv-03556–BLF<br><br>**OPPOSITION TO GOOGLE'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>[Dkt. 57] |

Pursuant to Civil Local Rules 3-12(e) and 7-11(b), Interested Parties Genius Media Group, Inc., The Nation Company, L.P., and The Progressive, Inc. (collectively "Genius Media Interested Parties") by and through their undersigned counsel, hereby oppose Google's request to relate *Genius Media Group, Inc., et al. v. Alphabet Inc., et al.*, Case No. 4:20-cv-09092-DMR ("*Genius*") to *In re Google Digital Advertising Antitrust Litigation*, Case No. 5:20-cv-03556–BLF ("*In re Google*").

## BACKGROUND

The consolidated complaint in the *In re Google* action is an unfocused, kitchen-sink complaint filed solely by advertisers.[1] Google has already filed a motion to dismiss the *In re Google* case based on market definition issues that arise only under its solely advertiser-centric theories. By contrast, the *Genius* plaintiffs and putative classes are solely publishers who sell space for online advertising and who allege distinct relevant markets and specific publisher-facing conduct. The two publisher classes in the *Genius* action suffer different harms, operate in a differently-defined market, and are subjected to different anticompetitive conduct and terms imposed by Google as compared to advertisers. For example, the *Genius* publisher-plaintiffs use Google's Ad Server services, and as a result, much of their complaint turns on Google's abuse of its Ad Server, including how Google uses its Ad Server in conjunction with its Ad Exchange services for publishers to harm competition. *In re Google*'s advertiser-plaintiffs instead use advertising tools, including Google's Ad Exchange demand side services in conjunction with entirely distinct Google advertiser tools designed to buy rather than sell advertising space; they are thus subject to distinct, Google-imposed terms.

Moreover, the *In re Google* advertiser-only plaintiffs' consolidated complaint implicates distinct issues that threaten to delay and impede progress on the publisher-only *Genius* action. For instance, Google's form advertiser agreements have arbitration clauses, which Google argues requires the *In re Google* plaintiffs to resolve their claims in arbitration rather than before this Court. *See* Mot. to Dismiss at 21–24, Dkt. 41 ("Google MTD"). Publisher agreements have no such requirement, further distinguishing the plaintiffs and claims in *Genius* from those of *In re Google.* The Court has also noted that the *In re Google* plaintiffs even "do not appear to contest" that Google has "formidable arguments" against the *In

---

[1] Another case, *Sweepstakes Today, LLC v. Google LLC, et al.*, Case No. 20–cv–08984–LB, asserts publisher claims that overlap somewhat with *Genius*. The Genius Media Interested Parties will separately file an administrative motion to determine whether that action is related to *Genius*.

*re Google* complaint. Order Granting Motion to Stay Discovery at 4, Dkt. 53. By contrast, *none* of the deficiencies Google cites in its *In re Google* motion to dismiss apply to *Genius*.

## **DISCUSSION**

Civil Local Rule 3-12(a) provides that "[a]n action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Relation is inappropriate, however, when "the operative facts for the putative classes would still make them substantially different." *Tecson v. Lyft, Inc.*, Case No. 18–cv–06782–YGR, 2019 WL 1903263, at *3 (N.D. Cal. Apr. 29, 2019) (declining to relate actions where "the class putative members have different relationships with [defendant] Lyft"); *see also Ortiz v. CVS Caremark Corp.*, Case No. 12–cv–05859–EDL, 2013 WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013) ("There is some overlap between the classes . . . . [h]owever the limited overlap of some class members is not enough to reach the 'substantial similarity' threshold" where the complaints advance different "theor[ies] of liability").

***First*, the actions do not concern substantially the same parties, property, transactions, or events giving rise to the claims.** Although Google LLC and Alphabet Inc. are defendants in both actions, that is where the overlap ends. The two actions' plaintiffs groups cannot reasonably be described as "substantially the same" because they are distinct types of entities with distinct interests whose claims are based on different theories underlying the different transactions and events giving rise to their claims.

