John E. Schmidtlein, SBN 163520
Benjamin M. Greenblum (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
Email: bgreenblum@wc.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 20-cv-03556-BLF <br><br> **DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** <br><br> Hon. Beth Labson Freeman |

1   Defendants Google LLC, Alphabet Inc., and YouTube, LLC ("Defendants") hereby move to
2   relate the third of three newly filed putative class actions, *Sterling International Consulting Group v.*
3   *Google LLC*, No. 20-cv-09321-JCS (complaint filed on Dec. 23, 2020) ("*Sterling*"), to the ongoing
4   *In re Google Digital Advertising Antitrust Litigation* ("*Digital Ads Litigation*").  *Sterling* follows on
5   the heels of two other putative class actions filed in this District earlier in December that Defendants
6   have also moved to relate to the *Digital Ads Litigation*.  Defs.' Mot. to Relate *Sweepstakes Today*
7   (ECF 55); Defs.' Mot. to Relate *Genius Media* (ECF 57).  The same arguments in favor of relation
8   apply with equal force to all three of these new actions, which are substantially similar to each other
9   and to the *Digital Ads Litigation*.

## BACKGROUND

Although the *Sterling* action is new, its allegations are familiar.  Since May of last year, this Court has presided over the *Digital Ads Litigation*, a consolidated putative class action premised on the assertion that Defendants engaged in a "scheme to monopolize the market for brokering display advertising" through their alleged "control" of "the 'ad tech stack' comprising the intermediary services between advertisers, which pay to place digital advertisements, and publishers paid to place those ads on their websites."  *Digital Ads Litigation* Am. Compl. (ECF 52) ¶¶ 1, 3.  The *Sterling* complaint advances the same overarching theory of liability based on largely the same alleged conduct, asserting that Defendants carried out a "scheme" to "capture a dominant share of the revenues associated with services required to place open-web display ads" by purportedly exerting "control" over the "dominant services at each level of the Ad Tech Stack."  *Sterling* Compl. (Ex. A) ¶¶ 1, 6.

The *Sterling* plaintiff seeks to pursue these allegations on behalf of "[a]ll Publishers that sell digital display advertising inventory through a Google publisher ad server targeting consumers in the United States between December 23, 2016 and the date the Court certifies the Class."  *Id*. ¶ 172.  The members of that putative class—including the *Sterling* plaintiff itself—would be members of the class that the *Digital Ads Litigation* plaintiffs seek to certify, which encompasses "[a]ll persons and entities in the United States that, from January 1, 2016 to the present, used Google's display

1  advertising services to (1) place an ad on a website operated by another entity (advertisers) or (2)
2  place an ad from a third party on their own website (publishers)." *Digital Ads Litigation* Am.
3  Compl. ¶ 225.
4        The complaints also allege the same anticompetitive conduct on behalf of the same
5  "publishers."  For example, the plaintiffs in both cases allege that Defendants: "dominate[d] the Ad
6  Tech Stack with a series of acquisitions" of companies such as DoubleClick and AdMob (*Sterling*
7  Compl. ¶¶ 68–72; *see Digital Ads Litigation* Am. Compl. ¶¶ 62–63, 69–70); refused to provide
8  "Google's data for ad targeting and attribution purposes" to advertisers that do not "buy ad space
9  through Google's buying platforms" (*Sterling* Compl. ¶¶ 75–77; *see Digital Ads Litigation* Am.
10 Compl. ¶¶ 102–07); "require[d] Publishers to use [Google's] ad server products to access its
11 auctions" by merging two "separate products" (*Sterling* Compl. ¶ 78; *see Digital Ads Litigation* Am.
12 Compl. ¶ 122); "refuse[d] to allow [Google's] ad exchange to participate in header bidding auctions"
13 (*Sterling* Compl. ¶¶ 103–112; *see Digital Ads Litigation* Am. Compl. ¶¶ 142–43); and "prevent[ed]
14 Publishers from collecting their own data on users" by adopting an "'accelerated mobile pages'
15 ('AMP') format" (*Sterling* Compl. ¶ 128; *see Digital Ads Litigation* Am. Compl. ¶¶ 155–58).
16       According to the plaintiffs in both cases, this same alleged conduct "foreclose[d] other Ad
17 Tech Stack service providers from competing for advertisers and Publishers." *Sterling* Compl.
18 ¶ 145; *see Digital Ads Litigation* Am. Compl. ¶¶ 207–09 (alleging that "[a]bsent Google's conduct,
19 each segment of the display advertising market would have been significantly more competitive,"
20 which "would have benefited both the advertisers and the publishers").  The complaints demand
21 overlapping forms of relief, including damages purportedly sustained by the "publishers" that would
22 be members of both putative classes and "injunctive relief barring Google from engaging in the
23 anticompetitive Scheme alleged." *Sterling* Compl. ¶¶ 188–89; *see Digital Ads Litigation* Am.
24 Compl. ¶¶ 243–44, Prayer for Relief.

