Justina K. Sessions, SBN 270914
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099
Email: jsessions@wsgr.com

Jonathan M. Jacobson, New York SBN 1350495
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7758
Facsimile: (212) 999-5899
Email: jjacobson@wsgr.com

Counsel for Defendant Google LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION,<br><br>DOCUMENT RELATES TO:<br><br>*Negron v. Google LLC*, No. 4:21-cv-00801-HSG | Lead Case No.: 5:20-cv-03556-BLF<br><br>**DEFENDANT GOOGLE LLC'S STATEMENT IN SUPPORT OF PLAINTIFF'S UNOPPOSED ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

Pursuant to Civil Local Rule 3-12(b), Defendant Google LLC ("Google") submits this statement in support of Plaintiff Kimberly Negron's Motion to Consider Whether *Negron v. Google LLC,* No. 4:21-cv-00801 Should Be Related to Certain Google Litigation Pending Before Judge Freeman, Dkt. 88. Google agrees that *Negron* should be related to *In re Google Digital Advertising Antitrust Litig.*, No. 5:20-cv-03556-BLF ("*Digital Ads*").

Like all the *Digital Ads* plaintiffs, Negron alleges that Google tried to maintain a monopoly in a digital ads market by suppressing a supposedly competitive method of bidding on advertising spots, called "header bidding."  *Negron v. Google LLC*, No. 4:21-cv-00801, Dkt. 1 ("*Negron* Compl.") ¶¶ 73-83; *Astarita v. Google LLC et al*, No. 5:21-cv-00022, Dkt. 1 ("*Astarita* Compl.") ¶¶ 129-31; *In re Google Dig. Advert. Antitrust Litig.*, No. 5:20-cv-03556-BLF, Dkt. 52 ("*Digital Ads* Compl.") ¶¶ 142-44; *Genius Media Grp., Inc. et al v. Alphabet Inc., et al*, No. 5:20-cv-09092, Dkt 1 ("*Genius* Compl.") ¶¶ 5-6, 53-56, 60, 119; *JLaSalle Enter. LLC v. Google LLC*, No. 5:21-cv-00748, Dkt. 1 ("*JLaSalle* Compl.") ¶¶ 86-92; ¶¶ 85-92, *Mikula Web Solutions, Inc. v. Google LLC*, No. 5:21-cv-00810, Dkt. 1 ("*Mikula* Compl.") ¶¶ 85-92; *Sterling Int'l Consulting Grp. v. Google LLC*, No. 5:20-cv-09321, Dkt. 1 ("*Sterling* Compl.") ¶¶ 103-15, 133-44; *Sweepstakes Today, LLC v. Google LLC et al*, No. 5:20-cv-08984, Dkt. 1 ("*Sweepstakes* Compl.") ¶¶ 107-10. And like the *Sterling*, *JLaSalle*, and *Mikula* plaintiffs, Negron alleges that Google did so in part through a 2018 agreement with Facebook. Thus, although Negron seeks to represent a group not explicitly covered by the other *Digital Ads* putative classes—Facebook advertisers—the factual allegations, relevant markets, alleged anticompetitive effects, and substantive claims she pleads completely overlap with the other *Digital Ads* cases. In light of the significant overlap, relating *Negron* to *Digital Ads* allows for efficiencies and avoids the risk of conflicting results.

I.   ***NEGRON* AND *DIGITAL ADS* CONCERN SUBSTANTIALLY THE SAME PARTIES, PROPERTY, TRANSACTION, OR EVENT**

The first requirement for relation under Local Rule 3-12(a) is that "[t]he actions concern substantially the same parties, property, transaction or event[.]" L.R. 3-12(a). *Negron* and *Digital Ads* satisfy this requirement.

