1   David Boies*
    dboies@bsfllp.com
2   BOIES SCHILLER FLEXNER LLP
    333 Main Street
3   Armonk, NY 10504
    Tel.: (914) 749-8200 / Fax: (914) 749-8300
4

5   Philip C. Korologos*
    pkorologos@bsfllp.com
6   BOIES SCHILLER FLEXNER LLP
    55 Hudson Yards, 20th Floor
7   New York, New York 10001
    Tel.: (212) 446-2300 / Fax: (212) 446-2350
8

9   Sophia M. Rios (305801)
    srios@bm.net
10  BERGER MONTAGUE PC
    12544 High Bluff Drive, Suite 340
11  San Diego, CA 92130
    Tel: (619) 489-0300 / Fax: (215) 875-4604
12

13  Eric L. Cramer*
    ecramer@bm.net
14  Michael C. Dell'Angelo*
    mdellangelo@bm.net
15  Caitlin G. Coslett*
    ccoslett@bm.net
16  Patrick F. Madden*
    pmadden@bm.net
17  Michaela Wallin*
    mwallin@bm.net
18  BERGER MONTAGUE PC
    1818 Market Street, Suite 3600
19  Philadelphia, PA 19103
    Tel: (215) 875-3000 / Fax: (215) 875-4604
20

21  George A. Zelcs*
    gzelcs@koreintillery.com
22  Robert E. Litan*
    rlitan@koreintillery.com
23  KOREIN TILLERY LLC
    205 North Michigan Ave., Suite 1950
24  Chicago, Illinois 60601
    Tel.: (312) 641-9760 / Fax: (312) 641-9751
25

26

27

28

Carol L. O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY LLC
505 North Seventh St., Suite 3600
St. Louis, Missouri 63101-1625
Tel.: (314) 241-4844 / Fax: (314) 241-3525

Robert J. Gralewski, Jr. (196410)
bgralewski@kmllp.com
Samantha L. Greenberg (327224)
sgreenberg@kmllp.com
KIRBY McINERNEY LLP
600 B Street, Suite 2110
San Diego, CA 92101
Tel.: (619) 784-1442

Dennis Stewart (99152)
dstewart@gustafsongluek.com
GUSTAFSON GLUEK PLLC
600 B Street
17th Floor
San Diego, CA 92101
Tel.: (619) 595-3299

Daniel E. Gustafson*
dgustafson@gustafsongluek.com
Daniel C. Hedlund
dhedlund@gustafsongluek.com
Daniel J. Nordin
dnordin@gustafsongluek.com
lwang@gustafsongluek.com
Ling S. Wang
lwang@gustafsongluek.com
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844

* Pro Hac Vice

Counsel for Publisher Plaintiffs

[Additional Counsel identified on signature
pages]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| In re GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 5:20-cv-03556-BLF |

**PUBLISHER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3)**

Date:         TBD
Time:         9:00 a.m.
Courtroom:    3, 5th Floor, San Jose
Judge:        Hon. Beth Labson Freeman

| | |
|---|---|
| SWEEPSTAKES TODAY, LLC,<br>                    Plaintiff,<br>          v.<br>GOOGLE LLC, et al.,<br>                    Defendants. | No. 5:20-cv-008984-BLF |
| GENIUS MEDIA GROUP, INC., et al.,<br>                    Plaintiffs,<br>          v.<br>ALPHABET INC., et al.,<br>                    Defendants. | No. 5:20-cv-09092-BLF |
| STERLING INTERNATIONAL CONSULTING GROUP,<br>                    Plaintiff,<br>          v.<br>GOOGLE LLC,<br>                    Defendant. | No. 5:20-cv-09321-BLF |
| MARK J. ASTARITA,<br>                    Plaintiff,<br>          v.<br>GOOGLE LLC, et al.,<br>                    Defendants. | No. 5:21-cv-00022-BLF |
| JLASALLE ENTERPRISES LLC,<br>                    Plaintiff,<br>          v.<br>GOOGLE LLC,<br>                    Defendant. | No. 5:21-cv-00748-BLF |
| MIKULA WEB SOLUTIONS, INC.,<br>                    Plaintiff,<br>          v.<br>GOOGLE LLC,<br>                    Defendant. | No. 5:21-cv-00810-BLF |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on a date to be set by the Court, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Jose Courthouse, located within the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, in Courtroom 3, 5th Floor, before the Honorable Beth Labson Freeman, Plaintiffs Genius Media Group, Inc., Sterling International Consulting Group, The Nation Company, L.P., The Progressive, Inc., Sweepstakes Today, LLC, JLaSalle Enterprises LLC, and Mikula Web Solutions, Inc., plaintiffs in the above-captioned actions (collectively, "Publisher Plaintiffs"), will move pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure and Civil L.R. 7-4, to appoint the law firms of Boies Schiller Flexner LLP, Korein Tillery LLC, and Berger Montague PC as interim co-lead counsel for the putative publisher class (collectively, "Proposed Interim Co-Lead Publisher Class Counsel"), and the law firms of Kirby McInerney LLP and Gustafson Gluek PLLC to serve along with Proposed Interim Co-Lead Publisher Class Counsel as members of the Publisher Class Leadership Committee for the following related publisher matters and all subsequently filed related publisher matters:

- *Sweepstakes Today, LLC v. Google LLC et al.*, No. 5:20-cv-08984-BLF
- *Genius Media Group, Inc., et al. v. Alphabet Inc. et al.*, No. 5:20-cv-09092-BLF
- *Sterling International Consulting Group v. Google LLC*, No. 5:20-cv-09321-BLF
- *Astarita v. Google LLC, et al.*, No. 5:21-cv-00022-BLF
- *JLaSalle Enterprises LLC v. Google LLC*, No. 5:21-cv-00748-BLF
- *Mikula Web Solutions, Inc. v. Google LLC*, No. 5:21-cv-00810-BLF

The Publisher Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Philip C. Korologos, George A. Zelcs, Eric L. Cramer, Robert J. Gralewski, Jr., and Dennis Stewart and all exhibits thereto, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such other written and oral argument as may be presented to the Court.

1

**TABLE OF CONTENTS**

2    STATEMENT OF ISSUES TO BE DECIDED.................................................................. 1

3    INTRODUCTION ......................................................................................................... 1

4    PROCEDURAL BACKGROUND.................................................................................. 3

5    ARGUMENT.................................................................................................................. 5

6    I.    The Court Should Appoint Separate and Distinct Interim Lead Counsel for the Publisher
7          Class, on the One Hand, and the Advertiser Class, on the Other. ............................. 5

8          A.    Even where they challenge similar conduct, the inherently adverse economic
                 incentives of publishers and advertisers generate competing theories of injury and
9                damages, mandating independent consideration and representation.......................... 5

10         B.    The distinct claims of each class require separate representation to ensure fair
11               consideration of differential treatment during settlement. ..................................... 9

12   II.   The Court Should Appoint BSF, Korein Tillery, and Berger Montague as Interim Co-Lead
13         Counsel for the Publisher Class........................................................................... 11

14         A.    Proposed Interim Co-Lead Publisher Class Counsel Have Performed Substantial
                 Work Identifying and Investigating the Claims in This Action. ............................... 12

15         B.    Proposed Interim Co-Lead Publisher Class Counsel Are Highly Experienced in
16               Handling Complex Antitrust and Class Action Litigations. ..................................... 13

17               1.    Boies Schiller Flexner ................................................................. 13

18               2.    Korein Tillery .............................................................................. 16

19               3.    Berger Montague .......................................................................... 19

20         C.    Proposed Interim Co-Lead Publisher Class Counsel Are Knowledgeable Regarding
                 the Applicable Law. .................................................................................... 23
21

22         D.    Proposed Interim Co-Lead Publisher Class Counsel Are Willing and Able to Commit
                 the Substantial Resources Required to Prosecute this Litigation. ............................. 23
23

           E.    A Publisher Class Leadership Committee is Appropriate............................................ 24
24
     III.  A Plaintiffs' Discovery Committee is Appropriate for Coordinating Discovery Efforts
25         Between the Publisher and Advertiser Plaintiffs. ..................................................... 25

26   CONCLUSION ........................................................................................................... 25

27

28

---

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Bartling v. Apple, Inc.*,
    No. 5:18-cv-147, 2018 WL 4804735 (N.D. Cal. Apr. 27, 2018) ................................................. 11

4

5

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989) ........................................................................................................................ 6

6

7

*Cameron v. Apple, Inc.*,
    No. 3:19-cv-3074 (N.D. Cal. Oct. 10, 2019) ................................................................................ 8

8

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968) ...................................................................................................................... 6

9

10

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ...................................................................................................................... 6

11

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 1:13-md-2481 (S.D.N.Y. Mar. 6, 2014) ................................................................................ 6

12

13

*In re Apple iPhone Antitrust Litig.*,
    No. 11-cv-6714 (N.D. Cal. Apr. 9, 2012) ..................................................................................... 8

14

15

*In re Auto. Wire Harness Sys. Antitrust Litig.*,
    No. 2:12-md-2311 (E.D. Mich. Mar. 2012) ................................................................................. 6

16

17

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
    No. 1:14-md-2508 (E.D. Tenn. May 20, 2014) ............................................................................ 6

18

*In re Chocolate Confectionary Antitrust Litig.*,
    No. 1:08-md-1935 (M.D. Pa. Sept. 14, 2008) .............................................................................. 6

19

20

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
    795 F.3d 380 (3d Cir. 2015) ......................................................................................................... 5

21

22

*In re Google Play Consumer Antitrust Litig.*,
    No. 3:20-cv-5761 (N.D. Cal. Dec. 16, 2020) ............................................................................... 8

