Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Scott M. Grzenczyk (State Bar No. 279309)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com

*Attorneys for Plaintiffs Mark J. Astarita,*
*Hanson Law Firm, PC, and Surefreight*
*Global LLC d/b/a Prana Pets*

[Additional counsel on signature block]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 5:20-cv-03556-BLF<br><br>**APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL AND APPOINTMENT OF JOHN RADICE AND ARCHANA TAMOSHUNAS TO A STEERING COMMITTEE FOR THE ADVERTISER PLAINTIFFS**<br><br>Hon. Beth Labson Freeman |

1

2

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    RELEVANT BACKGROUND ................................................................................... 2

III.   ARGUMENT.............................................................................................................. 4

       A.    Sound Case Management Favors Designating Girard Sharp as Lead Counsel for
             Publisher and Advertiser Plaintiffs.................................................................... 4

       B.    Girard Sharp Is Best Able to Represent the Interests of Class Members. ......................... 6

IV.    CONCLUSION........................................................................................................... 11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL AND
APPOINTMENT OF JOHN RADICE AND ARCHANA TAMOSHUNAS TO A STEERING COMMITTEE
FOR THE ADVERTISER PLAINTIFFS
CASE NO. 5:20-cv-03556-BLF

# TABLE OF AUTHORITIES

**Cases**

*Billitteri v. Securities America, Inc.*
  2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) .......................................................................... 11

*In re Pressure Sensitive Labelstock Antitrust Litig.*
  2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) ........................................................................... 5

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*
  335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................................. 8

*In re Treasury Sec. Auction Antitrust Litig.*
  2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017) ........................................................................ 6

*Ortiz v. Fibreboard Corp.*
  527 U.S. 815 (1999) ................................................................................................................. 5

*Parkinson v. Hyundai Motor Am.*
  2006 WL 2289801 (C.D. Cal. Aug. 7, 2006) ........................................................................... 7

*Realcomp II, Ltd. v. FTC*
  635 F.3d 815 (6th Cir. 2011) ................................................................................................... 5

*Sundquist v. Nebraska*
  2015 WL 6118515 (D. Neb. Oct. 16, 2015) ............................................................................. 6

*Walker v. Discover Fin. Servs.*
  2011 WL 2160889 (N.D. Ill. May 26, 2011) ........................................................................... 7

**Rules**

Fed. R. Civ. P. 23(g) ..................................................................................................................... 7

**Other Authorities**

Catherine R. Borden, *Managing Related Proposed Class Actions in Multidistrict Litigation*
  (Fed. Jud. Ctr. 2018) ............................................................................................................ 5, 6

*Manual for Complex Litigation, Fourth* § 10.221 ..................................................................... 6-7

*Manual for Complex Litigation, Fourth* § 21.11 ......................................................................... 4

*Manual for Complex Litigation, Fourth* § 21.27 ....................................................................... 6-7

*Newberg on Class Actions* § 20:56 .............................................................................................. 7

Samuel Issacharoff, *Governance and Legitimacy in the Law of Class Actions*
  1999 Sup. Ct. Rev. 337 (1999) ................................................................................................ 4

## I.     INTRODUCTION

This case centers on Google's monopolization of display advertising services, which are used by both advertisers, who pay Google to place their advertisements on third-party websites, and publishers who are paid by Google in exchange for making ad space available on their sites. Both sets of plaintiffs allege that Google's monopolization of these intermediary brokering services has resulted in noncompetitive pricing and injury.

Girard Sharp LLP represents advertisers (Hanson Law Firm, PC and Surefreight Global LLC d/b/a Prana Pets) and a publisher (Mark J. Astarita), who have aligned interests in demonstrating Google's monopoly rents. The firm investigated and filed the first case on behalf of publishers and advertisers in May 2020, months before any regulatory actions or competing publisher cases, and the firm has the skills, resources, and creativity to lead the litigation. Girard Sharp not only originated but has led this litigation in all respects to date, including by coordinating early case management activities on behalf of all plaintiffs, conferring with Google and other plaintiffs' counsel, preparing a discovery plan, opposing Google's motion to dismiss, and opposing an MDL petition. The firm is committed to maximizing recovery for all Google display customers—both advertisers and publishers—and is prepared to work collaboratively with the capable counsel who filed follow-on cases. While the Court's Case Management Order contemplates applications for interim counsel for publisher plaintiffs, we respectfully suggest that simultaneously appointing interim counsel for advertiser plaintiffs will clarify lines of authority and promote balance and cooperation between the two groups. To ensure the effective and efficient prosecution of all claims, Girard Sharp respectfully asks the Court to appoint the firm (1) as interim lead counsel for the advertiser plaintiffs, supported by a steering committee of advertiser counsel John Radice of the Radice Law Firm, PC and Archana Tamoshunas of Taus, Cebulash & Landau, LLP, and (2) as a member of the interim leadership team for the publisher plaintiffs, with the firm playing a coordinating function across the claims.