The *Genius* plaintiffs and putative classes are publishers who allege different markets and entirely different anticompetitive conduct targeting publishers. *See* Compl. ¶¶ 12–14, 101, *Genius Media Group, Inc. v. Alphabet Inc.*, Case No. 20–cv–09092–DMR (N.D. Cal.), Dkt. 1 ("*Genius* Compl."). Specifically, the *Genius* publisher-plaintiffs use both Google's Ad Server and Ad Exchange services, and as a result much of their complaint turns on Google's abuse of its Ad Server, including how Google uses its Ad Server in conjunction with its Ad Exchange to harm competition. *See, e.g.*, *id.* ¶¶ 2–14, 34–95. But the *In re Google* action has only advertiser plaintiffs who use only Google's Ad Exchange demand side services. *See* Google MTD at 3; Dkt. 57 at 1–2. That conceded difference is critical. For example, Google has moved to dismiss the *In re Google* advertiser case based on market definition issues that arise only because

the complaint focuses (understandably) entirely on advertiser-centric theories. Google MTD at 5. The Court need look no further than Google's opening motion to dismiss argument to understand that Google itself does not believe these actions are related because they do not concern substantially similar parties, transactions, or events. That first argument is that the *In re Google* "Plaintiffs fail to adequately plead a single relevant product market—because their purported market includes products and services" they "do not purchase or use"—unlike the Google products and services purchased by publishers to sell advertisements; Google expressly argues "Plaintiffs do not have standing to bring claims on behalf of publishers." *Id.* at 5.

In its *In re Google* motion to dismiss, Google recognizes core differences between an action brought by publishers (like *Genius*) and one brought by advertisers (like *In re Google*). For example, while the *In re Google* complaint alleges a class definition that includes both advertisers and publishers, Google rightly explains that the named plaintiffs there lack standing to assert publisher claims because none is a publisher. *See id.* at 2 ("None of the Plaintiffs is alleged to be an online *publisher* that sells online ad inventory space to advertisers; Plaintiffs nonetheless seek to represent a class that 'includes [both] advertisers *and publishers . . .*'"). In contrast, *Genius* is a case brought exclusively by and on behalf of publishers. *See Genius* Compl. ¶¶ 12–14, 101.

Despite these admissions, Google's instant administrative motion ignores the real, strategic, and substantive differences between the publisher-plaintiffs in *Genius* and the advertiser-plaintiffs in *In re Google*—all of which show the lack of a basis to relate these actions.

Independently, the *In re Google* advertiser-only plaintiffs implicate wholly distinct issues that would threaten to delay and impede progress for publishers proceeding with their *Genius* case. Critically, Google's standard advertiser agreements have arbitration clauses, which Google argues requires most of the *In re Google* plaintiffs to arbitrate their claims. Google MTD at 21–24. Publisher agreements have no such clauses, further proving that advertisers and publishers "have different relationships with" defendant Google making relation inappropriate (*Tecson*, 2019 WL 1903263, at *3), even before the impact advertisers' arbitration clauses could impose on publishers' ability to proceed with their claims in *Genius*.

Google argues that the two complaints' allegations are substantially the same because both actions "allege that Defendants violated the antitrust laws by tying display advertising products, leveraging market

share, and interfering with competitors' services." Dkt. 57 at 3; *see also id.* at 2 (arguing both complaints allege tying, monopoly leveraging, and charging supracompetitive prices). But Google's deliberately vague generalities (and its mischaracterizations of the *Genius* Complaint's theories) necessarily go too far. By Google's reasoning, any claim under Section 2 of the Sherman Act must be related because it would allege impermissible monopolization or attempted monopolization. Anything more than a cursory review of the theories in and allegations supporting each complaint makes readily apparent the complaints do *not* involve substantially similar allegations, and each presents a distinct "theory of liability". *Ortiz*, 2013 WL 12175002, at *2.

For example, *In re Google* has a complex and confusing set of market definitions that Google attacks on a variety of grounds. *See* Google MTD at 4–9. Those attacks are inapposite to the *Genius* market definitions that cogently delineate a market for Ad Servers (software or code) (*Genius* Compl. ¶¶ 76–77, 83) from markets for Ad Exchanges or Ad Networks (platforms that perform auctions or matching functions) (*id.* ¶¶ 76, 78–83). Further, the *Genius* Complaint spells out specifics of how Google rigged its auctions against publishers. *Id.* ¶¶ 4, 48–59; *cf.* Google MTD at 20 (arguing that *In re Google* plaintiffs "do not plead any facts explaining how Google rigged any advertising auctions"). Thus, instead of vague theories about "leveraging" and bare allegations of "tying" impacting advertisers, the *Genius* complaint explains how Google's conduct with respect to publishers fits into well-established case law. *Compare Genius* Compl. ¶¶ 66–74, *with McWane, Inc. v. FTC*, 783 F.3d 814, 832 (11th Cir. 2015) (anticompetitive to deny supply or rebates because a distributor carries a competitor product); *compare Genius* Compl. ¶¶ 53–59, 69–74 (explaining how Google engages in anticompetitive strategy known as raising rivals' costs), *with Premier Electrical Const. Co. v. Nat'l Electrical Contractor's Ass'n*, 814 F.2d 358, 368 (7th Cir. 1987) (by raising its rivals' costs, defendant anticompetitively raised the market price to its own advantage); *compare Genius* Compl. ¶ 64 (explaining how Google following the Microsoft strategy of the 1990s), *with U.S. v. Microsoft*, 253 F. 3d 34, 64–66 (D.C. Cir. 2001) (liability for integrating browser and operating system to exclude competitor).