## ARGUMENT

26       "An action is related to another when: (1) The actions concern substantially the same parties,
27 property, transaction or event; and (2) It appears likely that there will be an unduly burdensome

duplication of labor and expense or conflicting results if the cases are conducted before different Judges." L.R. 3-12(a). Both requirements are satisfied here.

### I. *Sterling* and *Digital Ads Litigation* Concern Substantially the Same Parties, Property, Transaction, or Event.

*Same Parties*. Actions "concern substantially the same parties" where, as here, they involve the same defendant and a request to certify "overlapping classes." *E.g.*, *In re Facebook Privacy Litig.*, 2010 WL 5387616, at *1 (N.D. Cal. Dec. 21, 2010). That overlap is unquestionably present in these cases, as *Sterling's* putative class of "[p]ublishers that sell digital display advertising inventory through a Google publisher" (*Sterling* Compl. ¶ 172) is subsumed within the *Digital Ads Litigation* plaintiffs' alleged class of persons who "used Google's display advertising services to … place an ad from a third party on their own website (publishers)" (*Digital Ads Litigation* Am. Compl. ¶ 225).

For the purpose of determining relation, it is immaterial that the *Digital Ads Litigation* plaintiffs seek to certify a broader class that includes not only "publishers," but also "advertisers." *Id.* The breadth of the alleged class does not diminish the dispositive observation that the *Sterling* plaintiff and many or all of the publishers that it seeks to represent would be members of the putative class alleged in the *Digital Ads Litigation*. *See, e.g.*, *Zakinov v. Ripple Labs, Inc.*, 2020 WL 2768966, at *2 (N.D. Cal. May 28, 2020) (concluding that two "actions concern substantially the same parties" because "if the court were to certify the [first plaintiff's] class, [the second plaintiff] would be included among its membership"). It is also immaterial for purposes of relation that Defendants contend that the plaintiffs in the *Digital Ads Litigation* "do not have standing to bring claims on behalf of publishers." Defs.' Mot. to Dismiss (ECF 41) at 5. Whether Defendants will present viable defenses to the competing plaintiffs' claims does not affect whether the actions presently "concern substantially the same parties." *See, e.g.*, *Zakinov*, 2020 WL 2768966, at *2 n.2.

*Overlapping Allegations of Anticompetitive Conduct*. Even if the *Digital Ads Litigation* plaintiffs were ultimately limited to representing a class of only "advertisers," it remains beyond dispute that they attack the *same conduct* concerning display advertising as the "publisher" class that the *Sterling* plaintiff seeks to represent. *See supra*, 2; *infra*, 4. The cases therefore would still be

- 3 -

1    related because they "concern substantially the same … property, transaction or event."  L.R. 3-
2    12(a); *see Pepper v. Apple Inc.*, 2019 WL 4783951, at *1 (N.D. Cal. Aug. 22, 2019) (explaining that
3    "Local Rule 3-12(a)(1) allows for relation of actions even where plaintiff classes differ, including
4    classes of consumers as opposed to content creators").

5          As discussed, both cases are premised on Defendants' alleged "control" of "the dominant
6    services at each level of the Ad Tech Stack" (*Sterling* Compl. ¶ 6), *i.e.*, the "set of intermediary
7    exchanges and platforms that advertisers and publishers use to buy, sell, and place display ads"
8    (*Digital Ads Litigation* Am. Compl. ¶ 48).  Although advertisers that buy display ads and publishers
9    that sell ad space are alleged to occupy opposite "end[s] of the Ad Tech Stack," the cases are related
10   because both complaints rely on the same purportedly anticompetitive transactions and events to
11   allege that "Google forecloses other Ad Tech Stack service providers from competing for advertisers
12   and Publishers."  *Sterling* Compl. ¶¶ 35–36, 145; *see, e.g.*, *Digital Ads Litigation* Am. Compl.¶¶ 59–
13   61 (alleging that "Google now dominates and controls the ad stack as a whole" by virtue of the same
14   acquisitions alleged in the *Sterling* complaint); *see also supra*, 2.