**A.     *Negron* and the cases related under *Digital Ads* all claim that Google allegedly took steps to suppress competition from header bidding.**

Negron brings the same statutory challenge to the same conduct—a § 1 claim based on a 2018 agreement between Google and Facebook—as the *JLaSalle*, *Mikula*, and *Sterling* complaints that have been related to *Digital Ads*. *See* Dkt. 90 (relating *JLaSalle* and *Mikula*); Dkt. 69 (relating *Sterling*). The alleged conduct that Negron challenges as anticompetitive is entirely subsumed within some of the other cases currently under the *Digital Ads* umbrella. And it is related to—and alleged to have a similar anticompetitive effect as—the other alleged conduct pertaining to header bidding pled in the *Digital Ads* complaints.

**1.     *Negron* makes the same allegations about the 2018 Google-Facebook agreement as other *Digital Ads* plaintiffs.**

The complaints in *Negron*, *JLaSalle*, *Mikula*, and *Sterling* contain the same or substantially similar allegations regarding every aspect of the 2018 Google-Facebook agreement (using identical language, in many instances). For example, describing the events leading up to the agreement all four complaints allege:

- "In March 2017, Facebook announced it would support header bidding. By doing so, Facebook would enable web and mobile app publishers and advertisers to bypass the fees associated with transacting through Google's ad server." *Negron* Compl., ¶ 92; *Sterling* Compl., ¶ 133; *JLaSalle* Compl., ¶ 86; *Mikula* Compl., ¶ 86.
- "The same day as Facebook's March 2017 header bidding announcement, the industry publication *AdAge* wrote that Facebook was poised to execute a 'digital advertising coup against rival Google and its DoubleClick empire'." *Negron* Compl., ¶¶ 93-94; *Sterling* Compl., ¶ 134; *JLaSalle* Compl., ¶ 88; *Mikula* Compl., ¶ 88.

The complaints also allege the same purported motive for Google to enter into the agreement with Facebook—to avoid the threat of competition from header bidding. *Negron* Compl., ¶ 97; *Sterling* Compl., ¶ 134; *JLaSalle* Compl., ¶ 87; *Mikula* Compl., ¶ 87. And the complaints each characterize the outcome of the deal as an agreement in which Facebook would "stop supporting header-

bidding technology" (*Negron* Compl., ¶ 97) or "significantly curtail[] its header bidding initiatives" (*Sterling* Compl., ¶ 139; *JLaSalle* Compl., ¶ 90; *Mikula* Compl., ¶ 90).

### 2. All cases claim that Google allegedly stifled header bidding.

*Negron's* (and *Sterling's*, *Mikula's*, and *JLaSalle's*) allegations also overlap with similar header-bidding-related allegations in the other four *Digital Ads* complaints. To begin with, *Negron's* allegations are premised on the claim that header bidding was a "threat" to Google and that Google wanted to "destroy" it. *Negron* Compl., ¶¶ 82, 84. All of the *Digital Ads* plaintiffs make similar claims. *Astarita* Compl. ¶¶ 129-30 (Google's "exclusionary response to header bidding"); *Digital Ads* Compl., ¶ 142 (same); *Genius Media* Compl., ¶¶ 5-6 (header bidding was a "more competitive means of engaging in the sale and distribution of open display advertising" and Google "impeded the ability of header bidding to compete on the merits or function as intended"); *Mikula* Compl., ¶ 89 ("Google was concerned about large entrants supporting header bidding. Therefore, Google took steps to neutralize the threat."); *JLaSalle* Compl., ¶ 3 (header bidding "threatened Google's chokehold on Display Ad intermediation"); *Sterling* Compl., ¶ 111 ("Google introduced Exchange Bidding to prevent header bidding from invading Google's market dominance"); *Sweepstakes* Compl., ¶ 108 ("In response to this competitive threat, Google took aim at header bidding."). *Negron* claims that Google created Accelerated Mobile Pages "[t]o respond to the threat of header bidding . . . and made AMP essentially incompatible with JavaScript and header bidding." *Negron* Compl., ¶ 89. The other *Digital Ads* plaintiffs allege essentially the same thing. *See JLaSalle* Compl., ¶ 98 ("To discourage header bidding, Google made AMP essentially incompatible with JavaScript and header bidding."); *Mikula* Compl., ¶ 98 (same); *Astarita* Compl., ¶ 131 ("[W]hen Google launched its Accelerated Mobile Pages, or "AMP," it made the pages incompatible with header bidding, coercing publishers to use Google's Open Bidding system."); *Digital Ads* Compl., ¶ 144 (same); *Sterling* Compl., ¶ 113 n.12 ("Google also used its control over the initial AMP format to make AMP incompatible with client-side header bidding."); *Sweepstakes* Compl., ¶ 109 ("Another way in which Google sought to blunt this competitive threat [from header bidding] . . . was through its design of Accelerated Mobile