23

*In re Google Play Developer Antitrust Litig.*,
    No. 3:20-cv-5792 (N.D. Cal. Dec. 11, 2020) ............................................................................... 8

24

25

*In re High-Tech Employee Antitrust Litig.*,
    289 F.R.D. 555 (N.D. Cal. 2013) ............................................................................................... 24

26

*In re Korean Air Lines Co. Antitrust Litig.*,
    642 F.3d 685 (9th Cir. 2011) ........................................................................................................ 6

27

28

*In re Lenovo Adware Litig.*,
   No. 15-md-02624, 2015 WL 10890657( N.D. Cal. July 27, 2015) ............................................ 23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
   No. 11-md-2262, 2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011)........................................ 5, 10, 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262 (S.D.N.Y. Nov. 11, 2011) ................................................................ 10

*In re OSB Antitrust Litig.*,
   No. 06-cv-826, 2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) .......................................................... 7

*In re Packaged Seafood Prods. Antitrust Litig.*,
   No. 15-md-2670 (S.D. Cal. Mar. 24, 2016)........................................................................ 6, 24

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*
   827 F.3d 223 (2d Cir. 2016) .......................................................................... 9, 19, 21, 24

*In re Qualcomm Antitrust Litig.*,
   No. 17-md-2773, 2017 WL 2222531 (N.D. Cal. May 15, 2017)........................................................ 24

*In re Vehicle Carriers Servs. Antitrust Litig.*,
   No. 13-cv-3306 (D.N.J. Mar. 3, 2014) ............................................................................. 6

*Meijer, Inc. v. Abbott Labs.*,
   No. 07-cv-5985 (N.D. Cal. June 18, 2008)...................................................................... 20, 24

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................................... 5

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968) ............................................................................................... 6

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 11, 12, 25

**Acts**

Sherman Act, Section 2................................................................................................ 3, 8

**Other Authorities**

Manual for Complex Litigation (4th ed.) § 10.221 (2004) ....................................................... 5

Manual for Complex Litigation (4th ed.) § 21.11 (2004) ........................................................ 11

Moore's Federal Practice § 23.120(3)(A) (3d ed. 2010).......................................................... 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should appoint Boies Schiller Flexner LLP ("BSF"), Korein Tillery LLC ("Korein Tillery") and Berger Montague PC ("Berger Montague") as interim co-lead class counsel for the proposed publisher class (collectively, "Proposed Interim Co-Lead Publisher Class Counsel"); and

Whether the Court should appoint the law firms of Kirby McInerney LLP and Gustafson Gluek PLLC to serve along with Proposed Interim Co-Lead Publisher Class Counsel as members of the Publisher Class Leadership Committee.

**INTRODUCTION**

Online publishers, the innovative creators and producers of websites, have become the driving source of information throughout our society. These publishers, ranging from news organizations, to niche informational sites, to eclectic work-at-home bloggers, rely largely on online advertising revenue to fund their businesses. Through a campaign of anticompetitive conduct, Google has achieved and maintained monopoly power in the markets for tools publishers use to earn that revenue through the sale of advertising space on their websites. Google has used that power to extract more and more money from publishers—thus threatening the ability and incentive of publishers to create content. Publisher Plaintiffs have brought their actions on behalf of classes of similarly situated persons and entities to restore competition to each of these markets, to pursue damages incurred by publishers flowing from Google's anticompetitive conduct, and to ensure that publishers ultimately receive a competitive price for their online ad space inventory from advertisers, a price that is no longer suppressed by Google's anticompetitive conduct.

Google, one of the most powerful companies in the world, has engaged two of the most respected defense firms in the country to represent its interests. The vital interests of publishers demand equally talented representation with the resources and incentive to prosecute their claims aggressively. Accordingly, Publisher Plaintiffs have assembled a team comprising many of the finest antitrust lawyers in the country. Collectively, counsel bring decades of experience litigating and trying complex antitrust class actions and the resources necessary to prosecute this matter to

1  conclusion. For the reasons more fully explained below, Publisher Plaintiffs request that the Court

2  enter an order establishing the following leadership structure and appointments:

3  - <u>Interim Co-Lead Counsel for the Publisher Class:</u> Boies Schiller Flexner LLP,
   Korein Tillery LLC, and Berger Montague PC.

4  - <u>Leadership Committee for Publisher Plaintiffs:</u> Interim Co-Lead Counsel for the
5  Publisher Class as well as Kirby McInerney LLP and Gustafson Gluek PLLC.

6  This submission is supported by 7 of the 8 publisher plaintiffs who have brought suit against

7  Google in this proceeding. The sole exception is Mark J. Astarita, whose counsel also represents the

8  proposed advertiser class in *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-3556

9  ("*Digital Advertising*")—a case litigated exclusively by advertiser plaintiffs through two rounds of

10  motion-to-dismiss briefing. The *Astarita* Complaint—which largely repeats the allegations and

11  theories of the *advertiser plaintiffs*—was filed weeks after three separate publishers filed publisher-

12  specific actions in this District, and after a similar state attorneys' general antitrust case was filed

13  against Google, *Texas v. Google LLC*, No. 20-cv-957, Dkt. 1 (E.D. Tex. Dec. 16, 2020).

14  Appointing separate firms to represent publishers, on the one hand, and advertisers, on the

15  other, is necessary to ensure that publishers' and advertisers' interests are fairly and adequately

16  represented. Publisher Plaintiffs challenge Google's maintenance of monopoly power in the market

17  for publisher Ad Servers—the decision-making tool that determines where publisher inventory is

18  offered for sale, that uses business rules implemented by Google to select winning advertisements,

19  and that ultimately serves the ads on publishers' websites. In the Ad Exchange and Ad Network

20  markets, publishers and advertisers square off at opposite ends of a buy-sell transaction, a

21  transaction in which publishers push for higher prices and advertisers seek to pay less. Google's Ad

22  Exchange and Ad Network products straddle the middle of these transactions. While publishers and

23  advertisers both contend that Google's "take rate"—the amount Google reserves for itself from the

24  advertiser payment—is artificially high, and that both groups are harmed as a result of Google's

25  anticompetitive conduct, they will each undoubtedly advocate for distinctly different allocations of

26  that supra-competitive overcharge. Indeed, as discussed more fully below, the pleadings in the case

27  already reflect this tension, as each class of plaintiffs contends that it has borne the brunt of the

28  overcharge. *Compare Digital Advertising* Am. Compl. ¶ 125 (price increases "were largely borne by

advertisers") *with Genius Media* Compl. ¶ 91 (the "harm to competition" is felt "*particularly by publishers* but also by advertisers" (emphasis added)) & ¶ 105 (question exists whether Google's conduct "benefitted advertisers").

These crucial differences between publishers and advertisers mandate entirely independent counsel in the decision-making roles for each class. Publishers and advertisers are both entitled to unfettered consideration of all potential legal theories and arguments that might best enhance their respective unique interests—regardless of how those decisions might impact the other class. While all plaintiffs agree that Google's anticompetitive conduct has harmed both publishers and advertisers, they already have different views as to which group bears the brunt of Google's artificially inflated take rate, and are also likely to have distinctly different views of the but-for price of online advertising inventory. While publisher class counsel and advertiser class counsel undoubtedly will work together on common causes—and the undersigned propose a Discovery Coordinating Committee of both publisher and advertiser counsel to facilitate such coordination—their cooperation must be tempered by the undivided loyalty each owes their unique client class.

## PROCEDURAL BACKGROUND

On December 16, 2020, Plaintiffs Genius Media Group, Inc., The Nation Company, L.P., and The Progressive, Inc., on behalf of a nationwide class of online publishers, filed suit against Google and certain of its affiliates, alleging that Google violated Section 2 of the Sherman Act by engaging in anticompetitive conduct that has both perpetuated its market power in publisher Ad Servers and substantially impaired competition in Ad Exchanges and Ad Networks—the auction-like platforms where advertisers bid to place advertisements on publishers' websites. *Genius Media Group, Inc. v. Alphabet Inc.*, No. 20-cv-9092, Dkt. 1. The *Genius Media* complaint came one day after Sweepstakes Today, LLC filed the first complaint against Google asserting similar claims under Section 2 of the Sherman Act.[1] *Sweepstakes Today, LLC v. Google LLC*, No. 20-cv-8984,

---

[1] Robbins Geller Rudman & Dowd LLP ("Robbins Geller") filed the *Sweepstakes* complaint and supports the instant motion. Robbins Geller separately represents a publisher plaintiff in a non-class case against Google in the Southern District of West Virginia, *HD Media Co., LLC v. Google, LLC et al.*, 3:21-cv-00077. As counsel in its *HD Media* matter, Robbins Geller intends to

Dkt. 1. Although Google's anticompetitive conduct with respect to online advertising had spurred

investigations and lawsuits by regulators, as well as several class actions brought by advertisers—

which were consolidated before this Court in *Digital Advertising*—the *Sweepstakes* and *Genius*

*Media* actions were the first cases brought against Google by publisher plaintiffs. Similar actions

were filed in *Sterling Int'l Consulting Grp. v. Google LLC*, No. 20-cv-9321 (Dec. 23, 2020);

*JLaSalle Enters. LLC v. Google LLC*, No. 21-cv-748 (Jan. 29, 2021); and *Mikula Web Sols., Inc. v.*

*Google LLC*, No. 21-cv-00810 (Feb. 2, 2021) (the plaintiffs in *Genius Media*, *Sweepstakes*,

*Sterling*, *JLaSalle*, and *Mikula* are collectively referred to as "Publisher Plaintiffs").