The publisher and advertiser claims arise in connected markets and are intertwined, alleging overlapping violations such as acquisitions of competitors and suppression of transaction-related data. Both publishers and advertisers will seek to prove Google's antitrust violations and to return *all* damages it unlawfully retained as intermediary. These circumstances call for centralized and coordinated

leadership of the case against Google, rather than balkanization, with the understanding that separate representation for publishers and advertisers is an option should it later become necessary or advisable and that revisiting leadership appointments may also be sensible as the litigation unfolds.

We respectfully submit that appointing Girard Sharp to the leadership for both groups, and Mr. Radice and Ms. Tamoshunas to a steering committee for advertisers, will ensure alignment on key merits issues and efficient coordination of discovery and other pretrial matters.

## II.      RELEVANT BACKGROUND

**Procedural History.** Girard Sharp originated this litigation in May 2020 with a class complaint against Google for monopolizing the intermediary services that connect advertisers and publishers of display advertisements. ECF 1. Plaintiffs proposed to represent a class of "all persons and entities in the United States that, from January 1, 2016 to the present, used Google's digital advertising services to (1) place an ad on a website operated by another entity (advertisers) or (2) place an ad from a third party on their own website (publishers)." *Id*. ¶ 87; *see also id.* ¶¶ 48-52 (describing how Google acted to monopolize the publisher ad server and ad exchange markets).

The Court deemed a second case, filed June 22, 2020, related to the first-filed case (ECF 24) and entered the parties' stipulation consolidating those cases and setting a schedule for the filing of a consolidated complaint and briefing on Google's motion to dismiss. ECF 26. The Court held a case management conference on September 24. ECF 32, 36. Plaintiffs filed a first amended consolidated complaint on December 4 (ECF 52), which Google moved to dismiss on January 15 (ECF 66).

Related cases on behalf of publishers were filed against Google starting in December 2020. The State of Texas, along with nine other states, filed an enforcement action in the Eastern District of Texas that directly overlaps with plaintiffs' allegations here. *See* Complaint, *The State of Texas v. Google LLC*, No. 4:20-cv-00957-SDJ (E.D. Tex. filed Dec. 16, 2020), ECF 1. Ad publishers, including plaintiff Astarita, filed additional class actions in this district: *Sweepstakes Today*, No. 20-cv-08984-HSG (filed Dec. 15, 2020); *Genius Media Group*, No. 20-cv-09092-DMR (filed Dec. 16, 2020); *Sterling International*, No. 5:20-cv-09321-JCS (filed Dec. 23, 2020); *Astarita*, No. 21-cv-00022-DMR (filed Jan. 4, 2020); and *JLaSalle Enterprises*, No. 5:21-cv-00748-NMC (N.D. Cal. filed Jan. 29, 2020).

On January 8, Sweepstakes Today moved Judge Gilliam to consolidate its action with *Genius*

2

*Media* and *Sterling*, contending those publisher actions "are different from and therefore unrelated to" this litigation. *Sweepstakes Today*, ECF 24 at 6. But in orders issued January 21 and 22, this Court found those actions related (ECF 68, 69), and it found *JLaSalle* related on February 9 (ECF 90).

On a separate front, Girard Sharp appeared before the Judicial Panel on Multidistrict Litigation to oppose a petition to centralize this litigation with cases alleging Google's monopolization of another digital market, for mobile apps. *See In re Google Antitrust Litig.*, No. MDL 2981 (J.P.M.L.), ECF 34 (brief in opposition), ECF 87 (argument transcript). On February 5, the Panel centralized only the mobile-app cases, agreeing that those claims arise in a separate market and involve different classes and alleged anticompetitive conduct. *Id.*, ECF 89 at 2.