**Second, there is unlikely to be unduly burdensome duplication of labor or expense, nor conflicting results, if the cases are conducted before different Judges.** As Google points out, there is likely to be some overlap in discovery. But relation is appropriate only when there is likely to be unduly

burdensome duplication of labor—not any duplication at all. Accordingly, the mere likelihood that a defendant may have to produce certain documents in different actions does not create a likelihood of unduly burdensome duplication of labor or expense. *See, e.g.*, *Pacific Coast Federation of Fishermen's Ass'n v. Locke*, Case No. 10–cv–04790–CRB, 2011 WL 289927, at *2 (N.D. Cal., Jan. 27, 2011) (not unduly burdensome where "the claims in the two suits are of a different nature, [such that] different parts of the administrative record and amendments are relevant to each case"). Moreover, even if the actions' discovery phases might appropriately be coordinated between judges (*see* Ann. Manual Complex Lit. § 11.455 (4th ed.) (judges can "coordinate the depositions of common witnesses and other common discovery"); *id.* § 22.6 (role of case management order to coordinate discovery)), the *Genius* publisher-plaintiffs should not be delayed by advertiser-specific issues and infirmities—like their misguided market definition and apparent inability to adjudicate their claims at all before this Court.

Google also argues that the Court should seek to avoid conflicting results that could arise from an order concerning Google's motion to dismiss the advertisers' complaint in *In re Google*. But Google's pending motion to dismiss does not present *any* opportunity for conflicting results. Any order on Google's pending motion to dismiss will be non-binding authority in this District on any issues it addresses—regardless of which Judge considers Google's (hypothetical) motion to dismiss in *Genius*. The motions would each concern questions of law testing whether two different complaints state different causes of action alleging different conduct in different markets, and those questions must be decided consistently with Ninth Circuit precedent—not with the generalized outcome of whether Google is successful in dismissing claims alleging different conduct taken by Google against entirely different types of plaintiffs.

Finally, Google argues that conflicting results may arise because "plaintiffs in both actions intend to seek injunctive relief on behalf of the same publishers". Dkt. 57 at 4. For the reasons explained above, *In re Google* presents theories (and plaintiffs) dedicated to explaining Google's liability, and seeking relief, for Google's misconduct vis-à-vis *advertisers*—not publishers. As such, the *In re Google* advertiser-plaintiffs' requests for relief do not meaningfully present potential for duplication or conflicting results with the publisher-only *Genius* action.

## CONCLUSION

For the foregoing reasons, Google's Administrative Motion (Dkt. 57) should be denied.

| | | |
|---|---|---|
| Dated: December 28, 2020 | | /s/ Philip C. Korologos |

George A. Zelcs (*pro hac vice* pending)
Robert E. Litan (*pro hac vice* pending)
Randall P. Ewing (*pro hac vice* pending)
Jonathon D. Byrer (*pro hac vice* pending)
Ryan A. Cortazar (*pro hac vice* pending)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750 / Fax: (312) 641-9751

Stephen M. Tillery (*pro hac vice* pending)
Michael E. Klenov (277028)
Carol L. O'Keefe (*pro hac vice* pending)
Jamie Boyer (*pro hac vice* pending)
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844 / Fax: (314) 241-3525

David Boies (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200 / Fax: (914) 749-8300

Philip C. Korologos (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2300 / Fax: (212) 446-2350

Abby L. Dennis (admitted *pro hac vice*)
Jesse Panuccio (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel.: (202) 895-7580 / Fax: (202) 237-6131

Mark C. Mao (236165)
Sean P. Rodriguez (262437)
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6820 / Fax: (415) 293-6899

Sabria A. McElroy (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP

401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 377 4216 / Fax: (954) 356-0022

*Attorneys for Interested Parties Genius Media Group, Inc., The Nation Company, L.P., and The Progressive, Inc.*