15         A Court in this District recently reached the same conclusion in relating an antitrust action by
16   a class of consumers who purchased apps for their Apple iPhones (*i.e.*, buyers) to actions brought by
17   classes of app developers (*i.e.*, sellers).  *Pepper*, 2019 WL 4783951, at *1.  "Although plaintiffs'
18   relationships to defendant differ," the Court explained, "the alleged breakdown in those
19   relationships, which form the bases of plaintiffs' complaints, center around the same technology and
20   economic structures."  *Id.*  The case for relation is all the more compelling here, because the *Sterling*
21   plaintiff's claims on behalf of "publishers" are expressly grounded in Defendants' alleged conduct
22   "on the *advertiser* side of the Ad Tech Stack."  *Sterling* Compl. ¶ 11 (emphasis added); *e.g.*, *id.*
23   ¶¶ 10–11 (alleging that Google "used its positions at other levels of the Ad Tech Stack to control
24   Publishers' access to [its] pool of advertiser demand" and that "advertisers who want to display ads
25   on Google's Publisher-clients must use Google's advertising-facing products").

26         In short, these cases bear scant resemblance to those in which distinct classes of plaintiffs rely
27   on different conduct to advance different theories of liability.  *Compare, e.g.*, *Ortiz v. CVS Caremark*
28

*Corp.*, 2013 WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013) (declining to relate putative class actions where the "theory of liability that is the backbone of the [first plaintiff's] claims *is never mentioned in* the [the second plaintiff's] complaint" (emphasis added)).  Relation is warranted because the complaints allege the same transactions and events in attempting to assert antitrust violations concerning the same "ad tech stack."  *See Pepper*, 2019 WL 4783951, at *1 (relating cases because "they are underlined by the same operative facts—Apple's alleged monopolization of the distribution and sale of iPhone apps").

II.     **Conducting the Actions before Different Judges Would Result in Unduly Burdensome Duplication of Labor and Expense.**

The second prong of Local Rule 3-12(a) is also satisfied here because it "appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results" absent relation.  Notably, that would be the case even if the *Digital Ads Litigation* plaintiffs lack standing to pursue the publishers' claims.  Because the claims asserted on behalf of publishers are predicated in part on Defendants' alleged conduct "on the advertiser side of the Ad Tech Stack" and involve "Google's advertiser-facing products" (*Sterling* Compl. ¶ 11), relation will allow for "significant economies … in terms of case management and resolution of motions inextricably tied to an understanding of the technology, platform markets, and the transactions at issue."  *Pepper*, 2019 WL 4783951, at *1.  The resolution of Defendants' motion to dismiss claims concerning the same allegedly anticompetitive conduct, and the legal viability more generally of the claims brought in both cases, should not burden two Courts and thereby risk inconsistent results.  That risk is particularly acute here in light of the potentially overlapping injunctive relief sought by the plaintiffs on behalf of both publishers and advertisers.  *E.g.*, *Sterling* Compl. ¶ 206; *Digital Ads Litigation* Am. Compl., Prayer for Relief; *see Pepper*, 2019 WL 4783951, at *2 (observing that "courts routinely relate cases in which the theories of damages differ" and concluding that "the fact that both sets of plaintiffs seek injunctive relief presents a sufficient risk of inconsistent results to warrant relation").

## **CONCLUSION**

For the foregoing reasons, the *Sterling* action should be related to the *Digital Ads Litigation*.

| | | |
|---|---|---|
| 1 | DATED:  January 4, 2021 | **WILLIAMS & CONNOLLY LLP** |
| 2 | | By:  */s/ John E. Schmidtlein* |
| 3 | | John E. Schmidtlein, SBN 163520 |
| | | Benjamin M. Greenblum (*pro hac vice*) |
| 4 | | WILLIAMS & CONNOLLY LLP |
| | | 725 Twelfth Street, N.W. |
| 5 | | Washington, DC 20005 |
| 6 | | Telephone:  (202) 434-5000 |
| | | Facsimile:  (202) 434-5029 |
| 7 | | Email:  jschmidtlein@wc.com |
| | | Email:  bgreenblum@wc.com |

*Attorneys for Defendants*