Pages."). Thus, Negron and all of the *Digital Ads* cases involve overlapping and substantially similar factual allegations relating to header bidding and Google's alleged conduct in response.

### B. The cases involve similar parties claiming similar harm.

Negron seeks to represent a class of "all persons and entities who, during the Class Period, purchased advertising on or over Facebook." *Negron* Compl., ¶ 131. The *Digital Ads* litigation currently encompasses both advertiser and publisher plaintiffs. Although this would be the first case in the *Digital Ads* litigation relating to advertisers on Facebook, this distinction does not render the cases unrelated. "Local Rule 3-12(a)(1) allows for relation of actions even where plaintiff classes differ," especially here where the plaintiff classes bring claims based on the exact same conduct. *Pepper v. Apple Inc.*, 2019 WL 4783951, at *1 (N.D. Cal. Aug. 22, 2019). Further, the defendants are substantially the same,[1] and the plaintiff advertiser classes are similar, encompassing individuals and entities who purchased advertising space on digital platforms.

Moreover, Negron claims the same type of harm as the other advertiser plaintiffs. Specifically, Negron claims that "the harm to competition deprives advertisers, publishers and consumers of improved quality, greater transparency, increased output, and/or lower prices." *Negron* Compl., ¶ 118. Similarly, the *Digital Ads* advertiser plaintiffs claim that they "suffered economic losses" and that "Google's conduct also deprived Plaintiffs and class members of improved quality and innovation in the relevant market." *Digital Ads* Compl., ¶¶ 4, 241.

### II. CONDUCTING THE ACTIONS BEFORE DIFFERENT JUDGES WOULD DUPLICATE LABOR AND EXPENSE AND RISK CONFLICTING RESULTS

The second prong of Local Rule 3-12(a) is also satisfied here, as it "appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." L.R. 3-12(a).

Relating the cases will save duplication of labor and expense in discovery because the cases are "underlined by the same operative facts," *Pepper*, 2019 WL 4783951, at *1. For example, there will likely be both party and third-party discovery in *Negron* and *Digital Ads* regarding the

---

[1] Alphabet Inc., Google's parent, is not a defendant in *Negron*, but is named in other cases.

2018 agreement between Facebook and Google—including the negotiations between the companies, the contours of the agreement, and any effects of the agreement. More broadly, the cases will all likely require discovery into header bidding (who does it, how common is it, how it works, etc.) and related issues. Further, because the two cases "are currently in a similar procedural posture," as discovery has not begun in either, "efficiency gains [would likely] be achieved" by treating the matters as related. *Id.* at *2.

The cases also ask the Court to resolve the same or similar questions regarding the relevant antitrust markets, alleged market power, and Google's antitrust duties with respect to designing its own products and aiding its competitors. They also all ask for injunctive relief. Relating the cases would, therefore, save Court resources and reduce the risk of inconsistent determinations of liability, injunctive relief, or monetary damages should the cases remain separate.

For the foregoing reasons, Google respectfully requests that the Court grant Plaintiff Negron's motion to relate.

Dated: February 16, 2021

Respectfully submitted,

/s/ *Justina K. Sessions*
Justina K. Sessions, SBN 270914
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099
Email: jsessions@wsgr.com

Jonathan M. Jacobson, New York SBN 1350495
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7758
Facsimile: (212) 999-5899
Email: jjacobson@wsgr.com

*Counsel for Defendant Google LLC*