The Publisher Plaintiffs' complaints assert compatible causes of action and legal theories,

although there are some distinctive allegations in each complaint. These complaints reflect that each

Publisher Plaintiff's counsel has conducted extensive and unique research that will redound to the

benefit of members of the publisher class. Pursuant to this Court's February 9 Order, Publisher

Plaintiffs are in the process of harmonizing their respective pleadings so that they may file a single

consolidated amended complaint with this Court no later than April 5, 2021. *Digital Advertising*,

Dkt. 89. All Publisher Plaintiffs support this motion and the proposed leadership structure.

In addition to the Publisher Plaintiffs, Mark J. Astarita, a securities lawyer who operates

the website seclaw.com, filed a lawsuit against Google on January 4, 2021, almost three weeks

after the *Sweepstakes* and *Genius Media* complaints. *Astarita v. Google LLC*, No. 21-cv-22. Mr.

Astarita is represented by Girard Sharp LLP, who also serves as counsel for the advertiser

plaintiffs in *Digital Advertising*. Notably, while the consolidated complaint in the advertiser

litigation purported to bring claims on behalf of a class of advertisers *and* publishers, the only

named plaintiffs are *advertisers*, and the complaint, not surprisingly, focuses on different markets

and different anticompetitive conduct and harm than that alleged in the Publisher Plaintiffs'

complaints. The advertiser complaint focuses on Google's conditioning of advertiser access to its

essential search advertising on the use of Google's tools, and on the steps Google has taken to

---

work cooperatively and collaboratively with, and under the direction of, Proposed Interim Co-
Lead Publisher Class Counsel with regards to the instant matter.

1   maintain its monopoly over search advertising, including contractual agreements making Google

2   the default search engine on mobile devices, and Google's purchase of the chrome browser. In

3   contrast, the Publisher Plaintiffs' complaints emphasize Google's abuse of its publisher Ad

4   Server—a product that even Google concedes the advertiser plaintiffs do not use, *see Digital*

5   *Advertising*, Dkt. 57 at 3—to monopolize the Ad Exchange and Ad Network markets. In their

6   response to the motion to dismiss the complaint in *Digital Advertising*, counsel noted that, for

7   purposes of defending their advertiser complaint, they now proposed to limit their class definition

8   to cover only online advertisers and not online publishers *Digital Advertising*, Dkt. 93.

9                                        **ARGUMENT**

10   **I.     The Court Should Appoint Separate and Distinct Interim Lead Counsel for the
           Publisher Class, on the One Hand, and the Advertiser Class, on the Other.**

11

12        The "most important" factor when determining interim lead counsel is "achieving efficiency

13   and economy without jeopardizing fairness to the parties." Manual for Complex Litigation (4th ed.)

14   § 10.221 (2004) . Fairness here requires that the publisher class and the advertiser class each have

15   independent interim lead counsel to make decisions based on the unique interests of their respective

16   class clients, and to insulate the ultimate results achieved from any claim of divided loyalties.

17        **A.     Even where they challenge similar conduct, the inherently adverse economic
              incentives of publishers and advertisers generate competing theories of injury
18            and damages, mandating independent consideration and representation.**

19        In appointing class counsel, the Court should provide for "separate representation" whenever

20   necessary "to eliminate conflicting interests of counsel." *See Ortiz v. Fibreboard Corp.*, 527 U.S.

21   815, 856–57 (1999). "Class counsel may not consistent with *Ortiz* represent an entire class if

22   subgroups within the class have interests that are significantly antagonistic to one another." *In re*

23   *Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393–94 (3d Cir. 2015). This

24   rule applies with equal force to appointing interim lead class counsel. *In re LIBOR-Based Fin.*

25   *Instruments Antitrust Litig. ("In re LIBOR")*, No. 11-md-2262, 2011 WL 5007957, at *2 (S.D.N.Y.

26   Oct. 18, 2011).

27        Courts, including those in the Ninth Circuit, have routinely appointed separate lead counsel

28   when multiple proposed class actions with distinct groups of plaintiffs are consolidated in a single

MOTION FOR INTERIM CO-LEAD              5              Case No.: 5:20-cv-03556-BLF
CLASS COUNSEL

district, as in the classic context of direct and indirect purchasers.[2] *E.g.*, *In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685, 690 (9th Cir. 2011) (appointing sole firm to have brought a case with indirect purchaser plaintiffs as interim counsel for indirect purchaser actions, and appointing different co-lead counsel to pursue claims on behalf of the direct purchaser plaintiffs).

Appointment of separate lead counsel is equally mandated where the plaintiff classes are comprised of *discrete market participants*—like publishers and advertisers. *In re Auto. Wire Harness Sys. Antitrust Litig.*, No. 2:12-md-2311, Dkt. 60, 64, 65 (E.D. Mich. Mar. 2012) (appointing three separate leadership structures: one for direct purchasers, and two separate structures for different types of indirect purchasers, dealers and end users, whose interests may be at odds); *In re Aluminum Warehousing Antitrust Litig.*, No. 1:13-md-2481, Dkt. 216 (S.D.N.Y. Mar. 6, 2014) (appointing separate lead counsel for direct purchasers, commercial end users, and consumer end users); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, Dkt. 67 (E.D. Tenn. May 20, 2014) (appointing separate lead counsel for direct purchasers, commercial end users, and consumer end users); *In re Vehicle Carriers Servs. Antitrust Litig.*, No. 13-cv-3306, Dkt. 106 (D.N.J. Mar. 3, 2014) (separate counsel for automobile dealer and end payor classes); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-md-1935, Dkt. 387 (M.D. Pa. Sept. 14, 2008) (appointing separate counsel for "indirect business purchasers" and "indirect end users"); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670, Dkt. 119 (S.D. Cal. Mar. 24, 2016) (appointing separate counsel for "indirect commercial food preparer" and "indirect end payer").[3]

---

[2] Notably, the tensions between the claims of direct and indirect purchasers in antitrust litigation—where courts uniformly appoint distinct and non-overlapping counsel—are substantially less significant than those at issue here between publishers and advertisers. Direct purchaser claims are brought under federal antitrust law, permitting such claimants to recover 100% of the overcharge directs incur even if some of that overcharge is "passed on" to indirect purchasers. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977) (citing *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968)). Indirect purchasers can recover for the entire amount of the overcharge that the directs pass on to them under multiple state antitrust statutes. *Id.* Thus, while there are tensions as a factual matter between both groups, the law eliminates that potential conflict because it allows "double recovery" of the same overcharge. *California v. ARC Am. Corp.*, 490 U.S. 93, 96–97 (1989). Here, both publishers and advertisers will be fighting, in part, over their respective shares of the exact same overcharge and "double recovery" is not permitted.

[3] Courts even require separate counsel among different groups of indirect purchasers because of the

Although publishers and advertisers challenge similar anticompetitive conduct by Google, the classes are distinctly situated for purposes of injury and damages. Publishers' and advertisers' interests (as sellers and buyers of ad inventory, respectively) are diametrically opposed in their dealings with one another and with Google. On the one hand, publishers seek to use Google's tools to generate the highest price for their ad space inventory. On the other, advertisers demand that Google's tools enable them to pay as little as possible to place ads. In connection with each sale of publishers' digital display ad space, Google takes a percentage of advertisers' payments for itself. *See, e.g.*, *Digital Advertising* Am. Compl. ¶ 43. Publishers claim that some portion of that take rate is an overcharge that Google imposes on publishers due to the anticompetitive conduct challenged in the Publisher Plaintiffs' complaints; advertisers claim that some portion of that same take rate is an overcharge that Google imposes on advertisers.[4] Thus, both publishers and advertisers will seek to show that Google's take rate was higher than it would have been absent the challenged conduct, and necessarily seek to assert a claim over the same overcharge. Accordingly, each dollar of the overcharge in a given transaction that goes to one class's member (*e.g.*, a publisher) has the potential to reduce the amount of the overcharge available to the other class's member (*e.g.*, the advertiser), raising inherent conflicts related to the simultaneous representation of both publishers and advertisers. To maximize their damages, advertisers are incentivized to posit a "but-for world" (absent the challenged conduct) in which Google would charge more to publishers than advertisers, while publishers will in turn posit a but-for world with the opposite economic conditions.

This very conflict has already manifested in the pleadings. The advertiser complaint alleges

---

possible conflicting interests. For example, in *In re OSB Antitrust Litig.*, the court found a class of indirect purchasers was not adequately represented because of the conflicting interests between resellers and end-users who each asserted a claim over the same overcharge. No. 06-cv-826, 2007 WL 2253425, at *5 (E.D. Pa. Aug. 3, 2007). In essence, counsel for resellers were incentivized to minimize the extent of the pass through (to maximize reseller damages), and thus end users required a separate class and counsel who are incentivized to maximize the pass through (and maximize end-user damages). Thus, even though the interests of these different types of indirect purchasers were aligned to the extent that they each sought to prove the maximum total overcharge, appointment of different firms was necessary to fairly and adequately represent the classes.

[4] *See, e.g.*, *Sterling* Compl. ¶ 14 ("Publishers have no choice but to pay [Google's] supracompetitive prices—extracted as a percentage of their advertising revenue."); *Digital Advertising* Am. Compl. ¶¶ 13, 18, 23 (alleging advertiser plaintiffs paid supracompetitive prices to Google to broker the placement of display advertising on publishers' sites).

that advertisers "largely" bear the overcharge. *See Digital Advertising* Am. Compl. ¶ 125 (price increases for display advertising inventory "resulted in substantial part from Google's consolidation of the intermediation services market and Google's price increases for those services, and *were largely borne by advertisers* who paid Google for those services to broker the placement of their display ads" (emphasis added)). The Publisher Plaintiffs beg to differ and submit that decisions regarding publishers' litigation strategy should not be influenced by counsel who have already expressed an adverse position. *Genius Media* Compl. ¶ 91 (the "harm to competition" is felt "*particularly by publishers* but also by advertisers" (emphasis added)) & ¶ 105 (question exists whether Google's conduct "benefitted advertisers"). These starkly contradictory allegations are fundamental, non-speculative, and are articulated in the current versions of the complaints.