At the February 4 case management conference in this case, the Court stated its preference at this time to resolve the pleadings on two separate complaints, noting that the Court may ultimately consolidate the claims in a single action. *See* 2/4/21 Hr'g Tr. at 9:14-16, 27:17-18. The Court also instructed the parties to proceed with briefing Google's pending motion to dismiss "as to the advertisers[.]" *Id.* at 28:21-22.

Another monopoly case against Google, this one brought on behalf of a putative class of advertisers on Facebook, was filed in early February. *Negron*, No. 3:21-cv-00801-HSG (N.D. Cal. filed Feb. 1, 2021). An unopposed motion to relate that case is pending. ECF 88, 94.

On February 15, consistent with the Court's guidance, Plaintiffs opposed Google's arguments for dismissing the advertisers' claims. ECF 93. Google's reply is due on March 17, and the Court will hear the motion on April 8. ECF 47.

**Leadership Discussions.** On February 9, the Court issued its Case Management Order No. 1 permitting applications for appointment of interim counsel for the publisher plaintiffs. ECF 89. Both before the February 4 conference and after the Court's Order, our firm reached out to and convened discussions with plaintiffs' counsel in the other publisher cases to propose a joint leadership team for the publisher plaintiffs. The other publisher counsel declined, however, citing the purported "tension" between the plaintiff groups—as referenced in their case management conference statement (ECF 72 at 2:7), which contrasted with Girard Sharp's statement (ECF 73)—and indicating that they would propose a leadership structure for the publishers comprising five firms, with three in co-lead roles and two on a

3

steering committee.

Separately, Girard Sharp invited other advertiser counsel to join a proposed steering committee for the advertiser plaintiffs. Mr. Radice and Ms. Tamoshunas agreed to serve in that capacity (or whatever capacity the Court deems appropriate). Counsel at Ahdoot Wolfson, PC, which represents advertiser plaintiff Vitor Lindo, declined the invitation.

## III.   ARGUMENT

### A.   Sound Case Management Favors Designating Girard Sharp as Lead Counsel for Publisher and Advertiser Plaintiffs.

Girard Sharp respectfully requests that the Court appoint the firm as interim lead counsel for the advertiser plaintiffs, supported by a small steering committee, and as one of the interim lead counsel group for the publisher plaintiffs, with the understanding that the firm will play a coordinating function across the cases as well. Our proposal is also subject to reevaluation of the leadership structure as the pleadings are resolved and these complex actions develop. At least four points support our request.

*First*, while the Court's CMO No. 1 refers only to leadership applications for the proposed publisher class, we respectfully submit that the Court should also appoint Girard Sharp as lead interim counsel for the advertisers, a role the firm is well equipped to fill for the reasons discussed in Section B below. Doing so will avoid any asymmetry and ensure that the advertisers speak with one voice, "clarif[ying] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation, Fourth* § 21.11. Appointing the firm also will eliminate any risk of the defendant attempting to play potential rival advertiser counsel against one another to the possible detriment of the class. *See* Samuel Issacharoff, *Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337, 388 (1999). The recent filing of the *Negron* case by advertisers, and the potential for additional or conflicting filings, underscores the need to clarify leadership for the advertisers. (Girard Sharp believes the claims in *Negron* are related and need not be separately represented at this point, as that complaint alleges overlapping violations and the class it proposes includes members of the advertiser subclass defined in the FAC who placed display ads on Facebook through Google). Establishing clear interim leadership for the advertisers will ensure that the

4

prosecution of their claims is led by counsel with the authority to make strategic decisions and carry them out. Likewise, appointing lead counsel for both sets of plaintiffs now will avoid duplication and inefficiency for all parties and the Court and potential prejudice to class members.