Courts in this District have recently appointed separate leadership structures for class actions against each of Google and Apple relating to their app store transactions, where developers and consumer-purchasers have a similar high-low price dynamic, and both seek to recover for Google's supra-competitive take rate. *See In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-5792, Dkt. 79 (N.D. Cal. Dec. 11, 2020) (appointing three firms as co-lead counsel for developers in a Section 2 case seeking to recover a portion of a 30% transaction fee charged for app store and in-app purchases); *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-5761, Dkt. 128 (N.D. Cal. Dec. 16, 2020) (appointing two firms as co-lead counsel, a liaison counsel, and three additional firms to a steering committee to represent consumers seeking to recover a portion of the same 30% transaction fee charged for app store and in-app purchases).[5]

The principle mandating independent representation of classes with antagonistic interests has teeth, especially in complex antitrust actions where economic incentives play a central role. For instance, the Second Circuit held that it was error for the same counsel to represent classes suing on the same legal theories against the same defendants in the same markets—not because the plaintiffs

---

[5] *See also In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714 (N.D. Cal. Apr. 9, 2012) (appointing interim lead counsel for consumers in a Section 2 case seeking to recover a portion of the 30% transaction fee Apple charges on in-app and app store purchases as an overcharge); *Cameron v. Apple, Inc.*, No. 3:19-cv-3074 (N.D. Cal. Oct. 10, 2019) (appointing interim lead counsel to represent developers seeking to recover a portion of the same 30% transaction fee Apple charges on in-app and app store purchases as an overcharge).

had antagonistic legal theories but because they sought *different remedies*—with one group wanting "to maximize cash compensation for past harm" and the other seeking prospective relief, which valued conduct remedies more than cash. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig. ("In re Payment Card")*, 827 F.3d 223, 234 (2d Cir. 2016). Here, common representation is inappropriate because the two categories of plaintiffs have conflicting interests that go far beyond the form of remedy.

Lead counsel for the proposed publisher class must evaluate a variety of competing theories of injury and damage—some of which are significantly antagonistic to the advertisers' preferred view of the facts. For example, the publisher class may contend that Google's use of a first-in-line privilege and a last-look option *suppressed* bids by advertisers on publisher inventory. This theory posits that some advertisers paid less for the same impressions than they would have in the but-for world without Google's anti-competitive conduct. Similarly, the publisher class may contend that Google's efforts to disadvantage rivals in the Ad Exchange and Ad Network markets drives more share to the Google Ad Exchange and Google Ad Network and hence, drives more impressions to Google's AdWords advertisers—the same plaintiff advertiser class who used Google's advertising services to place ads on websites. This theory posits that the advertiser class, as currently defined, is *benefitted* at the expense of *competing* advertisers who do not use Google's ad tech tools. Regardless of whether either theory is eventually included in the Publisher Plaintiffs' Consolidated Complaint, fair and adequate representation of the publisher class mandates that these theories be assessed by lead counsel who owe no duty of loyalty to the advertiser class.

    **B.**    **The distinct claims of each class require separate representation to ensure fair consideration of differential treatment during settlement.**

Where, as here, each class possesses separate and distinct claims that cannot be alleged by members of the other class, the appointment of independent lead counsel is required to ensure that the unique interests of each class will be protected in the event of settlement. The appointment of fiduciaries to monitor class interests does not suffice.

In the sprawling multi-district antitrust litigation related to the fixing of the London Interbank Offer Rate ("LIBOR"), 15 of 21 pending class actions complaints were consolidated in an

MDL in the Southern District of New York, and six additional cases were filed directly in that court. *In re LIBOR*, 2011 WL 5007957, at *1. The court considered three motions for appointment of interim class counsel. *Id.* The court noted that "[w]hile the complaints make similar substantive allegations, there nonetheless appear to be two distinct categories of plaintiffs": plaintiffs that purchased financial instruments directly from the defendant banks ("over the counter" plaintiffs) and plaintiffs that did not directly transact with defendants, but rather purchased financial products through a financial exchange. *Id.* The court "concluded that separate putative classes should be maintained" for the two groups because "[t]hese two classes may be differently positioned at various stages of the litigation, creating a potential conflict for their joint representation." *Id.* at *2. Not only was there a "likelihood" that some issues of law would be different between the two proposed classes, but "separate representation is advisable because the two categories of plaintiffs may require different treatment in the event of settlement." *Id.* The court then rejected the proposal of one of the firms seeking appointment to designate "fiduciaries" within the firm for each plaintiff class. *Id.* at *3. Instead, the court held that "[a] far more commonsense approach is to divide plaintiffs into two putative classes and appoint interim lead counsel for each class," noting there is "ample precedent for this approach at the pre-certification stage." *Id.*; *see also In re LIBOR*, No. 11-md-2262, Dkt. 13 (S.D.N.Y. Nov. 11, 2011) (appointing interim lead counsel for each set of plaintiffs).

The potential for conflict in the joint representation of publishers and advertisers is further augmented by the discrete claims that can be alleged by only one class or the other. A primary focus of the advertiser complaint is Google's anticompetitive maintenance of its monopoly over search and search advertising (*see Digital Advertising* Am. Compl. ¶¶ 77–99), and its leveraging of that power to require advertisers to use Google's advertising tools to purchase its search advertising. *Id.* 102 ("Google also blocks advertisers from using third-party [demand side platforms] to purchase Google Search inventory, which is sold primarily through Google AdWords."); *id.* ¶ 105 ("to access the search data over which Google has monopoly control and which is vital to effective online advertising, an advertiser is coerced into using Google's products in the separate market for display advertising services."). Publisher Plaintiffs are ill-positioned to pursue such claims because, in their role as publishers, they do not use demand side platforms. Instead, the Publisher Plaintiffs'

complaints all state claims based on Google's perpetuation of its monopoly power in the distinct publisher Ad Server market and its use of that power to anticompetitively suppress the amounts publishers receive for their ad inventory. Thus, each class challenges distinct instances of anticompetitive conduct, giving rise to claims that the other class has no standing to allege. Should one of these claims prove more viable than the other, publishers and advertisers would necessarily "require different treatment in the event of settlement." *In re LIBOR*, 2011 WL 5007957, at *3.

In sum, publishers and advertisers occupy distinct roles in the online display advertising marketplace. They have competing claims to the same Google take-rate overcharge. The publisher class must assess theories of injury and damages that might disadvantage the claims pled by the advertiser class. Moreover, each class possesses distinct claims that cannot be alleged by the other class, creating an inherent tension in the event of settlement. In each of these areas, the interests of publishers and advertisers are "significantly antagonistic," mandating the appointment of separate interim lead class counsel to ensure fairness to all parties.

**II.    The Court Should Appoint BSF, Korein Tillery, and Berger Montague as Interim Co-Lead Counsel for the Publisher Class.**

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." The appointment of interim class counsel is encouraged by the Advisory Committee Notes to Rule 23(g), which explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." *See also* Manual for Complex Litigation, Fourth, § 21.11 (2004) .

In appointing interim class counsel under Rule 23(g)(3), courts look to the factors for appointing class counsel under Rule 23 (g)(1)(A). *See, e.g.*, *Bartling v. Apple, Inc.*, No. 5:18-cv-147, 2018 WL 4804735, at *1 (N.D. Cal. Apr. 27, 2018). Under Rule 23 (g)(1)(A), the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23 (g)(1)(A). Proposed Interim Co-Lead

1    Publisher Class Counsel more than satisfy these requirements.

2        **A.    Proposed Interim Co-Lead Publisher Class Counsel Have Performed
              Substantial Work Identifying and Investigating the Claims in This Action.**
3

4        While no one factor under Rule 23(g)(1) "should necessarily be determinative," *see*

5    Advisory Committee Notes (2003) on Fed. R. Civ. P. 23, the investigative and analytical efforts of

6    counsel seeking appointment as interim counsel are often accorded significant weight:

7            In a case with a plaintiff class, the process of drafting the complaint requires some
             investigatory and analytical effort, tasks that strangers to the action most likely will
8            not have undertaken. All other things being equal, when an attorney has performed
             these or other investigative and analytical tasks before making the application for
9            appointment, he or she is in a better position to represent the class fairly and
             adequately than attorneys who have not undertaken those tasks.
10

11   Moore's Federal Practice § 23.120(3)(A) (3d ed. 2010).

12       This first factor under Rule 23(g)(1)(A) strongly favors the appointment of BSF, Korein

13   Tillery, and Berger Montague as interim co-lead counsel for the proposed publisher class. The firms

14   have already dedicated substantial resources to advancing the publisher class' claims by thoroughly

15   investigating Google's anticompetitive conduct in the ad tech stack as it relates to publishers, and

16   drafting and filing both the detailed, high-quality *Genius Media* and *Sterling* complaints. Those

17   complaints allege that Google engaged in unlawful actions designed to monopolize or to attempt to

18   monopolize the publisher Ad Server, Ad Exchange, and Ad Network markets—through which

19   publishers sell advertising space on their websites in real-time auctions—including, among other

20   things, (i) anticompetitive acquisitions at each level of the ad tech stack, including in the publisher

21   Ad Server market; (2) excluding rival Ad Exchanges through the imposition of rules (first-look/last-

22   look/waterfall manipulation) designed to ensure Google's Ad Exchange wins more bids; (3) taxing

23   rival Ad Exchanges (surcharge for using competitor/not exclusively dealing with Google); (4) using

24   its publisher Ad Server to impose a rate structure that penalizes publishers for using a competitor;

25   (5) excluding rivals and raising barriers to entry by combining two separate products that serve

26   distinct functions, the publisher Ad Server and Ad Exchange; (6) excluding rival Ad Networks by

27   pre-textually blocking competitor Ad Networks on grounds of privacy or other from competing for

28

---

impressions; and (7) using its publisher Ad Server to impose rate structures that raise rival Ad Exchanges' costs by prohibiting publishers from offering better prices through other Ad Exchanges.