*Second*, sound case management also favors including Girard Sharp among the interim lead counsel group for the publishers. Prosecuting the publisher and advertiser claims will require common discovery into Google's relevant business practices and related motion practice. As the only firm that represents both publisher and advertiser plaintiffs, Girard Sharp is prepared to continue coordinating the litigation, ensuring its non-duplicative and effective prosecution for the benefit of all plaintiffs. *See, e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666, at *23 (M.D. Pa. Nov. 19, 2007) (court-appointed interim co-lead counsel pursuing Sherman Act claims "coordinated efforts to obtain, review, and analyze the voluminous discovery[,]" "hired experts and consultants[,]" and "briefed and argued motions").

Further, the aligned interests of the publishers and advertisers in proving Google's violation and maximizing the total recovery call for at least some degree of unified leadership. All complaints allege the same or similar anticompetitive conduct, and attempts to separate out conduct affecting publishers may be artificial or unnecessary to the extent Google's increasing power on each side of the market enhanced its power on both sides, as the reason publishers and advertisers use Google's services is to connect them with participants on the other side. *See Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 828-29 (6th Cir. 2011) (discussing harmful "network effects" from monopolization of real-estate listings database on home buyers and home sellers). This market reality also distinguishes the posture here from the direct vs. indirect purchaser situation warranting separate representation in most antitrust cases against price-fixing cartels. And this case does not present a past vs. future harm conflict as in cases like *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). Particularly given the differing views of Mr. Astarita and other publisher plaintiffs on the relatedness of the publisher and advertiser sides of the market, the Court should allow Girard Sharp a seat at the table among publishers' counsel to ensure that the interests of our publisher client are appropriately represented. *Compare* ECF 64-1 (Astarita relation stipulation), *with* ECF 59 (Sweepstakes opposition), 60 (Genius Media opposition), *and* 63 (Sterling opposition).

*Third*, that the advertiser and publisher cases are initially proceeding on separate tracks does not

5

1    support appointing totally separate counsel for the two cases; instead, "cases, classes, and counsel may

2    all be organized differently" and "[o]ften only one team of attorneys is necessary, even when the cases

3    have been separated into groups[.]" Catherine R. Borden, *Managing Related Proposed Class Actions in*

4    *Multidistrict Litigation*, at 7 (Fed. Jud. Ctr. 2018). Nor does the possibility of future damage allocation

5    issues require separate representation at this time. *See, e.g.*, *Sundquist v. Nebraska*, No. 8:14CV220,

6    2015 WL 6118515, at *2 (D. Neb. Oct. 16, 2015) (holding that "[s]eparate representation is not required

7    until any 'potential conflict matures into an actual material conflict.'") (citation omitted). Claims of

8    "tension" between advertisers and publishers in relation to a hypothetical pot of damages, or suggestions

9    of damage theories one group or the other may eventually posit, ignore that in the first instance the

10   plaintiffs' interests are entirely aligned in maximizing the amount of total damages. For this reason, the

11   various plaintiffs would be best served by working together to *increase* the damages recoverable from

12   Google, before manufacturing potential conflicts as to how those damages may be allocated. *E.g.*, FAC

13   ¶ 210 (alleging that, as a result of Google's monopolization of display advertising services, "both

14   advertisers and publishers lost money."); *see also id.* ¶¶ 3, 129, 208, 211. Siloed representation, in

15   contrast, risks putting the cart before the horse and prejudicing all class members by pitting the groups

16   against each other or giving the defendant (unnecessary) opportunities to do so. *See, e.g.*, *In re Treasury*

17   *Sec. Auction Antitrust Litig.*, No. 15 MD 2673 (PGG), 2017 WL 10991411, at *3 (S.D.N.Y. Aug. 23,

18   2017) (declining to appoint separate counsel for futures-only investors with unique claims and

19   explaining that "[a]t this stage of the litigation, any potential conflict is no more than hypothetical.").

20       **Fourth**, the Court may prescribe a "sunset" procedure allowing counsel to reapply for leadership

21   positions and the Court to revisit appointments as the case continues to develop. *See* Borden, *Managing*

22   *Related Proposed Class Actions in Multidistrict Litigation, supra*, at 8 (noting that "[s]ome transferee

23   judges require lead attorneys to seek reappointment on a regular basis (e.g., annually)."). This Court

24   indicated that it may consolidate the advertiser and later-filed publisher cases once the pleadings are

25   settled (2/4/21 Hr'g Tr. at 9:14-16), which may also be an appropriate time to revisit leadership for

26   purposes of a consolidated action.