Most notably, key portions of the Publisher Plaintiffs' complaints turn on Google's abuse of its publisher Ad Server, including how Google uses its publisher Ad Server and Ad Exchange/Ad Network in conjunction to harm competition. *See Genius Media* Compl. ¶¶ 2–14, 34–95; *Sterling* Compl. ¶¶ 33–40, 66–144. The advertiser plaintiffs in *Digital Advertising* do *not* use Ad Servers, and thus allegations and claims concerning Google's abuse of its Ad Server—the product fundamentally at issue in Publisher Plaintiffs' cases—are missing from that complaint. *See generally Digital Advertising* Am.d Compl. This difference is crucial and, as explained in Section I above, will lead to different incentives for the two proposed classes in discovery, legal theory, economic analysis, and proof on Google's conduct with respect to Ad Servers.

### B.   Proposed Interim Co-Lead Publisher Class Counsel Are Highly Experienced in Handling Complex Antitrust and Class Action Litigations.

Both on a national scale and in California, Proposed Interim Co-Lead Publisher Class Counsel have the experience and knowledge necessary to provide the proposed classes the best representation possible. Given the size and complexity of this case, the appointment of three co-leads will best serve the interests of the proposed publisher class. As discussed in more detail below, Proposed Interim Co-Lead Publisher Class Counsel have extensive experience with class actions and complex litigation, including in this District.

### 1.   Boies Schiller Flexner

Since its inception in 1997, BSF has led many of the nation's most important antitrust cases. The Firm's Chairman David Boies led the Department of Justice's successful antitrust case in *United States v. Microsoft Corp.* (D.D.C.), a rare instance in which the DOJ retained private counsel to lead a DOJ case. Korologos Decl. ¶ 4. Other examples include: American Express' antitrust case against Visa and Mastercard in which the Firm (Mr. Boies and Mr. Korologos) recovered a record-setting $4 billion; *In Re Vitamins Antitrust Litig.* (D.D.C.) in which the Firm (Mr. Boies) recovered more than $1 billion for the class as the result of settlements and a successful jury trial; *In Re Auction House Antitrust Litig.* (S.D.N.Y.) in which the Firm (Mr. Boies and Mr. Korologos)

recovered $512 million for the class after prior interim lead counsel had valued the case at less than $100 million; *In Re Polyurethane Foam Antitrust Litig.* (N.D. Ohio) in which the Firm recovered more than $430 million in settlements and jury verdicts; and *In Re Blue Cross Blue Shield Antitrust Litig.* (N.D. Ala.) in which the Firm (Mr. Boies) achieved both what the Court referred to as "historic" injunctive relief and a $2.7 billion cash recovery in a settlement that received preliminary approval last October. *Id.*

Other recent complicated class actions where the Firm has served as lead or co-lead counsel include *In Re Takata Airbag Prods. Liability Litig.* (S.D. Fla)—a recovery of more than $1.5 billion this far with the case on-going; *Beltran v. InterExchange* (D. Colo.) (Mr. Rodriguez and Ms. McElroy)—a recovery of $65 million for a class of au pairs. Korologos Decl. ¶ 5.

BSF's successes have been well-recognized. The Firm is ranked highly by Chambers and other sources for antitrust and commercial litigation. Korologos Decl. ¶ 6, Ex. 1. The National Law Journal describes the firm as one of "casual brilliance"; the American Lawyer calls it "A Galaxy of Bright Lights"; Law Dragon says the Firm is "the most powerful litigation turbine America". *Id.* One of the interim lead counsel whom Mr. Boies replaced in *In Re Auction House Antitrust Litig.* described the result BSF achieved as "the most outstanding result I have ever heard of in the history of the antitrust laws." Korologos Decl. ¶ 6.

Managing this case on a day-to-day basis for BSF are David Boies, Phil Korologos, Mark Mao, Abby Dennis, Sean Rodriguez, Sabria McElroy, and Brianna Hills. Korologos Decl. ¶ 7, Ex. 2.

***David Boies.*** Mr. Boies, who has been named Litigator of the Year by the *American Lawyer*, Lawyer of the Year by the *National Law Journal*, Antitrust Lawyer of the Year by the American Bar Association, and runner-up Person of the Year by Time Magazine, among other honors, has extensive experience with antitrust class actions. He is a founding partner of the BSF. Mr. Boies has also been widely acclaimed for his representation of the United States in *United States v. Microsoft Corp.*, his representation of presidential candidate and former Vice President Al Gore during the contested 2000 Presidential election, and his representation, with Ted Olson of Gibson, Dunn & Crutcher, of plaintiffs in the landmark suit *Hollingsworth v. Brown*, in which the California Supreme Court struck down California's Proposition 8 as unconstitutional for its discrimination on the basis

of sexual orientation, a ruling upheld by the Ninth Circuit and the Supreme Court.

*Phil Korologos.* Mr. Korologos, a partner in BSF's New York City office, engages in a national practice of complex plaintiffs and defense litigation including substantial antitrust prosecutions and defense. He led BSF's work in defending American Express, including during a two-month trial in 2015, against claims brought by the United States and several State attorneys general alleging violation of the antitrust laws in the two-sided market for payment card services; his work on behalf of American Express also included leading efforts to prepare that case and parallel class and opt out litigation, as well as settlement negotiations with the class and opt-outs. He has tried numerous plaintiffs and defense cases in federal and state courts and in domestic and international arbitrations. Mr. Korologos currently leads BSF's efforts together with Korein Tillery in representing the putative class against YouTube and Google pending in this Court (Judge Donato) alleging violations of copyright laws. *Schneider v. YouTube*, No. 5:20-cv-04423 (N.D. Cal.).

*Mark C. Mao.* Mr. Mao, who is a partner in BSF's San Francisco office, has served as lead counsel in numerous class actions involving data-based products. For over a decade, Mr. Mao has advised ad exchanges and large publishers on numerous aspects of digital ads, from deals relating to ad unit bidding and data, to representing them in class actions involving fraudulent ad sales and clicks. He is currently lead counsel in the two advertisement technology class actions against Google, *Brown v. Google*, No. 20-cv-03664 (N.D. Cal.), involving internet browsers and Google's website advertisement technologies, and *Rodriguez v. Google*, No. 20-cv-04688 (N.D. Cal.), involving Google's mobile device advertisement targeting technologies. In addition, Mr. Mao leads the Firm's efforts in *ReactX v. Google*, No. 18STCV09674 (Los Angeles Sup. Ct.). He has been the Firm's primary lead on the investigatory aspect of the publisher cases for approximately 20 months.

*Abby Dennis.* Ms. Dennis, a partner in BSF's Washington, DC office, has successfully prosecuted and defended antitrust actions and served as trial counsel in some of the firm's most high-profile cases over her decade-plus career at BSF. Most recently, in the fall of 2019, she tried two significant antitrust cases, settling a Section 1 group boycott case shortly after resting plaintiff SourceOne's case in a three-week jury trial in *SourceOne Dental, Inc. v. Benco Dental Supply Co.* (E.D.N.Y.) and later obtaining a complete defense for Uber Technologies in an AAA arbitration

challenging Uber's business model as illegal price-fixing, a decision that was subsequently upheld by the federal district court in *Meyer v. Uber Technologies* (S.D.N.Y.).

**Sean Rodriguez.** Mr. Rodriguez, a partner in BSF's San Francisco office, represented American Express with Mr. Korologos from the government's pre-complaint investigation in 2008–09 through the two-month trial in 2015 in *Ohio v. American Express*. Mr. Rodriguez currently serves as class counsel in a wage-fixing class action brought on behalf of all *au pairs* who worked in the United States, a case where Mr. Rodriguez and the Firm obtained the largest wage-and-hour class settlement in several years, with tens of thousands of class members receiving checks worth thousands of dollars each to settle antitrust, wage-and-hour, and other claims.

**Sabria McElroy.** Ms. McElroy is a partner in BSF's Fort Lauderdale office and possesses a wide range of experience representing both plaintiffs and defendants in a variety of areas, including antitrust and class actions. Most notably, she, along with Mr. Korologos and Mr. Rodriguez, represented American Express in a seven-week bench trial against antitrust challenges by the Department of Justice to provisions of American Express's merchant contracts. Ms. McElroy also represented a class of *au pairs* in a suit that accused several sponsorship agencies of colluding to suppress wages in violation of federal antitrust laws and resulted in a $65.5 million settlement.

**Brianna Hills.** Ms. Hills, an associate in BSF's New York City office, currently represents plaintiffs in multiple antitrust cases, including, along with Ms. Dennis, landmark multidistrict litigation alleging a wide-ranging price-fixing conspiracy in *In Re: Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.), as well as litigation alleging conspiracies in certain automotive component part markets, *Prevent USA Corp. v. Volkswagen AG*, No. 19-cv-13400 (E.D. Mich.) and *Prevent DEV GmbH v. Adient plc*, No. 20-cv-13137 (E.D. Mich.).