27       **B.    Girard Sharp Is Best Able to Represent the Interests of Class Members.**

28       The "most important" goals in appointing counsel to a leadership position are efficiency and

6

ensuring that the interests of the class are well served. *Manual for Complex Litigation, Fourth* §§ 10.221, 21.27. In assessing which applicant is "best able to represent the interests of the class" on an interim basis, Fed. R. Civ. P. 23(g)(2)-(3), the court considers: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See, e.g.*, *Parkinson v. Hyundai Motor Am.*, No. CV 06-2553 AHS (MLGx), 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) (applying Fed. R. Civ. P. 23(g)(1)). While acknowledging the competence and experience of the other lawyers representing publisher plaintiffs, Girard Sharp respectfully submits that each of these Rule 23(g) factors supports appointing the firm to represent the publishers in a leadership capacity the Court deems appropriate, and to serve as interim lead counsel for the proposed advertiser class.

**The work done by counsel.** Girard Sharp performed extensive work investigating the facts, economic conditions across the display advertising market as it evolved over time, Google's terms and conditions, pertinent government activity and investigations, and the potential legal claims and theories. The firm's attorneys interviewed Plaintiffs and other display advertising customers of Google and filed the first complaint in this controversy. *See Newberg on Class Actions* § 20:56 (noting that "in cases developed entirely by private plaintiffs, the counsel who filed the first complaint may have done the most investigative work to date in the case, making her particularly qualified to serve as class counsel under Rule 23(g)(1).") (citing Antitrust Class Actions Handbook 131 n.120 (ABA Section of Antitrust Law ed., 2010)); *Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) (appointing as lead counsel, among various adequate firms, those who "were the first to file" and therefore were "involved in this litigation for the longest time period").

Girard Sharp sued Google on behalf of publishers before the DOJ or state attorneys general filed enforcement actions and half a year before any other publisher plaintiff brought monopoly claims. Girard Sharp's original complaint details Google's anticompetitive activity in relation to publishers and defines the class and relevant market to include publishers and their transactions with Google. *E.g.*, ECF 1, ¶¶ 48-52, 65, 87. Girard Sharp has led the litigation since instituting it, including by:

- Drafting early case management documents, including a protective order, an ESI protocol,

7

1    and an expert witness protocol, and negotiating the provisions with Google;

2    • Participating in case management conferences with the Court;

3    • Conferring regularly with Google on case management and progress;

4    • Developing a discovery plan and opposing Google's motion to stay discovery (ECF 43);

5    • Preparing early Rule 34 requests for documents Google previously produced to the Texas
6      Attorney General;

7    • Consulting with industry participants and antitrust economists;

8    • Continuing to investigate and develop the facts, and amending the class complaint;

9    • Organizing and leading conferences among all plaintiffs' counsel, and among all
10     plaintiffs' counsel and Google's counsel;

11   • Opposing the MDL petition to combine this case with disparate mobile-app cases; and

12   • Opposing Google's motion to dismiss.

13   **Counsel's experience and knowledge.** Girard Sharp is a national plaintiffs' firm that has

14   successfully led many complex antitrust class actions and obtained favorable results for our clients and

15   the classes they represent. *See* https://www.girardsharp.com/. The firm served as co-lead counsel in *In re*

16   *Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO (N.D. Cal.) (precedent-setting $104.75 million

17   settlement on the eve of trial on behalf of a certified class of end-purchasers of prescription drugs), and

18   as liaison counsel in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) (more

19   than $400 million in recoveries), and currently serves as co-lead counsel in *In re Restasis (Cyclosporine*

20   *Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 40 (E.D.N.Y. 2020) (order granting class

21   certification and finding Girard Sharp and its co-counsel "extremely qualified and able to represent the

22   certified class"). Girard Sharp was also recently appointed to serve as interim co-lead class counsel in *In*

23   *re California Gasoline Spot Market Antitrust Litigation*, No. 3:20-cv-03131-JSC (N.D. Cal.), where

24   plaintiffs allege Californians overpaid at the pump because oil companies engaged in manipulative spot-

25   market trading to maintain high prices after a refinery explosion caused a supply disruption. The firm's

26   attorneys have closely coordinated discovery in the *Gasoline* class action with a parallel enforcement

27   action brought by the California Attorney General's Office, a useful model for coordination here with

28   the related Texas enforcement action.