### 2. Korein Tillery

Korein Tillery ("KT") is one of the country's leading and most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 14 years. The National Law Journal ("NLJ") has consistently recognized KT as one of the country's top plaintiffs' firms, naming it to its "Plaintiffs' Hot List" seven times in the past 15 years. In 2014 and 2015, KT was named by the NLJ

1   as a member of its top 50 Elite Trial Lawyers. The firm routinely represents classes, individuals,

2   governmental entities and billion-dollar, multi-national corporations. Having taken hundreds of

3   cases to trial, KT can go the distance in high-stakes, complex litigation. Zelcs Decl. ¶ 4.

4           KT has extensive experience in complex class-action antitrust work, including *In re: Foreign*

5   *Exchange Benchmark Rates Antitrust Litig.*, an antitrust case involving the foreign exchange market

6   that lead to $2.3 billion in court-approved settlements reached with 15 of the 16 bank defendants; *In*

7   *re GSE Bonds Antitrust Litig.*, KT and co-counsel alleged antitrust violations arising from

8   coordinated price-fixing in the secondary market for bonds issued by the government-sponsored

9   entities leading to a combined settlement against the defendant banks of $386.5 million; *Sullivan v.*

10  *DB Investments, Inc.*, KT was appointed co-lead counsel representing a nationwide class of diamond

11  purchasers in an antitrust case against the country's largest diamond distributors where settlement

12  created a $323 million fund to compensate diamond purchasers; *In re: Google Play Consumer*

13  *Antitrust Litig.*, KT and co-counsel filed the first consumer class action in the nation alleging that

14  Google's operation of Google Play Store and Google Play Billing, among other actions, created a

15  wrongful monopoly over the distribution of applications and payment for in-application purchases in

16  the Android ecosystem, and KT now serves as a member of the consumer class steering committee;

17  *Litovich v. Bank of America Corp.*, KT currently serves as interim co-lead class counsel in this

18  antitrust class action against ten banks seeking to recover damages in an amount conservatively

19  estimated to be in excess of $10 billion dollars based on the disparities in pricing of odd-lots for

20  bonds and an alleged group boycott of electronic trading platforms by the defendant banks. Zelcs

21  Decl. ¶ 5.

22          Korein Tillery has been appointed as class counsel in more than fifty class actions and

23  successfully negotiated some of the country's largest settlements in class actions and complex

24  litigation, including *National Credit Union Administration Residential Mortgage-Backed Securities*

25  *Litig.*, wherein KT, acting as lead counsel in over 18 separate lawsuits, has recovered over $5 billion

26  dollars and negotiated some of the largest RMBS settlements to-date; *Parker v. Sears Roebuck &*

27  *Co.*, KT negotiated a settlement valued at $544.5 million for purchasers of defective stoves; *Sparks*

28  *v. AT&T*, KT represented a nationwide class of over 20 million consumers against AT&T and

Lucent, alleging they deceptively leased telephone sets leading to settlement with $300 million paid to class members and $50 million paid to charities; *Cooper v. IBM Personal Pension Plan*, following summary judgment on liability, KT negotiated a $324 million settlement on behalf of a class of IBM retirees who argued that IBM's pension plan violated ERISA's prohibition against age discrimination, one of the largest ERISA-related settlements on record. Zelcs Decl. ¶ 6.

The following attorneys will serve as KT's key trial team on this litigation:

***George Zelcs:*** George Zelcs focuses his practice on complex commercial litigation including securities, antitrust, consumer fraud, qui tam/whistleblower, and pharmaceutical litigation in state and federal courts. George has conducted bench and jury trials throughout the United States, including *Price, et al vs. Philip Morris USA, Inc*., No. 001-0112 (Third Judicial Circuit, Illinois), a consumer fraud class action that resulted in a $10.1 billion judgment. He frequently serves as lead counsel in complex, multi-party litigations. Currently, George is serving as co-lead counsel in *Litovich v. Bank of America*, and is serving on the Steering Committee for *In re Google Play Store Antitrust Litig*. George represented NCUA in the RMBS litigation that resulted in over $5 billion in recoveries, and also played an instrumental role in developing and litigating *In re: Foreign Exchange Benchmark Rates Antitrust Litig*. George completed his undergraduate degree at Indiana University in 1976 and received his law degree at Chicago-Kent College of Law. He serves on the Chicago-Kent Board of Overseers and as a Trustee for the Chicago-Kent Institute on the Supreme Court of the United States. He has testified before the New York State Assembly regarding financial guaranty insurance and representations and warranties made by mortgage originators in mortgage-backed securities.

***Robert Litan:*** Robert Litan is a nationally renowned attorney and economist with nearly four decades of experience litigating cases, conducting economic research, crafting economic policy, and leading public and private organizations. After graduating from Yale Law School, Robert litigated antitrust, administrative, and international-trade cases in Washington D.C., first with Arnold & Porter and then with Powell, Goldstein, Frazer & Murphy. In 1993, he was appointed Principal Deputy Assistant Attorney General in the DOJ Antitrust Division, where he oversaw civil, non-merger antitrust litigation including the Department's lawsuit against the Ivy League and MIT for

conspiring to fix financial aid awards, the Department's first investigation into Microsoft's anticompetitive practices, and the early stages of the Department's investigation of NASDAQ for fixing dealer spreads. Robert serves on the advisory board of the American Antitrust Institute. He is the author or co-author of 30 books and the editor of 14 others, and has written over 200 articles in journals and national newspapers. Bob has played major roles in KT's antitrust cases, including *In re: Foreign Exchange Benchmark Rates Antitrust Litig.*, *In re Google Play Store Antitrust Litig.*, and *Litovich v. Bank of America*.

**Carol O'Keefe:** Carol O'Keefe is a partner whose story of returning to the legal profession is recounted in the national bestseller, "*That's What She Said: What Men and Women Need to Know About Working Together.*" Carol joined KT as a practicing attorney in 2017, where she focuses on complex litigation, including representing antitrust plaintiffs in foreign exchange, *In re: Foreign Exchange Benchmark Rates Antitrust Litig.*, commodity futures, and digital economy class actions. Carol is currently engaged in representing plaintiffs in a variety of class actions against Google, including claims for the conversion of cellular data on Android mobile devices, copyright infringement on the YouTube platform, *Schneider v. YouTube*, and violation of the antitrust laws relating to the Google Play Store, *In re Google Play Store Antitrust Litig.*

### 3.   Berger Montague

Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger Montague pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for more than fifty years. *See* Cramer Decl. ¶ 4 & Ex. 1. Since its founding by David Berger—one of the "fathers of the class action practice"—Berger Montague has been a leading national advocate for clients and class members in many of the most important complex antitrust cases ever litigated, including, more recently, the largest private antitrust settlement ever achieved (approximately $5.62 billion) in *In re Payment Card*, No. 05-md-1720 (E.D.N.Y.). *Id.*

*The Legal 500* has recommended Berger Montague as a "Top Tier Firm" for representing plaintiffs in antitrust class action litigation and describes the firm as "excellent," "easy to deal with," and "noted for the depth of its team." *Id.* ¶ 7. Beginning in 2018 and each year thereafter, *The*

*National Law Journal* and Law.com have included Berger Montague in its list of "Elite Trial Lawyers" recognizing law firms that "have done exemplary and cutting-edge work on behalf of their clients and are established leaders in the area of plaintiff law." *Id.* Similarly, *Chambers & Partners* has repeatedly named the Firm a leading antitrust law firm for many years. *Id.* Berger Montague has served as lead or co-lead counsel in myriad antitrust class actions alleging price fixing, vertical trade restraints, monopolization and other anticompetitive conduct. *Id.* at Ex. 1.

Managing this case on a day-to-day basis for Berger Montague would be Eric L. Cramer, Caitlin Coslett, Michael C. Dell'Angelo, Patrick F. Madden, and Sophia Rios.

**Eric L. Cramer**, who is the Firm's Chairman and Co-Chair of the Firm's antitrust department, has a national practice in the field of complex litigation, primarily in the area of antitrust class actions. In 2020, Law360 named him a *Titan of the Plaintiffs' Bar*. *Id.* ¶ 5. In 2019, the National Law Journal awarded Mr. Cramer the Keith Givens Visionary Award, which honors an outstanding trial lawyer who has moved the industry forward through his or her work within the legal industry ecosystem, demonstrating excellence in all aspects of work from the client advocacy to peer education and mentoring. *Id.* at Ex. 2. In 2018, *Best Lawyers* named him Philadelphia's antitrust "Lawyer of the Year," and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice. *Id. Chambers & Partners* has repeatedly ranked Mr. Cramer as in the top tier in the field of antitrust nationally; since 2011, *The Legal 500* has selected him as one of the country's top lawyers in the field of complex antitrust litigation. *Id. Chambers & Partners* has observed that Mr. Cramer is "really a tremendous advocate in the courtroom, with a very good mind and presence." *Id.*

Mr. Cramer has prosecuted multiple complex antitrust matters, with a focus on Section 2 monopolization claims. He was co-lead counsel in a Section 2 case relating to the over-the-road fleet payment card market in *Comdata*, which provided for $130 million in cash plus valuable prospective relief that rolled back much of the conduct plaintiffs had challenged. *Id.* ¶ 5. He also litigated as co-lead counsel a monopolization case against Sanofi Pasteur, which settled for $61.5 million (*Castro v. Sanofi Pasteur, Inc.*, No. 11-cv-7178 (D.N.J.)), and another against Abbott Labs, which settled for $54 million after three days of trial before Judge Wilken. *Meijer v. Abbott Labs.*, Nos. 04-cv-1511,

07-cv-5985 (N.D. Cal.).[6]

***Caitlin G. Coslett***, who is a Co-Chair of the firm's Antitrust Department and Shareholder, has a national practice in the field of complex litigation primarily focused on antitrust litigation. Ms. Coslett has been frequently recognized for her efforts. In 2019, for example, Ms. Coslett was named a "Next Generation Lawyer" by the *Legal 500* in the Civil Litigation/Class Actions category. In 2018, the American Antitrust Institute recognized Ms. Coslett for "Outstanding Antitrust Achievement by a Young Lawyer" for her work on behalf of the direct purchasers in *In re Lidoderm Antitrust Litig.*, No. 14-MD-2521 (N.D. Cal.), in which the direct purchaser claims settled for $166 million.