1     In another case involving parallel government enforcement activity—*In re Generic*

2  *Pharmaceuticals Pricing Antitrust Litigation* (E.D. Pa.)—Girard Sharp serves on the end-payer

3  plaintiffs' steering committee and plays a key role in managing discovery from over 30 defendants. The

4  firm likewise has participated in discovery, briefing, and key pretrial work in *In re Capacitors Antitrust*

5  *Litigation* (N.D. Cal.), *In re Transpacific Passenger Air Transportation Antitrust Litigation* (N.D. Cal.),

6  and *In re Nexium Antitrust Litigation* (D. Mass.). Of further relevance, Girard Sharp co-led the

7  prosecution of two recent cases against Google in this district that resolved favorably for consumer

8  classes, *Weeks v. Google LLC*, No. 5:18-cv-00801-NC, and *In re Nexus 6P Products Liability Litigation*,

9  No. 5:17-cv-02185-BLF. Our varied experience in prosecuting complex antitrust and unfair competition

10 cases positions us well to lead this matter.

11     If appointed, Girard Sharp's team will be led by name partner **Dena Sharp**, who previously

12 served as co-lead counsel in the *Lidoderm* antitrust litigation, and currently serves as co-lead counsel in

13 the *Gasoline* and *Restasis* antitrust matters, among others. Ms. Sharp is a member of the American Law

14 Institute and a current co-chair of the Lawyer Representatives to the Ninth Circuit Judicial Conference

15 for the Northern District of California. The National Law Journal has for two consecutive years

16 recognized Ms. Sharp as one of a handful of "Elite Women of the Plaintiffs' Bar" nationally who "have

17 consistently excelled in high-stakes matters on behalf of plaintiffs over the course of their careers." Ms.

18 Sharp will be supported by skilled and dedicated lawyers at the firm.

19     An experienced advocate, **Jordan Elias** took the lead in briefing the appeal in *In re Cipro Cases*

20 *I & II*, 61 Cal. 4th 116 (2015), where the California Supreme Court reversed the dismissal of claims

21 arising from a pharmaceutical "pay-for-delay" agreement. Mr. Elias has also represented plaintiffs in

22 many antitrust class actions in this district, including the *TFT-LCD* and *Capacitors* matters noted above.

23 Mr. Elias's scholarship is geared toward the responsible development of the law; he authored the chapter

24 on standing, causation and remedies in California State Antitrust and Unfair Competition Law (Matthew

25 Bender 2019), has published several law review articles on procedural and substantive topics, and wrote

26 the Supreme Court chapter in the American Bar Association's *Survey of Federal Class Action Law*.

27     **Scott Grzencyzk** also focuses his practice on antitrust litigation, including the *Restasis* and

28 *Generic Pharmaceuticals* cases. He has been instrumental in achieving precedent-setting recoveries like

APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL AND
APPOINTMENT OF JOHN RADICE AND ARCHANA TAMOSHUNAS TO A STEERING COMMITTEE
FOR THE ADVERTISER PLAINTIFFS
CASE NO. 5:20-cv-03556-BLF

the $104.75 million settlement in the *Lidoderm* case, where he briefed class certification, summary judgment, and other pretrial matters. In 2020 the American Antitrust Institute recognized Mr. Grzenczyk for "Outstanding Antitrust Litigation Achievement by a Young Lawyer."

Girard Sharp proposes to lead the prosecution of the advertiser claims with support from an advertiser steering committee of two highly accomplished antitrust lawyers, each of whom has already meaningfully contributed to the representation of the advertiser plaintiffs.