Ms. Coslett has a substantial track record of significant successes for the classes she represents. For example, as co-lead counsel in *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-2503 (D. Mass.), Ms. Coslett achieved a settlement of over $70 million in 2017. *See also In re Skelaxin Antitrust Litig.*, No. 12-md-2343 (E.D. Tenn.) ($73 million settlement in 2014); *In re Domestic Drywall*, No. 13-md-2437 (E.D. Pa.) (Ms. Coslett worked on the lead counsel team achieving $190 million in settlements); *In re Payment Card*, No. 05-md-1720 (E.D.N.Y.) (on team achieving settlement in excess of $5.6 billion). In addition to her litigation work and leading the firm's antitrust group, Ms. Coslett is a member of the firm's Diversity, Equity, and Inclusion Task Force and a member of the LGBT community.

***Michael C. Dell'Angelo***, who is a Managing Shareholder in the antitrust and commercial litigation departments and Co-Chair of the Securities department, has a national practice with a focus on complex litigation. Mr. Dell'Angelo was recognized by Law Dragon as one of the country's 500 leading financial lawyers.

Mr. Dell'Angelo has a substantial track record of achieving outstanding recoveries, totaling well over $2 billion, including the recovery of approximately 100% of class-wide damages after fees

---

[6] Mr. Cramer has also stewarded multiple cartel cases to successful resolution as co-lead counsel, including *In re Dental Supplies Antitrust Litig.*, No. 1:16-cv-696 (E.D.N.Y.) (Cogan, J.) (one of four co-leads) (Section 1 price-fixing case against dental supplies distributors that resulted in an $80 million settlement in 2019) and *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.) (one of three co-leads) (Section 1 price fixing cases against drywall manufacturers that resulted in settlements totaling more than $190 million).

and expenses in cases where he served as lead or co-lead class counsel. Mr. Dell'Angelo has helped to lead multiple cartel cases to successful resolution as lead counsel or class counsel, including *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (E.D. Pa.) (one of three co-leads) (Section 1 price fixing cases against drywall manufacturers that resulted in settlements totaling more than $190 million); *Contant v. Bank of America Corp.*, No. 17-cv-03139-LGS (S.D.N.Y.) (one of four class counsel, no lead appointed) ($23.6 million in settlements in 8 state indirect purchaser antitrust class action); *In re LIBOR*, No. 11-md-2262 (S.D.N.Y.) ($187 million in settlements); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126-JMF (S.D.N.Y.) ($504.5 million in settlements).

**Patrick F. Madden**, who is a Shareholder in the firm's antitrust and consumer protection departments, has a national practice focusing on antitrust and consumer class action litigation and has spearheaded many of the firm's investigations into the conduct of technology companies. He has served in lead counsel litigation teams in numerous successful complex cases including, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (E.D.N.Y.) ($80 million settlement in price-fixing class action); *City of Philadelphia v. Wells Fargo & Co.*, No. 17-cv-2203 (E.D. Pa.) ($10 million settlement in Fair Housing Act discrimination lawsuit); *Citibank Force-Placed Ins. Litig.*, No. 12-cv-820 (N.D.N.Y.) ($122 million settlement in insurance class action); *Bank of America Force-Placed Flood Ins. Litig.*, No. 11-cv-1372 (D. Or.) ($31 million settlement in insurance class action); *JPMorgan Chase Bank, N.A. Force-Placed Flood Ins. Litig.*, No. 12-cv-2179 (N.D. Cal.) ($22 million settlement in insurance class action).

**Sophia Rios**, who is an associate in the firm's antitrust and consumer protection departments, has taken key roles in the firm's antitrust investigations and cases against tech companies concerning, *inter alia*, digital advertising. Since graduating from Stanford Law School in 2015, Ms. Rios has gained experience at all stages of litigation, including class action litigation, and has taken depositions and argued discovery motions in federal court. Ms. Rios was named one of the "Top 40 Under 40 Business Professionals" by the *San Diego Daily Transcript* in 2020, in part for her leadership on diversity in the legal field, and was also recognized with a Pro Bono Publico Award by Casa Cornelia Law Center for her pro bono work assisting refugees seeking asylum in the

1   United States. Ms. Rios serves on the firm's Diversity, Equity, and Inclusion Task Force.

2   **C.    Proposed Interim Co-Lead Publisher Class Counsel Are Knowledgeable**
3   **Regarding the Applicable Law.**

4   As discussed above, Proposed Interim Co-Lead Publisher Class Counsel have decades of

5   experience prosecuting antitrust and other complex class actions. They have extensive knowledge of

6   the substantive and procedural law and have spent decades developing an expertise in applying that

7   knowledge to effectively and efficiently prosecute complex antitrust and other class actions. The

8   results enumerated in Section II(B) speak for themselves: Proposed Interim Co-Lead Publisher Class

9   Counsel could not have obtained those successes without a comprehensive knowledge of class

10  action procedures, the continuing development of antitrust law, management of multiple law firms,

11  and consolidated cases.

12  **D.    Proposed Interim Co-Lead Publisher Class Counsel Are Willing and Able to**
13  **Commit the Substantial Resources Required to Prosecute this Litigation.**

14  Proposed Interim Co-Lead Publisher Class Counsel could not have achieved for their clients

15  and class members the benefits in the matters described in Section II(B) above without the resources

16  necessary to fight toe-to-toe with well-heeled defendants. BSF, Korein Tillery, and Berger

17  Montague are well-established law firms that have the resources and personnel necessary to

18  vigorously pursue a case of this magnitude. All three firms have funded significant contingent

19  litigation for years heading towards expensive trials, and will do so here if necessary. The firms'

20  collective resources are not merely financial, but also include substantial expertise and work product

21  in similar cases. *See supra* Section II(B). Moreover, BSF, Korein Tillery, and Berger Montague are

22  experienced in managing the work and expenses of multiple participating law firms, and have the

23  support of all but one publisher plaintiff in this litigation. *See In re Lenovo Adware Litig.*, No. 15-

24  md-02624, 2015 WL 10890657, at *2 (N.D. Cal. July 27, 2015) ("[W]hile appointment of interim

25  lead counsel is not a popularity contest, the court is persuaded that the extensive support garnered by

26  the *Sterling* movants from the other plaintiffs and firms in these actions demonstrates their ability to

27  work cooperatively with the many plaintiffs and attorneys involved in this case, and to do so in the

28  best interests of the class.").

**E.    A Publisher Class Leadership Committee is Appropriate.**

Publisher Plaintiffs also request that this Court create a Publisher Class Leadership Committee, comprised of Proposed Interim Co-Lead Publisher Class Counsel, Kirby McInerney LLP, and Gustafson Gluek PLLC. Courts in this District have regularly appointed both multi-firm leadership committees and multi-firm interim co-lead counsel in complicated antitrust cases, such as the one here. *E.g.*, *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 584 (N.D. Cal. 2013) (appointing two firms as co-lead counsel for the plaintiffs and two additional firms as members of an Executive Committee); *Meijer, Inc. v. Abbott Labs.*, No. 07-cv-5985, Dkt. 86 (N.D. Cal. June 18, 2008) (appointing three firms as Co-Lead Counsel and Executive Committee including two additional firms). This is true in even in the absence of differences among the putative class members. *In re Qualcomm Antitrust Litig.*, No. 17-md-2773, 2017 WL 2222531, at *1 (N.D. Cal. May 15, 2017) (appointing individuals from three firms to a Plaintiffs' Steering Committee, designating two of them as Co-Lead Plaintiffs' Counsel).

***Gustafson Gluek PPLC:*** Gustafson Gluek PLLC's practice is focused on plaintiff-side complex class action cases with an emphasis on antitrust litigation. *See* Stewart Decl., Ex. 1 (Gustafson Gluek Firm Resume). Since its founding in 2003, Gustafson Gluek has worked with and opposed some of the nation's largest companies and law firms, obtaining multi-million-dollar recoveries and critical injunctive relief for millions of class members. Gustafson Gluek's team in this action includes Dennis Stewart, Dan Nordin, and Ling Wang. Dennis Stewart is a senior member of Gustafson Gluek's San Diego office with decades of antitrust and consumer litigation experience. A former trial attorney with the Antitrust Division of DOJ, Mr. Stewart has extensive trial experience and is currently serving in a leadership role in *In re Payment Card* (E.D.N.Y.) and as court-appointed trial counsel in *In re Contact Lens Antitrust Litig.* (M.D. Fla). Dan Nordin is a newer partner of Gustafson Gluek and is currently or has been involved in the representation of plaintiffs and classes in numerous antitrust class action cases, including *In re Packaged Seafood Prods. Antitrust Litig.* (S.D. Cal.) (representing consumer indirect purchaser plaintiffs); *In re Blue Cross Blue Shield Antitrust Litig.* (N.D. Ala.); *The Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.* (E.D. Mich.); and *In re Dealer Mgmt. Sys. Antitrust Litig.* (N.D. Ill.). Ling Wang is an

associate of Gustafson Gluek and is currently or has been involved in the representation of plaintiffs and classes in many antitrust cases, including *In re Broiler Chicken Antitrust Litig.* (N.D. Ill.).