**John Radice** founded the Radice Law Firm, *see* https://radicelawfirm.com/, in 2012 to prosecute complex antitrust cases like this one. Mr. Radice has achieved noteworthy results for plaintiffs in class litigations across the country, such as: *In re Flonase Direct Purchaser Antitrust Litigation*, No. 08-3149 (E.D. Pa.) ($150 million result in case alleging sham petitioning); *In re Loestrin FE Antitrust Litigation*, No. 13-md-2472 (D.R.I.) ($120 million settlement for direct purchaser class in this case alleging an improper payoff to delay generic entry of a birth control pill); and *In re Solodyn Antitrust Litigation*, No. 14-md-2503 (D. Mass.) ($74 million in settlements with four pharmaceutical companies on behalf of direct purchasers alleging reverse payments and sham litigation to delay generic entry). Mr. Radice recently was appointed co-lead counsel in *Simon and Simon, PC d/b/a City Smiles & VIP Dental Spas v. Align Technology, Inc.*, No. 20-cv-03745 (N.D. Cal.), and in *In re Inclusive Access Course Materials Antitrust Litigation*, No. 20-md-2946 (S.D.N.Y.).

**Archana Tamoshunas** of Taus, Cebulash & Landau, LLP, *see* http://tcllaw.com/archana-tamoshunas-partner/, is a seasoned litigator with extensive experience representing plaintiffs in antitrust class actions. For example, she represented direct purchasers on successful Sherman Act claims in *Solodyn* and *Lidoderm*, in which her firm was appointed to the Executive Committee, and she was personally involved in managing and preparing the Lidoderm case for trial. Ms. Tamoshunas and her firm represent purchasers and consumers in numerous class actions throughout the country, including cases in which the firm serves as lead or co-lead counsel or as an executive committee member. She helped attain significant results for class members in *In re Skelaxin (Metaxalone) Antitrust Litigation* (E.D. Tenn.) ($73 million settlement), *In re Prandin Direct Purchaser Antitrust Litigation* (E.D. Mich.) (Executive Committee) ($19 million settlement), and *Mylan Pharmaceuticals v. Warner Chilcott* (E.D. Pa.) ($15 million settlement), among other cases.

10

1

2

3

4

5

6

7

8

9

10

11

    **The resources counsel will commit.** Girard Sharp has the resources to prosecute this litigation and is committed to bringing it to a favorable result. We have an established record of devoting whatever time and resources are necessary to effectively litigate the case, no matter how challenging. *See, e.g.*, *Skold v. Intel Corp.*, No. 1-05-cv-039231 (Cal. Super. Ct., Santa Clara Cty.) (settled on first day of trial after a decade of litigation) (Girard Sharp "invested an incredible amount of time and costs" and "earned their fees"); *Billitteri v. Securities America, Inc.*, No. 3:09-CV-01568-F, 2011 WL 3585983, at *7-8 (N.D. Tex. Aug. 4, 2011) (Girard Sharp "incurred significant expenses and provided thousands of hours of diligent legal work on this case with the very real possibility of no recovery or a very limited recovery. . . . Class counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation.").

12

13

14

15

16

17

    To promote transparency, we support use of a timekeeping protocol that courts in this district have entered, under which class counsel submit periodic time and expense reports, and only time and expenses expressly authorized in advance by class counsel are compensable. *See, e.g.*, *In re Intuit Free File Litig.*, No. 19-cv-02546-CRB (N.D. Cal.), ECF 75; *In re Inductors Antitrust Litig.*, No. 18-cv-00198-EJD (N.D. Cal.), ECF 141-1. Submitting time and expense reports ensures there will be no surprises at the end of the case when class counsel's fee application is submitted.

18

## IV.    CONCLUSION

19

20

21

22

23

    For the foregoing reasons, Girard Sharp LLP respectfully requests that the Court appoint it to serve as sole interim lead counsel for the advertiser plaintiffs, appoint a steering committee for the advertiser plaintiffs consisting of Archana Tamoshunas of Taus, Cebulash & Landau, LLP and John Radice of the Radice Law Firm, PC, and designate Girard Sharp among the interim lead counsel group for the publisher plaintiffs.

24

25

Dated: February 25, 2021             Respectfully submitted,

26

By:    */s/ Dena C. Sharp*

27

28

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Scott M. Grzenczyk (State Bar No. 279309)

11

**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com

John D. Radice (*pro hac vice* pending)
April Lambert (*pro hac vice* pending)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com
alambert@radicelawfirm.com

Archana Tamoshunas (*pro hac vice* pending)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
atamoshunas@tclaw.com

*Attorneys for Plaintiffs Mark J. Astarita, Hanson Law Firm, PC, and Surefreight Global LLC d/b/a Prana Pets*

12