**Kirby McInerney LLP:** Kirby McInerney LLP ("Kirby") will bring case-specific antitrust trial experience and diversity to the Leadership Team. As its resume indicates, Kirby and Bob Gralewski have actually tried monopoly class actions in the technology sector resulting in hundreds of millions of dollars of value for businesses. *See* Gralewski Decl., Ex. 1. Similarly, Kirby's extensive experience in antitrust cases concerning financial market manipulation will be particularly helpful to understanding Google's anticompetitive conduct involving Ad Exchanges, auctions, and bidding. Mr. Gralewski (who manages Kirby's California office), Karen Lerner (an experienced litigator specializing in financial markets antitrust cases), and Samantha Greenberg (a second-year lawyer in the firm's antitrust department) will be primarily responsible for Kirby's effort.

## III.  A Plaintiffs' Discovery Committee is Appropriate for Coordinating Discovery Efforts Between the Publisher and Advertiser Plaintiffs.

At the recent conference, the Court indicated that it would like to have a committee consisting of counsel for both publishers and advertisers to coordinate discovery on behalf of these different types of plaintiffs. Feb. 4, 2020 Hr'g Tr. 28:23–29:1. Proposed Interim Co-Lead Publisher Class Counsel commits to working with counsel for the advertiser class to coordinate discovery efforts between the two classes, which will promote efficiency and reduce the risk of duplicative litigation. To that end, Proposed Interim Co-Lead Publisher Class Counsel has begun discussions with Dena Sharp of Girard Sharp LLP and Tina Wolfson of Adhoot & Wolfson, PC, counsel in Digital Advertising, regarding the formation of a discovery coordination committee across the publisher and advertiser cases.

## CONCLUSION

For the foregoing reasons, Publisher Plaintiffs respectfully request that, pursuant to Rule 23(g)(3), this Court appoint Boies Schiller Flexner LLP, Korein Tillery LLC, and Berger Montague PC as Proposed Interim Co-Lead Publisher Class Counsel, and also Kirby McInerney LLP and Gustafson Gluek PLLC as members of Publisher Plaintiffs' Leadership Committee.

1    Dated: February 25, 2021                    Respectfully submitted,

2                                                BOIES SCHILLER FLEXNER LLP

3                                                By: */s/ Philip C. Korologos*

4                                                Philip C. Korologos*
                                                 pkorologos@bsfllp.com

5                                                Brianna S. Hills***
                                                 bhills@bsfllp.com

6                                                BOIES SCHILLER FLEXNER LLP

7                                                55 Hudson Yards, 20th Floor
                                                 New York, NY 10001

8                                                Tel.: (212) 446-2300 / Fax: (212) 446-2350

9                                                David Boies*

10                                               dboies@bsfllp.com
                                                 BOIES SCHILLER FLEXNER LLP

11                                               333 Main Street
                                                 Armonk, NY 10504

12                                               Tel.: (914) 749-8200 / Fax: (914) 749-8300

13                                               Abby L. Dennis*

14                                               adennis@bsfllp.com
                                                 Jesse Panuccio*

15                                               jpanuccio@bsfllp.com
                                                 BOIES SCHILLER FLEXNER LLP

16                                               1401 New York Avenue, NW
                                                 Washington, DC 20005

17                                               Tel.: (202) 895-7580 / Fax: (202) 237-6131

18                                               Mark C. Mao (236165)

19                                               mmao@bsfllp.com
                                                 Sean P. Rodriguez (262437)

20                                               srodriguez@bsfllp.com
                                                 BOIES SCHILLER FLEXNER LLP

21                                               44 Montgomery Street, 41st Floor

22                                               San Francisco, CA 94104
                                                 Tel.: (415) 293-6820 / Fax: (415) 293-6899

23                                               Sabria A. McElroy*

24                                               smcelroy@bsfllp.com
                                                 BOIES SCHILLER FLEXNER LLP

25                                               401 E. Las Olas Blvd., Suite 1200
                                                 Fort Lauderdale, FL 33301

26                                               Tel.: (954) 377 4216 / Fax: (954) 356-0022

27                                               George A. Zelcs*

28                                               gzelcs@koreintillery.com

1

Robert E. Litan*
rlitan@koreintillery.com

2

Randall P. Ewing*
rewing@koreintillery.com

3

Jonathon D. Byrer*
jbyrer@koreintillery.com

4

Ryan A. Cortazar*
rcortazar@koreintillery.com

5

KOREIN TILLERY LLC

6

205 North Michigan Avenue, Suite 1950
Chicago, IL 60601

7

Tel.: (312) 641-9750 / Fax: (312) 641-9751

8

Stephen M. Tillery*
stillery@koreintillery.com

9

Michael E. Klenov (277028)

10

mklenov@koreintillery.com
Carol L. O'Keefe*

11

cokeefe@koreintillery.com
Jamie Boyer*

12

jboyer@koreintillery.com

13

KOREIN TILLERY LLC
505 North 7th Street, Suite 3600

14

St. Louis, MO 63101
Tel.: (314) 241-4844 / Fax: (314) 241-3525

15

16

*Counsel for Genius Media Group, Inc., The Nation Company, L.P., and The Progressive, Inc.*

17

18

Dated: February 25, 2021          BERGER MONTAGUE PC

19

By: */s/ Michael C. Dell'Angelo*

20

Eric L. Cramer*
ecramer@bm.net

21

Michael C. Dell'Angelo*

22

mdellangelo@bm.net
Caitlin G. Coslett*

23

ccoslett@bm.net
Patrick F. Madden*

24

pmadden@bm.net
Michaela Wallin*

25

mwallin@bm.net

26

BERGER MONTAGUE PC
1818 Market St., Suite 3600

27

Philadelphia, PA 19103
Tel.: (215) 875-3000 / Fax: (215) 875-4604

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sophia M. Rios (305801)
srios@bm.net
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel.: (619) 489-0300 / Fax: (215) 875-4604

Daniel J. Walker*
dwalker@bm.net
BERGER MONTAGUE PC
2001 Pennsylvania Ave., NW
Suite 300
Washington DC 20006
Tel.: (202) 559-9745

Michael K. Yarnoff***
myarnoff@kehoelawfirm.com
KEHOE LAW FIRM, P.C.
Two Penn Center Plaza
1500 JFK Blvd., Suite 1020
Philadelphia, PA 19102
Telephone: (215) 792-6676

*Counsel for Sterling International Consulting
Group*

Dated: February 25, 2021

ROBBINS GELLER RUDMAN
      & DOWD LLP

By: */s/ David W. Mitchell*
DAVID W. MITCHELL
davidm@rgrdlaw.com
STEVEN M. JODLOWSKI
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Tel.: (619) 231-1058 / Fax: (619) 231-7423

PAUL J. GELLER***
STUART A. DAVIDSON***
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel.: (561) 750-3000 / Fax: (561) 750-3364

John C. Herman*
(GA Bar No. 348370)
jherman@hermanjones.com

Serina M. Vash***
(NJ Bar No. 041142009)
svash@hermanjones.com
HERMAN JONES LLP
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Tel.: (404) 504-6500 / Fax: (404) 504-6501

*Counsel for Plaintiff Sweepstakes Today, LLC*

Dated: February 25, 2021          KIRBY McINERNEY LLP

By: /s/ Robert Gralewski
Robert J. Gralewski, Jr. (196410)
bgralewski@kmllp.com
Samantha L. Greenberg (327224)
sgreenberg@kmllp.com
KIRBY McINERNEY LLP
600 B Street, Suite 2110
San Diego, CA 92101
Telephone: (619) 784-1442

Karen Lerner**
klerner@kmllp.com
KIRBY McINERNEY LLP
250 Park Avenue, Suite 820
New York, New York 10177\
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Counsel for JLaSalle Enterprises LLC*

Dated: February 25, 2021          GUSTAFSON GLUEK PLLC

By: /s/ Dennis Stewart
Dennis Stewart (99152)
dstewart@gustafsongluek.com
GUSTAFSON GLUEK PLLC
600 B Street
17th Floor
San Diego, CA 92101
Telephone: (619) 595-3299

Daniel E. Gustafson*
dgustafson@gustafsongluek.com
Daniel C. Hedlund

dhedlund@gustafsongluek.com
Daniel J. Nordin
dnordin@gustafsongluek.com
Ling S. Wang
lwang@gustafsongluek.com
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Marc H. Edelson, Esq.
medelson@edelson-law.com
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Tel.: (215) 867-2399 / Fax: (267) 685-0676

Joshua H. Grabar
jgrabar@grabarlaw.com
GRABAR LAW OFFICE
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (267) 507-6085 / Fax: (267) 507-6048

E. Powell Miller
epm@millerlawpc.com
Sharon S. Almonrode*
ssa@millerlawpc.com
Emily E. Hughes
eeh@millerlawpc.com
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200 / Fax: (248) 652-2852

Simon Bahne Paris, Esquire
sparis@smbb.com
Patrick Howard, Esquire
phoward@smbb.com
SALTZ, MONGELUZZI & BENDESKY, P.C.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel.: (215) 496-8282 / Fax: (215) 496-0999

Kenneth A. Wexler
kaw@wexlerwallace.com

1

2

3

Kara A. Elgersma
kae@wexlerwallace.com
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603

4

5

6

7

8

9

Dianne M. Nast
dnast@nastlaw.com
Daniel N. Gallucci
dgallucci@nastlaw.com
Joseph N. Roda
jnroda@nastlaw.com
NASTLAWLLC
1101 Market Street, Suite 2801
Philadelphia, PA 19106

10

*Counsel for Mikula Web Solutions, Inc.*

11

12

13

*\*Pro Hac Vice*
*\*\*Pro Hac Vice* app. pending
*\*\*\*Pro Hac Vice* app. forthcoming

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28